# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

_____

|                                                                                                     |   |                          |
|-----------------------------------------------------------------------------------------------------|---|--------------------------|
| OCP S.A.,                                                                                           | ) |                          |
|                                                                                                     | ) |                          |
| Plaintiff,                                                                                          | ) |                          |
|                                                                                                     | ) |                          |
| EUROCHEM NORTH AMERICA CORPORATION,                                                                 | ) |                          |
|                                                                                                     | ) |                          |
| Consolidated Plaintiff,                                                                             | ) |                          |
|                                                                                                     | ) |                          |
| and                                                                                                 | ) |                          |
|                                                                                                     | ) |                          |
| PHOSAGRO PJSC, INTERNATIONAL RAW MATERIALS LTD., AND KOCH FERTILIZER, LLC,                           | ) |                          |
|                                                                                                     | ) |                          |
| Plaintiff-Intervenors,                                                                              | ) |                          |
|                                                                                                     | ) |                          |
| v.                                                                                                  | ) | Consol. Court No. 21-00219 |
|                                                                                                     | ) |                          |
| UNITED STATES,                                                                                      | ) |                          |
|                                                                                                     | ) |                          |
| Defendant,                                                                                          | ) |                          |
|                                                                                                     | ) |                          |
| and                                                                                                 | ) |                          |
|                                                                                                     | ) |                          |
| THE MOSAIC COMPANY and J.R. SIMPLOT COMPANY,                                                         | ) |                          |
|                                                                                                     | ) |                          |
| Defendant-Intervenors.                                                                              | ) |                          |

_____

## PLAINTIFF-INTERVENOR INTERNATIONAL RAW MATERIAL LTD.'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, Plaintiff-Intervenor International Raw Materials Ltd. ("IRM") hereby moves for judgment on the agency record with respect to the complaints challenging the U.S. International Trade Commission's affirmative final injury determination in the countervailing duty investigations covering phosphate fertilizers from the

Kingdom of Morocco ("Morocco") and Russia. <u>Phosphate Fertilizers from Morocco and Russia</u>, USITC Pub. 5172 (Final) (Mar. 2021) ("<u>Final Determination</u>").

For the reasons set forth in the accompanying Memorandum of Law in Support of Plaintiff-Intervenor's Motion for Judgment Upon the Agency Record, IRM respectfully requests that this Court determine that the Commission's <u>Final Determination</u> is not supported by substantial evidence and is otherwise not in accordance with law. IRM further requests that this Court remand the <u>Final Determination</u> to the Commission with instructions to undertake further proceedings consistent with the accompanying Memorandum of Law and this Court's opinion.

A proposed Order accompanies this motion.

Respectfully submitted,

<u>/s/ Paul C. Rosenthal</u>
PAUL C. ROSENTHAL
MELISSA M. BREWER

KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342-8400

*Counsel to International Raw Materials Ltd.*

Dated: October 29, 2021

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| OCP S.A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| EUROCHEM NORTH AMERICA CORPORATION, | ) |
| | ) |
| Consolidated Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| PHOSAGRO PJSC, INTERNATIONAL RAW | ) |
| MATERIALS LTD., and KOCH FERTILIZER, LLC, | ) |
| | ) |
| Plaintiff-Intervenors, | ) |
| | ) |
| v. | )    Consol. Court No. 21-00219 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| THE MOSAIC COMPANY and J.R. SIMPLOT | ) |
| COMPANY, | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

## <u>ORDER</u>

Upon consideration of Plaintiff-Intervenor International Raw Material Ltd.'s Motion for Judgment Upon the Agency Record and the accompanying Memorandum of Law, the responses thereto, and all other papers and proceedings herein, it is hereby

**ORDERED** that Plaintiff-Intervenor's Motion for Judgment Upon the Agency Record is **GRANTED**; and it is further

**ORDERED** that the affirmative final injury determination by the U.S. International Trade Commission in <u>Phosphate Fertilizers from Morocco and Russia</u>, USITC Pub. 5172 (Final) (Mar. 2021), is reversed and remanded.

**IT IS SO ORDERED.**


_____
Hon. Judge Stephen A. Vaden


Dated: _____
      New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

| | |
|---|---|
| OCP S.A., )<br><br>Plaintiff, )<br><br>EUROCHEM NORTH AMERICA CORPORATION, )<br><br>Consolidated Plaintiff, )<br><br>and )<br><br>PHOSAGRO PJSC, INTERNATIONAL RAW )<br>MATERIALS LTD., and KOCH FERTILIZER, LLC, )<br><br>Plaintiff-Intervenors, )<br><br>v. )<br><br>UNITED STATES, )<br><br>Defendant, )<br><br>and )<br><br>THE MOSAIC COMPANY and J.R. SIMPLOT )<br>COMPANY, )<br><br>Defendant-Intervenors. )<br>) | Consol. Court No. 21-00219 |

---

### INTERNATIONAL RAW MATERIAL LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

PAUL C. ROSENTHAL
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

October 29, 2021      *Counsel to International Raw Materials Ltd.*

## Table of Contents

Page

STATEMENT PURSUANT TO RULE 56.2 ..................................................................... 1

ISSUES PRESENTED AND SUMMARY OF ARGUMENT .................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

STANDARD OF REVIEW ............................................................................................. 1

ARGUMENT ............................................................................................................... 2

I.      INTRODUCTION ............................................................................................. 2

II.     THE COMMISSION'S FAILURE TO CONSIDER PUBLIC
        STATEMENTS BY MOSAIC ANNOUNCING ITS REDUCTION OF
        DOMESTIC SUPPLY BY 1.1 MILLION SHORT TONS AND
        INVITING IMPORTS TO FILL THAT SUPPLY GAP RENDERS THE
        FINAL DETERMINATION UNSUPPORTED BY SUBSTANTIAL
        EVIDENCE ..................................................................................................... 3

III.    THE COMMISSION'S FAILURE TO CONSIDER THE IMPACT OF
        MOSAIC'S REFUSALS TO SUPPLY U.S. CUSTOMERS AND
        INSTRUCTIONS TO BUY IMPORTS INSTEAD RENDERS THE
        FINAL DETERMINATION UNSUPPORTED BY SUBSTANTIAL
        EVIDENCE ..................................................................................................... 8

IV.     THE COMMISSION'S FAILURE TO ACCOUNT FOR MOSAIC'S
        ROLE AS THE PRICE LEADER IN THE U.S. MARKET RENDERS
        THE PRICE EFFECTS ANALYSIS UNSUPPORTED BY
        SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH
        LAW ........................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Atlantic Sugar, Ltd. v. United States,
        744 F.2d 1556 (Fed. Cir. 1984).............................................................................4, 6

Durum and Hard Red Spring Wheat From Canada,
        USITC Pub. 3639 (Final) (Oct. 2003) ...................................................................6, 7

Int'l Imaging Materials, Inc. v. United States ITC,
        30 C.I.T. 1181 (2006) ...............................................................................................6

Phosphate Fertilizers from Morocco and Russia,
        USITC Pub. 5172 (Final) (Mar. 2021)........................................................1, 3, 7, 8

Polyethylene Terephthalate Resin from Brazil, Indonesia, Korea, Pakistan, and
        Taiwan, USITC Pub. 5125 (Remand) (Sept. 2020)
        aff'd, 517 F. Supp. 3d 1349 (CIT 2021)..................................................................12

Polytetrafluoroethylene (PTFE) Resin from China and India,
        USITC Pub. 4801 (Final) (July 2018)
        aff'd, 443 F. Supp. 3d 1315 (Ct. Int'l Trade 2020) ...................................................8

Universal Camera Corp. v. NLRB,
        340 U.S. 474 (1951)...................................................................................................4

Urea Ammonium Nitrate Solutions from Belarus et al.,
        USITC Pub. 3591 (Final) (Apr. 2003)
        aff'd, 358 F. Supp. 2d 1314 (Ct. Int'l Trade 2005)...................................................7

**Statutes**

19 U.S.C. § 1677(7)(C)(ii)............................................................................................11

**STATEMENT PURSUANT TO RULE 56.2**

Pursuant to U.S. Court of International Trade Rule 56.2, Plaintiff-Intervenor International Raw Materials Ltd. ("IRM"), an importer of phosphate fertilizers, respectfully moves for judgment on the agency record on the issues contained in the Complaints filed by Plaintiffs OCP S.A. ("OCP") and Eurochem North America Corporation ("Eurochem") challenging the affirmative final injury determination of the U.S. International Trade Commission ("Commission") in the countervailing duty investigations covering phosphate fertilizers from the Kingdom of Morocco ("Morocco") and Russia. Phosphate Fertilizers from Morocco and Russia, USITC Pub. 5172 (Final) (Mar. 2021) ("Final Determination").

**ISSUES PRESENTED AND SUMMARY OF ARGUMENT**

IRM adopts and incorporates by reference the issues presented and summary of argument as set forth in the memorandum of law in support of motion for judgment on the agency record filed on behalf OCP. ECF No. 56 at 1-2.

**STATEMENT OF FACTS**

IRM adopts and incorporates by reference the statement of facts as set forth in the memorandum of law in support of motion for judgment on the agency record filed on behalf OCP. ECF No. 56 at 3-5.

**STANDARD OF REVIEW**

IRM adopts and incorporates by reference the standard of review as set forth in the memorandum of law in support of motion for judgment on the agency record filed on behalf OCP. ECF No. 56 at 5-7.

## ARGUMENT

## I.   INTRODUCTION

In the phosphate fertilizer business, timing is everything.  If the fertilizer is not in the right place at the right time, the farmer is out of luck; it's a missed opportunity.  IRM has been in the phosphate fertilizer business for over 40 years and works with distributors and other suppliers to ensure that American farmers have the fertilizer that they need when they need it.  In the United States, there are two application seasons each year – one in the Spring, and one in the Fall.  Farmers plan for these application seasons each year, and as soon as the weather permits and the timing is right, they call upon their suppliers to deliver the phosphate fertilizers for quick application.  IRM's supply chain plans accordingly, and relies on demand forecasting to plan ahead and to have the fertilizer in place as the application season approaches.

Mr. William P. "Tip" O'Neill, Jr., President of IRM, participated in the underlying investigations, along with David Coppess, the former Executive Vice President of Sales and Marketing for Heartland Co-op, a major co-op in Iowa.   In addition, IRM [

] APPX0096304-0096306.  Their stories echoed the stories of numerous other importers, co-ops, and customers throughout the country:  the domestic producers, and Mosaic in particular, are unreliable and consistently refuse to supply U.S. customers.  Moreover, Mosaic explicitly told customers to seek imported fertilizers in 2017 when it announced the removal of over 1 million short tons of phosphate fertilizer from the U.S. market.  APPX0096279.  Evidence submitted to the Commission made clear that U.S. market participants sought imports not for their lower prices (indeed, the record confirms overwhelming *overselling* by subject imports), but because they could not get a reliable supply of domestic

product. As Mr. O'Neill testified before the Commission, "reliability of supply is what drives all of these farmers co-ops." APPX0015787.

This brief will focus on two crucial issues that the Commission failed to properly consider in the Final Determination. First, the Commission failed to take into account public statements by Mosaic that quantified a significantly larger supply gap than the one later reported by Mosaic to the Commission. Indeed, the Commission ignored the farmers' expected supply needs during the period of investigation ("POI") given their reliance on Mosaic's assertions and Nutrien's closure of its Redwater facility. Second, the Commission failed to fulfill its statutory obligation to assess the degree of price underselling when it ignored extensive record evidence that Mosaic is the price leader in the U.S. market, and that Mosaic's pricing, not the pricing of subject imports, caused prices to decline during the POI.

IRM otherwise adopts and incorporates by reference the arguments set forth in the memorandum of law in support of motion for judgment on the agency record filed on behalf OCP.

## II.    THE COMMISSION'S FAILURE TO CONSIDER PUBLIC STATEMENTS BY MOSAIC ANNOUNCING ITS REDUCTION OF DOMESTIC SUPPLY BY 1.1 MILLION SHORT TONS AND INVITING IMPORTS TO FILL THAT SUPPLY GAP RENDERS THE *FINAL DETERMINATION* UNSUPPORTED BY SUBSTANTIAL EVIDENCE

In the Final Determination, the Commission ignored contemporaneous, public statements from Mosaic regarding the idling of its Plant City, Florida facility that signaled to the U.S. market a far greater supply shortage than the later-in-time volume Mosaic reported to the Commission. In addition, the Commission failed to consider Mosaic's *explicit invitation* for imports to fill that supply gap and the impact of these statements on purchasers' decision-making during the POI. The Commission found that subject import volumes were significant and

created an oversupply in the U.S. market. APPX0099614. While the Commission acknowledged the argument from respondent parties that the market perceived the supply gap to be 1.1. million short tons, APPX0099624, it failed to explain its reliance on the far smaller 700,00 short ton figure provided by Mosaic. Indeed, in assessing the supply gap and subject import volume, the Commission accepted Mosaic's figure without explanation:

> According to Mosaic, in 2017 the Plant City facility produced roughly 700,000 short tons of phosphate fertilizers that were sold into the U.S. market. Hearing Tr. at 39, 111 (McLellan). Subject imports, however, increased by 1 million short tons from 2017 to 2018. CR/PR at Table IV-2.

APPX0099625. By failing to take into account the contradictory evidence that detracted from the conclusion that imports volumes were significant, the Commission erred and failed to support its finding with substantial evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951); Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

In mid-2017, during the first year of the period of investigation ("POI"), Mosaic, the largest U.S. phosphate fertilizer producer, announced the "intentional" idling of its phosphate fertilizer production facility in Plant City, Florida. APPX0096277-0096279. At the time, Mosaic's announcement sent a message to the U.S. market that a huge volume of phosphate fertilizer would be pulled from the U.S. market.

Indeed, in 2018 and 2019, Mosaic publicly discussed the idling of Plant City, stated that the idling created a supply hole of 1.1 million short tons (1 million "tonnes") in the U.S. marketplace, and confirmed that imports were necessary to fill that supply gap:

> "{C}learly the import requirements into the US are increasing by {the closings of} both Red Water and Plant City there's no question of that . . . *it certainly indicates that there will be a need for more imports* . . . ." APPX0096280.

\* \* \*

> "{W}hen we shut down -- sorry, ***idled Plant City, that opened a hole for some imports to increase,*** and I think part of the increase you've seen has been just a response to that. We went from 55%, 60% market share to a more sustainable 50-ish percent market share. So we gave up 1 million tonnes of market here in the U.S. ***intentionally.***" Exh. 2 (emphasis added). APPX0096279.

Based on these statements, U.S. market participants understood Mosaic to be pulling 1.1 million short tons of phosphate fertilizer supply out of the U.S. market, and instructing customers to buy imports instead.[1] Moreover, in April 2018, Nutrien announced the closure of its 600,000 ton phosphate fertilizer operations in Redwater, Alberta, Canada, a major source of supply in the western U.S., as a "business decision," thereby increasing the perceived supply gap in the U.S. market to about 1.7 million tons. APPX0091717-0091718.

The publicly perceived supply gap of 1.7 million short tons well exceeded the increase in subject import volume of 725,044 short tons from 2017 to 2019.[2] APPX0098445. Even the 1 million short ton increase in subject import volume from 2018 to 2019 was notably less than the total volume of fertilizer that was understood to be pulled from the U.S. market. Considering the volume of domestic supply that was understood to be eliminated during the POI, the increase in subject imports, by any measure, was not significant.

The Commission ignored Mosaic's public and contemporaneous statements and failed to explain why the assertion that Mosaic was pulling 1.1. million short tons from the U.S. market

---

[1] Mosaic also attributed its loss of market share from 60 percent or 55 percent to "50ish" percent to the Plant City idling, not to subject imports as it later argued to the Commission.

[2] As OCP explains in its brief, reliance on subject import volumes alone is misleading because that figure includes re-exports to Canada and thus is overstated. ECF No. 56 at 11-12. [

]

(coupled with the Nutrien closure) were not relevant to the supply gap analysis and consideration of the increase in subject import volume. Indeed, the statement that 1.1 million tons of imports were "need{ed}" and the supply gap was "intentional" is *prima facie* evidence that Mosaic did not regard imports of that magnitude as injurious. APPX0096279. To the contrary, Mosaic stated that it expected to lose five to ten percent of its market share, and was not concerned with that loss. Id. Inexplicably, the Commission blithely ignored these statements, which, at minimum, should have been considered as prior inconsistent statements or admissions by Mosaic that imports of the magnitude projected as needed were not injurious. But, the Commission ignored those statements.

The Commission has considered public statements of interested parties in past cases, and should have done so here. In Int'l Imaging Materials, Inc. v. United States ITC, the Court affirmed the Commission's reliance on public statements by Sony during the investigation period, explained that the Commission "provided *substantial evidence* showing that Sony was the downward price leader during the period of investigation" based on "*public statements* . . . corroborating that Sony was at the front of an intra-industry price war" as well as "the statement of a Sony consultant who later became an executive." Int'l Imaging Materials, Inc. v. United States ITC, 30 C.I.T. 1181, 1197 (2006) (emphasis added). In Durum and Hard Red Spring Wheat From Canada, the Commission explicitly noted the veracity of statements made by an interested party *not in connection with the Commission's investigation*:

> The record contains information from the MGE both in the form of public statements not made in connection with our investigations, and in testimony by a representative of the MGE at the Commission's hearing. ***In the event that the two sources of information differ, we give more weight to the public statements not made in connection with our investigations.***

Durum and Hard Red Spring Wheat From Canada, USITC Pub. 3639 (Final) (Oct. 2003) at 22

n.203 (emphasis added).  In this case, IRM submitted to the Commission over **40** quotes from

Mosaic that either contradict or undermine the arguments Mosaic put forward in the underlying

investigations.  APPX0096277-0096284.  These statements, which are substantial evidence,

should have been analyzed by the Commission, but they were not.

The Commission's approach in the Final Determination is also inconsistent with the

agency's understanding of the marketplace in a prior case covering imports of urea ammonium

nitrate solutions, where the Commission understood the importance of market perceptions to

purchaser decisions:

> {T}he increase in subject imports came at a time of domestic
> production curtailments due to unusually high natural gas prices.
> Unscheduled production curtailments were approximately 154,000
> tons per month during September 2000 to March 2001, when
> natural gas prices peaked.  Reported in the press, ***these cutbacks
> appear to have created at least a perception in the marketplace (if
> not a reality) that domestic supply was unreliable and purchasers
> should find alternative sources of supply***.  Subject imports and
> nonsubject imports increased during this period and both peaked in
> interim 2001.

Urea Ammonium Nitrate Solutions from Belarus et al., USITC Pub. 3591 (Final) (Apr. 2003) at

19-20 (footnotes omitted) (emphasis added), aff'd Nitrogen Solutions Fair Trade Comm. v.

United States, 358 F. Supp. 2d 1314 (Ct. Int'l Trade 2005).  In this case, a correct understanding

of the supply gap volume was critical to the Commission's analysis because it indicates whether

or not the volumes of subject imports undershot or overshot the perceived supply gap that

Mosaic anticipated and announced publicly.  Whether one examines the 725,044 short ton

increase from 2017 to 2019, or the 1 million short ton increase from 2017 to 2018,

APPX0098445, neither increase in subject imports came close to the market's belief that nearly

1.7 million short tons of fertilizer was being pulled from the U.S. market. As Mosaic itself

confirmed in its public statements that it was *intentionally and voluntarily relinquishing* U.S.

production and market share, and invited subject imports to fill that gap. APPX0096279.

Accordingly, reliance on these figures should have led to the conclusion that subject import

volumes were neither significant nor injurious

     The Commission's failure to consider public, contemporaneous evidence on the record

that detracts from its findings with respect to subject import volumes and the supply gap renders

the Final Determination unsupported by substantial evidence.

**III. THE COMMISSION'S FAILURE TO CONSIDER THE IMPACT OF MOSAIC'S REFUSALS TO SUPPLY U.S. CUSTOMERS AND INSTRUCTIONS TO BUY IMPORTS INSTEAD RENDERS THE *FINAL DETERMINATION* UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

     The Commission failed to take into account the interplay between the domestic industry's

"intentional" reduction of its U.S. footprint, invitation for increased imports, and simultaneous

*refusals* to supply U.S. customers. During the POI, Mosaic refused to supply a number of

customers and told some directly to buy imports instead of domestic product. APPX0015767,

APPX0015701, APPX0015784, [                                        ]. In concluding that subject

import volumes were significant, the Commission failed to account for numerous accounts of

refusals to supply by domestic producers and the impact of those refusals on customer decisions

to purchased imported phosphate fertilizer. See Polytetrafluoroethylene (PTFE) Resin from

China and India, USITC Pub. 4801 (Final) (July 2018) at 26 ("{R}esponding U.S. producers

reported having to refuse, decline, or being unable to supply orders of PTFE during the POI. The

majority of purchasers reported that supply constraints have been present in the PTFE market

since the beginning of the POI.") (citations omitted), aff'd Chemours Co. FC, LLC v. United States, 443 F. Supp. 3d 1315, 1331-32 (Ct. Int'l Trade 2020).

The record is replete with examples of domestic producers' refusals to supply major players in the U.S. market. The majority (16 of 28) of responding purchasers described extensive and widespread supply constraints during the POI. APPX0098404. Purchaser questionnaire responses detailed numerous supply issues, including denials to supply by [

]

In a confidential declaration submitted to the Commission, [

]

David Coppess, the former Executive Vice President of Sales and Marketing for Heartland Co-op, also testified at the Commission's hearing and provided a declaration.

Heartland is one of Iowa's largest co-ops and prefers to purchase from Mosaic whenever possible. APPX0015701. In fact, Mosaic is the primary source of phosphate fertilizer for the co-op. Id. In recent years, however, Mosaic's supply availability and reliability became an issue and has affected Heartland's ability to procure needed fertilizer. Id. Shortly before the petition was filed, Mosaic refused to offer Heartland phosphate fertilizer for the Fall 2020 application. Id. [

]

Furthermore, industry witnesses testified to Mosaic's instructions to seek imports instead of domestic product. In 2017, Mosaic cut Gavilon's supply by 100,000 tons after Plant City was idled. APPX0015767. Mosaic then told Gavilon to "go seek foreign sources" for that 100,000 tons. Id. Additional examples of [

]

Mosaic does not deny that it refused sales over the last several years to its historic customers. At the hearing, Mosaic's CEO offered only a general statement that Mosaic's "business is built around long-term relationships with dependable customers, like farmers and co-ops, that take significant volumes every year. We think it's good business to stand by them and honor our commitments." APPX0015521. [

]

The Commission failed consider the interplay between these important market factors when concluding that subject import volumes were significant, rendering its findings unsupported by substantial evidence.

## IV.   THE COMMISSION'S FAILURE TO ACCOUNT FOR MOSAIC'S ROLE AS THE PRICE LEADER IN THE U.S. MARKET RENDERS THE PRICE EFFECTS ANALYSIS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

The statute directs the Commission to determine whether there "has been significant price underselling by the imported merchandise as compared with the price of domestic like products" in the evaluation of the price effects of subject imports." 19 U.S.C. § 1677(7)(C)(ii).  Here, in addition to its failure to make an adequate and reasoned finding regarding underselling (ECF No. 56 at 21-25), the Commission ignored extensive record evidence that Mosaic is the price leader in the U.S. market.   The Commission's failure to discuss the existence of Mosaic's price leadership and its impact on the U.S. marketplace reveals that this critical evidence was not taken into account when the Commission found that subject imports caused negative price effects. Indeed, Mosaic's price leadership indicates that its prices, and not those of subject imports, are driving prices (whether up or down) in the U.S. marketplace.  Because the Commission failed to consider this critical evidence, its analysis of the price effects of subject imports is unsupported by substantial evidence and not in accordance with law.

The Commission's final database revealed that *subject imports oversold* domestic product in 80 percent of comparisons accounting for 84 percent of volume.  APPX0098483.  As OCP's brief explains in detail, the Commission recently found overselling by subject imports in

approximately two-thirds of comparisons to show "predominant overselling" that "weigh{s}" heavily against a find of significant underselling. ECF No. 56 at 24-25 (citing <u>Polyethylene Terephthalate Resin from Brazil, Indonesia, Korea, Pakistan, and Taiwan</u>, USITC Pub. 5125 (Remand) (Sept. 2020), <u>aff'd</u> <u>DAK Ams. LLC v. United States</u>, 517 F. Supp. 3d 1349 (CIT 2021)). The Commission did not explain how the level of overselling on this record compares to its recent findings that a lower percentage of overselling is "predominant."

On this record, the level of *underselling by domestic product* is consistent with the extensive record evidence that Mosaic is the price leader in the U.S. market. Mosaic was cited by a clear majority of purchasers as the U.S. price leader (18 of 28 purchasers). APPX0098470. Mosaic is [



] APPX0098429.

Indeed, [                                                    ] in the U.S. market. APPX0088646. By way of comparison, just two purchasers cited foreign producers OCP and EuroChem as price leaders. APPX0098471.

At the Commission's hearing, Mr. Coppess explained that "when it comes time to fill, {Mosaic} tell{s} us how many tons we're going get from the market plan and what price it will be at." APPX0015787. Mr. Coppess expanded on this discussion [



] APPX0096301. This [

] is consistent with the numerous examples offered at the hearing that Mosaic is a price leader in the U.S. market. <u>Id.</u>

Individual purchasers provided further compelling evidence that domestic producers, not subject imports, are the price leaders of the U.S. market.   APPX0088787, APPX0088729, APPX0088151, APPX0088313.  [

] APPX0088313.

Given the Commission's utter failure to discuss the impact of Mosaic's price leadership in the U.S. marketplace, it is obvious that this record evidence was not taken into account when the Commission found that subject imports caused negative price effects *despite* the extensive overselling by subject imports.

## CONCLUSION

For the above reasons, IRM respectfully requests that the Court determine that the Commission's affirmative final injury determination is unsupported by substantial evidence and enter judgment in favor of Plaintiffs and Plaintiff-Intervenors.

Respectfully submitted,

/s/ Paul C. Rosenthal

Paul C. Rosenthal
Melissa M. Brewer

KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

*Counsel to International Raw Materials Ltd.*

**CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**


Pursuant to this Court's August 30, 2021 Order (ECF No. 52) setting the word limitation to Plaintiff-Intervenor's Rule 56.2 Brief to 4,000 words, counsel to International Raw Materials Ltd. certifies that this Brief contains 3,781 words, including footnotes. The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2016.


Respectfully submitted,

/s/ Melissa M. Brewer
PAUL C. ROSENTHAL
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C. 20007
(202) 342-8400

Counsel to Plaintiff-Intervenor International
Raw Materials Ltd.

Dated: October 29, 2021