## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| OCP S.A.,<br>                    Plaintiff,<br><br>        and<br><br>EUROCHEM NORTH AMERICA CORPORATION,<br>                    Consolidated Plaintiff,<br><br>        and<br><br>PHOSAGRO PJSC, INTERNATIONAL RAW<br>MATERIALS LTD., and KOCH FERTILIZER, LLC,<br>                    Plaintiff-Intervenors,<br><br>        v.<br><br>UNITED STATES,<br>                    Defendant,<br><br>        and<br><br>THE MOSAIC COMPANY and J.R. SIMPLOT<br>COMPANY,<br>                    Defendant-Intervenors. | Consol. Court No. 21-00219<br><br>**<u>NON-CONFIDENTIAL<br>VERSION</u>**<br><br>Business proprietary information<br>removed from pages 2, 6-19, and<br>21-24 |

## <u>DEFENDANT-INTERVENOR THE MOSAIC COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' RULE 56.2 MOTIONS FOR JUDGMENT UPON THE AGENCY RECORD</u>

David J. Ross
Jeffrey I. Kessler
Patrick J. McLain
Stephanie E. Hartmann
Alexandra Maurer
WILMER CUTLER PICKERING HALE AND
    DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

Dated: February 10, 2022

NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  RULE 56.2 STATEMENT ................................................................................. 3

   A.  Administrative Decision Under Review ..................................................... 3

   B.  Issues Presented and Summary of Arguments .......................................... 4

      1.  Is the Commission's volume finding supported by substantial evidence and in accordance with law? .................................................................................... 4

      2.  Is the Commission's price effects finding supported by substantial evidence and in accordance with law? ............................................................................... 4

      3.  Is the Commission's impact finding supported by substantial evidence and in accordance with law? .................................................................................... 4

III. STATEMENT OF FACTS ................................................................................. 5

IV.  STANDARD OF REVIEW ................................................................................ 5

V.   ARGUMENT ..................................................................................................... 5

   A.  The Commission's Volume Findings Are Supported by Substantial Evidence and Otherwise in Accordance with Law ................................................. 5

   B.  The Commission's Price Effects Findings are Supported by Substantial Evidence and Otherwise in Accordance with Law ............................................... 7

      1.  The Commission's finding of significant price depression was reasonable ......... 7

      2.  The Commission's underselling analysis is in accordance with law ................. 16

   C.  The Commission's Impact Findings are Supported by Substantial Evidence and Otherwise in Accordance with Law ................................................ 17

      1.  The Commission's impact analysis reasonably accounted for correlations between subject imports and signs of injury ........................................... 18

      2.  The Commission's findings regarding excess domestic industry capacity and the purported "supply gap" are supported by substantial evidence and otherwise in accordance with law ................................................................................ 19

      3.  The Commission reasonably considered and rejected Plaintiffs' arguments about the domestic industry's alleged unwillingness to supply the U.S. market .......... 23

VI.  CONCLUSION ................................................................................................. 24

Consol. Court No. 21-00219                                                NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

**Statutes**

19 U.S.C. § 1677(7)(C)(ii) ...................................................................................17

**Cases**

*Altx, Inc. v. United States*, 25 CIT 1100, 167 F. Supp. 2d 1353 (2001) ...............................11

*Cemex, S.A. v. United States*, 16 CIT 251, 790 F. Supp. 290 (1992) ...................................16

*Chr. Bjelland Seafoods A/S v. United States*, 19 CIT 35 (1995) ...........................................12

*Octal Inc. v. United States*, No. 20-03698, Slip. Op. (CIT Sept. 30, 2021).........................6

*R-M Industries, Inc. v. United States*, 18 CIT 219, 848 F. Supp. 204 (1994).......................6

*Shandong TTCA Biochemistry Co. v. United States*, 35 CIT 545,
774 F. Supp. 2d 1317 (2011) ................................................................................20

**Administrative Materials**

*Certain Cold-Rolled Steel Products from Argentina, Brazil, Japan, Russia, South
Africa, and Thailand*, Inv. Nos 701-TA-393 and 731-TA-829-830, 833-834, and
838 (Final), USITC Pub. 3283 (Mar. 2000)..........................................................13

*Certain Corrosion-Resistant Steel Prod. from China, India, Italy, Korea, & Taiwan*,
USITC Inv. No. 701-TA-534, USITC Pub. No. 4620 (July 2016) (Final)..........................22

*Certain Structural Steel Beams from China, Germany, Luxembourg, Russia,
South Africa, Spain, & Taiwan*, USITC Inv. No. 731-TA-935, USITC Pub. No. 3522
(June 2002)................................................................................................23

*Hydrofluorocarbon Blends and Components from China*, Inv. No. 731-TA-1279,
USITC Pub. 4629 (Aug. 2016) ............................................................................12

*Polyethylene Terephthalate Resin from Brazil, Indonesia, Korea, Pakistan, and Taiwan*,
Inv. Nos. 731-TA-1387-1391 (Final) (Remand), USITC Pub. 5125 (Sept. 2020)...............17

## I.     <u>INTRODUCTION</u>

Defendant-Intervenor The Mosaic Company ("Mosaic") respectfully submits this response in opposition to the Rule 56.2 motions for judgment upon the agency record filed by Plaintiff OCP S.A. ("OCP"), Pl.'s Mem. of Law in Supp. of Rule 56.2 Mot. for J. on Agency R. (Oct. 18, 2021), ECF No. 56 ("OCP Br."); Consolidated Plaintiff EuroChem North America Corporation ("EuroChem"), EuroChem Rule 56.2 Mot. for J. Upon the Agency R. (Oct. 29, 2021), ECF No. 64 ("EuroChem Br."); Plaintiff-Intervenor PhosAgro PJSC ("PhosAgro"), PhosAgro Rule 56.2 Mot. for J. Upon the Agency R. (Oct. 29, 2021), ECF No. 65 ("PhosAgro Br."); Plaintiff-Intervenor International Raw Materials Ltd. ("IRM"), IRM Rule 56.2 Mot. for J. Upon the Agency R. (Nov. 1, 2021), ECF No. 76 ("IRM Br."); and Plaintiff-Intervenor Koch Fertilizer, LLC ("Koch"), Koch Rule 56.2 Mot. for J. Upon the Agency R. (Oct. 29, 2021), ECF No. 75 ("Koch Br."), as well as the supporting brief filed by *amici curiae*, Joint *Amicus Curiae* Br. (Oct. 29, 2021) (collectively, "Plaintiffs").

Mosaic petitioned on behalf of the domestic phosphate fertilizer industry in the underlying investigations.  Mosaic sought relief from a surge in subsidized, low-priced imports of phosphate fertilizers from Morocco and Russia ("subject imports") that were injuring Mosaic and the rest of the domestic industry.  APPX0001450-0001452, APPX0080013-0080015.  After lengthy investigations involving thousands of pages of evidence, the U.S. Department of Commerce determined that Morocco and Russia were in fact providing significant unfair subsidies to their phosphate fertilizer industries, APPX0018444, and the Commission determined that imports of the subsidized product materially injured the domestic industry.  APPX0020820.

During its investigations, the Commission had before it record evidence showing that, *inter alia*:

- Subject import entry and shipment volumes surged by 37.4 percent and 42.3 percent, respectively, between 2017 to 2019, capturing [        ] points of market share from the domestic industry.  APPX0018694, APPX0020589-0020591, APPX0098457, APPX0099603-0099605.

- These subsidized imports were a significant factor in oversupplying the U.S. market – particularly in 2019 – and driving prices down.  Multiple sources attested to these effects, including [                    ], U.S. purchasers, and [        ] contemporaneous reports in [                ] trade publications.  APPX0020595-0020598, APPX0099611-0099615.

- The consequent impact on the domestic industry was unmistakable:  the domestic industry [                                    ], and its cost of goods sold to net sales ratios exceeded [        ] percent, during 2019 and interim 2020.  APPX0020602-0020603, APPX0099621-0099623.

- After Mosaic filed its petitions on June 26, 2020, subsequent developments confirmed the causal relationship between subject imports and the domestic industry's condition:  subject imports largely exited the U.S. market to avoid countervailing duty liability, and the domestic industry's U.S. production, shipments, and prices increased.  APPX0020598-0020599, APPX0020601, APPX0099615-0099616; APPX0099619.

Faced with this evidence during the investigations, Plaintiffs attempted to convince the Commission that the subject imports had nothing to do with the domestic industry's injury and that the petitions were a cynical ploy by Mosaic to benefit its minority investment in a joint venture in Saudi Arabia.  The Commission rightly rejected Plaintiffs' baseless theory, *see* APPX0020607-0020608, APPX0099628-0099629, and instead – after carefully examining the record evidence – determined that subject import volumes were significant and increased significantly, depressed domestic prices by oversupplying the U.S. market, and thereby materially injured the domestic industry.  APPX0020607, APPX0099629.

Now, Plaintiffs ask the Court to re-weigh the record evidence in their favor, but that would be unlawful.  Further, as they did before the Commission, Plaintiffs quote various Mosaic public statements out of context, and erroneously assert that they somehow contradict Mosaic's

arguments and the Commission's findings.  *See* OCP Br. at 9, 34-35, 37, 42; IRM Br. at 3-8.[1]

The Commission rightly considered Mosaic's public statements in their proper context and in

light of the large volume of evidence on the record, and reasonably found material injury.  It is

not the Court's role to second-guess the Commission's weighing of evidence.

Mosaic agrees with and adopts the Commission's arguments in opposition to Plaintiffs'

claims, *see* ITC Mem. in Opposition (Jan. 27, 2022), ECF No. 89 ("ITC Br."), as well as those

provided in the brief of Defendant-Intervenor J.R. Simplot Company ("Simplot") filed today.

This brief is intended to supplement these arguments while avoiding unnecessary repetition.

## II.   **RULE 56.2 STATEMENT**

### A.   **Administrative Decision Under Review**

Plaintiffs seek review of the Commission's final affirmative determinations in the

countervailing duty investigations of phosphate fertilizers from Morocco and the Russian

Federation.  *Phosphate Fertilizers from the Russian Federation: Final Affirmative*

*Determinations*, 86 Fed. Reg. 17,642 (Apr. 5, 2021) (APPX0020820).  The public version of the

Commission's views and Staff Report for these investigations is contained in USITC Pub. 5172

(Mar. 2021) (APPX0020557-0020819).  The confidential version of the Commission's views is

at APPX0099573-0099666, and the confidential Staff Report is at APPX0098373-0098571.

---

[1] IRM asserts that it submitted to the Commission "over **40** quotes from Mosaic that either contradict or undermine the arguments Mosaic put forward in the underlying investigations." IRM Br. at 7.  IRM errs.  In fact, it submitted a list of 24 "Prior Mosaic Representations," largely taken out of context, juxtaposed against 20 "Mosaic Representations at Hearing (*as applicable*)." *See* APPX0016131-0016138, APPX0096277-0096284.  There is no contradiction between the two sets of statements when properly in context.

### B.      Issues Presented and Summary of Arguments

#### 1.      Is the Commission's volume finding supported by substantial evidence and in accordance with law?

Yes.  Mosaic agrees with and adopts the arguments in the Commission's brief showing that the Commission complied with the law and relied on substantial evidence in finding that subject import volumes were significant and increased significantly during the period of investigation (the "POI").  In addition, OCP mischaracterizes the Commission's volume findings, and the case it cites in connection with its "supply gap" arguments does nothing to undermine the Commission's analysis.

#### 2.      Is the Commission's price effects finding supported by substantial evidence and in accordance with law?

Yes.  Mosaic agrees with and adopts the arguments in the Commission's brief showing that the Commission's price effects finding is supported by substantial evidence and in accordance with law.  In addition, it was reasonable for the Commission to rely, *inter alia*, on Mosaic customer emails and trade publications in making its price depression determination, contrary to OCP's contentions.  Plaintiffs' arguments regarding price leadership and alleged correlation flaws also fail to undermine the Commission's price depression finding.  Moreover, OCP's underselling arguments mischaracterize the statute's requirements.

#### 3.      Is the Commission's impact finding supported by substantial evidence and in accordance with law?

Yes.  Mosaic agrees with and adopts the arguments in the Commission's brief showing that the Commission's finding of material adverse impact by reason of subject imports is supported by substantial evidence and in accordance with law.  In addition, the Commission reasonably analyzed domestic industry indicia of injury in relation to subject imports and other relevant factors, contrary to OCP's allegations, and it reasonably rejected Plaintiffs' contentions

about allegedly unreliable domestic industry excess capacity data and a so-called "supply gap" in the U.S. market.  Substantial evidence also supports the Commission's rejection of Plaintiffs' arguments that the domestic industry chose to export rather than supply U.S. customers.

## III.   STATEMENT OF FACTS

Mosaic agrees with and adopts the summary of facts in the Commission's brief.  ITC Br. at 3-6.

## IV.   STANDARD OF REVIEW

Mosaic agrees with and adopts the discussions of the standard of review in the Commission's brief, *see* ITC Br. at 6-9, and in Simplot's brief.

## V.   ARGUMENT

### A.   The Commission's Volume Findings Are Supported by Substantial Evidence and Otherwise in Accordance with Law

Mosaic agrees with and adopts the Commission's arguments demonstrating that the Commission's volume findings are supported by substantial evidence and otherwise in accordance with law.  *See* ITC Br. at 9-13.  Mosaic also agrees with and adopts Simplot's arguments demonstrating that OCP attempts to read new requirements into the Commission's volume analysis and mischaracterize the Commission's findings on price effects, conditions of competition, and impact.  *See* Simplot Br. at 8-11.  Below, Mosaic demonstrates additional errors in OCP's legal arguments concerning the Commission's volume findings.

OCP argues that "{t}o the extent subject imports do not exceed" a purported "supply gap," "they would not displace domestic industry sales and therefore would not be injurious with respect to volume."[2]  OCP Br. at 8.  None of the authorities OCP cites supports this proposition.

---

[2] Mosaic addresses Plaintiff's other arguments regarding the so-called "supply gap" below in the context of the Commission's impact findings.

Moreover, OCP mischaracterizes this Court's decision in the only case that it cites, *R-M*

*Industries, Inc. v. United States*, 18 CIT 219, 848 F. Supp. 204 (1994).  *See* OCP Br. at 8.  OCP

quotes *R-M Industries* as stating that "subject imports were found to fill the gap in the market left

by {non-subject imports}, and did not displace domestic sales."  *See id.* (quoting *R-M Indus.*, 18

CIT at 227, 848 F. Supp. at 211).  This statement is from the Court's summary of the

Commissioners' views, not the Court's own findings.  *See R-M Indus.*, 18 CIT at 227, 848 F.

Supp. at 211.  Thus, *R-M Industries* does not establish a principle that "{t}o the extent subject

imports do not exceed" a purported "supply gap," "they would not displace domestic industry

sales and therefore would not be injurious with respect to volume."  To the contrary, this Court

has held that the Commission "is not required to consider effects on the domestic industry in

assessing the significance of import volume."  *Octal Inc. v. United States*, No. 20-03698, Slip.

Op. at 13 (CIT Sept. 30, 2021).

Further, *R-M Industries* is readily distinguishable from the instant proceeding because in

that case, the Commission found that subject imports only displaced non-subject imports (not

U.S. producers' sales), that subject imports did not capture market share from the domestic

industry, and therefore that subject import volumes were not significant within the meaning of 19

U.S.C. § 1677(7)(C)(i).  Here, by contrast, the Commission found that subject imports captured [

] percentage points of market share from the domestic industry over the POI, and therefore

concluded that subject import volumes were significant relative to consumption in the United

States.  *See* APPX0020590-0020591; APPX0099605.  This finding is supported by substantial

evidence and otherwise in accordance with law, as the Commission properly analyzed subject

import shipments and U.S. producers' commercial shipments relative to apparent U.S.

consumption, contrary to OCP's argument that the Commission conflated subject import entries and shipments. *See id.*; OCP Br. at 11.

### B. The Commission's Price Effects Findings are Supported by Substantial Evidence and Otherwise in Accordance with Law

Mosaic agrees with and adopts the Commission's arguments with respect to its price effects findings. *See* ITC Br. at 13-32. As the Commission's brief demonstrates, and as Mosaic supplements below, Plaintiffs fail to show that the Commission's price depression finding is unsupported by substantial evidence, and their underselling arguments lack merit.

### 1. The Commission's finding of significant price depression was reasonable

The Commission determined that numerous different sources of record evidence pointed to subject imports as a significant cause in depressing domestic prices over the latter part of the POI, including (i) the price-competitive nature of the market, APPX0020591, APPX0099606; (ii) evidence that subject import and domestic prices followed similar trends over the POI, APPX0020594, APPX0099609; (iii) the build-up of inventories and increased shipments of subject imports, even as demand tanked in 2019, APPX0020594-0020598, APPX0099610-0099614; (iv) information from U.S. producers, purchasers, and trade publications showing the pressure that subject imports were putting on prices, APPX0020595-0020598, APPX0099611-0099615; (v) respondents' own admissions of imbalances in the U.S. market that hurt prices, APPX0020597, APPX0099613, and [

], *id.*; and (vi) the sharp increase in U.S. producer prices after subject imports largely exited the U.S. market after Mosaic filed its petitions. APPX0020594, APPX0020598-0020599, APPX0099609-0099610, APPX0099615-0099616. This evidence is

more than sufficient to meet the substantial evidence standard, and Plaintiffs' criticisms of

particular elements of the Commission's analysis fail to show otherwise.

> a)    Mosaic customer emails support the Commission's finding that
>        subject imports depressed domestic prices

OCP contests the Commission's reliance on Mosaic customer emails and Simplot lost

sales/lost revenue evidence in finding price depression on the grounds that they are "unreliable"

and outweighed by allegedly contradictory evidence that "refutes any inference that purchasers

bought subject imports because they were priced lower."  OCP Br. at 26-28.  However, as the

Commission correctly states, it is the Commission's role to determine the weight and credibility

of the record evidence, even when it comes from an interested party.  ITC Br. at 29.  The

purchaser questionnaire responses that OCP cites are not inconsistent with the Mosaic emails,

and the [         ] response actually corroborates them.  *Id*. at n. 13.

The Commission relied upon the Mosaic emails (in addition to other record evidence) to

support its finding that "record evidence shows that subject imports were being offered at low

prices during this time" – *i.e.*, in 2019.  *See* APPX0020597, APPX0099613.  In response to a

request from Commissioner Karpel, Mosaic submitted documentation of price negotiations from

2018-2020 in its post-hearing brief showing that Mosaic's customers often refer to published

prices and/or price quotes for imported product in order to force Mosaic to lower its own prices.

*See* APPX0017138, APPX0097192.  This evidence included an email from January 2019 in

which [

].  APPX0017149, APPX0097203 (cited in APPX0020597, APPX0099613); *see also*

APPX0017385-0017392, APPX0097497-APPX0097509.  This evidence of [

                                                                    ]

supports the Commission's finding that "subject imports were being offered at low prices during

this time."  *See* APPX0020597, APPX0099613.

 The Commission also cited additional supporting evidence.  This includes a sworn

declaration from a Simplot executive (with supporting documentation) discussing [

                                        ].  APPX0016345-0016348, APPX0095936-

0095939 (cited in APPX0020597, APPX0099613).  It also includes information from U.S.

purchaser [              ], which reported that its [

       ]  APPX0020597, APPX0099613.  Moreover, [

                                                                    ].

*Id.*

 Given these multiple sources of evidence, including contemporaneous documentation, a

reasonable mind could conclude, as the Commission did, that "subject imports were being

offered at low prices during this time."  *See* APPX0020597, APPX0099613.

 OCP has no legitimate grounds to challenge the Commission's reliance on this evidence,

however many times it describes evidence as "cherry-picked."  *See* OCP Br. at 26, 27.  For

example, OCP contends that "several of Mosaic's customer emails were contradicted by

questionnaire responses [                              ]", namely [

       ].  OCP Br. at 27.  In actuality, although [                    ] reported that they [

Case 1:21-cv-00219-SAV   Document 101   Filed 02/11/22   Page 13 of 29

Consol. Court No. 21-00219                                      NON-CONFIDENTIAL VERSION

] and [

], *see* APPX0098486, these responses do not contradict the evidence of Mosaic's price

negotiations with its customers, which shows them trying to force Mosaic to lower its prices by

referencing [                              ] for imported product and published prices.  Notably, [

] *See*

APPX0018723, APPX0098486.  Thus, the [               ] questionnaire responses that OCP cites

do not contradict the record evidence from Mosaic's customer emails or detract from the

Commission's finding that subject imports were offered at low prices and caused significant

price depression during the POI.

        b)      <u>Trade publications support the Commission's finding that subject imports depressed prices</u>

The Commission found that subject imports oversupplied a U.S. market experiencing

declining demand in 2019, through a combination of significant imports prior to 2019 that built

up in inventory and additional imports at elevated levels in 2019.  APPX0020595,

APPX0099611.  In support of this finding, the Commission cited [      ] contemporaneous,

published reports from [                    ] sources – Argus, [                                    ]

– showing that "heavy imports" had contributed significantly to an oversupply situation while

U.S. demand declined significantly.  APPX0020595-0020596, APPX0099611-0099612.

OCP argues that the Commission was somehow obligated to justify its reliance on these

reports, given allegedly contradictory "overselling" data "showing that throughout the POI

Case 1:21-cv-00219-SAV  Document 101  Filed 02/11/22  Page 14 of 29

Consol. Court No. 21-00219                                    NON-CONFIDENTIAL VERSION

subject imports were not coming in at low prices." OCP Br. at 30. As an initial matter, OCP is

again inviting the Court to improperly reweigh the record evidence. Further, OCP's reference to

imports "overselling" the domestic like product is misplaced. Underselling and price depression

are distinct concepts, *see Altx, Inc. v. United States*, 25 CIT 1100, 1109, 167 F. Supp. 2d 1353,

1365 (2001), and the Commission found that both subject import and domestic industry prices

declined from late 2018. APPX0020594, APPX0099609. The relevant question was whether

subject imports contributed to this decline, and the Commission reasonably relied on the trade

publications as one of many sources in finding that they did. *See, e.g.*, APPX0020595,

APPX0099611 ("{T}he US is awash with imports . . . Pushing so much DAP/MAP to the US

has led to oversupply."); APPX0020596, APPX0099612 ("Rather than maintain prices, OCP

appears to be gunning for volume . . ."). The fact that so many reports from [        ]

publications attested to imports oversupplying the market – and driving down prices –

corroborates their reliability.

 OCP also fails to mention that other evidence corroborates the published reports and

confirms that subject merchandise was being imported at low prices during the POI. For

example:

- As the Commission stated, OCP's own witness conceded at the Commission's hearing that "NOLA {*i.e.*, New Orleans, Louisiana} prices were lower than prices in Brazil due to a market imbalance, and that inventory build-up was not worked down 'until the end of the strong fall 2020 application season.'" APPX0020597, APPX0099613.

- Questionnaire data showed that subject import inventories at the end of 2018 and 2019 were [        ] percent and [        ] higher, respectively, compared to the end of 2017. *Id*.

- U.S. importers testified at the Commission's hearing that they continued importing new volumes into the declining U.S. market in 2019 because it was cheaper than shifting their existing U.S. inventories to new locations. *Id*.

- U.S. importers admitted that [

    ]. *Id.*

Thus, this case is very different from the single case OCP cites, *Chr. Bjelland Seafoods A/S v.*

*United States*, 19 CIT 35 (1995), where the only record evidence of causation was one sentence

in a solitary press report "unsubstantiated by *any* corroborating evidence in the record."  19 CIT

at 41.  Here, by contrast, the Commission relied on *multiple* trade publications from [

    ] as one of *multiple* types of evidence all leading to the same conclusion:  subject imports

significantly depressed prices for the domestic like product.

c)      Mosaic's alleged price leadership does not detract from the
        Commission's price depression finding

OCP contends that the Commission ignored pricing data allegedly showing [

                    ], and purchaser questionnaire responses that cited Mosaic

as the price leader in the U.S. market.  OCP Br. at 30; *see also* PhosAgro Br. at 8-9.  As an initial

matter, purchaser responses to the standard Commission question about price leadership do not

dictate the Commission's price effects findings.  The Commission has previously found that

subject imports depressed prices despite a majority of purchasers identifying domestic producers

as the price leaders in the U.S. market.  *See Hydrofluorocarbon Blends and Components from*

*China*, Inv. No. 731-TA-1279, USITC Pub. 4629 (Aug. 2016), Views at 25 (finding price

depression), Staff Report at V-3 (11 of 17 purchasers identifying domestic producers as price

leaders).[3]  This makes sense:  the fact that purchasers identify domestic producers as price

leaders does not mean that subject imports cannot depress prices – *e.g.*, by oversupplying the

market, or by using domestic producers' prices as a reference point from which to offer

discounted prices.

      Here, the Commission considered the purchaser responses and other evidence concerning

price leadership, *see* ITC Br. at 31, and it relied on substantial evidence showing that subject

imports did in fact exert downward price pressure.  APPX0020597-0020598, APPX0099614-

0099615.  For example:

- Purchaser [              ] reported that [



                                                      ].  APPX0020598,
  APPX0099614.

- Purchaser [                  ] reported that [
                                       ].  *Id.*

- Purchaser [          ] reported that [

                                         ].  APPX0020598,
  APPX0099614-0099615.

- As noted above, [

                                         ].  APPX0020597, APPX0099613.

---

[3] In the lone Commission determination cited by PhosAgro, the Commission noted that "no
respondent purchaser mentioned any subject importer or subject producer as a price leader in the
U.S. market."  *Certain Cold-Rolled Steel Products from Argentina, Brazil, Japan, Russia, South
Africa, and Thailand*, Inv. Nos 701-TA-393 and 731-TA-829-830, 833-834, and 838 (Final),
USITC Pub. 3283 (Mar. 2000), Views at 17, *quoted in* PhosAgro Br. at 8-9.  Here, by contrast,
subject foreign producers OCP and EuroChem and importers Koch, ADM, and Gavilon were
among those identified as price leaders in the U.S. market.  APPX0018708, APPX0098471.

This evidence from the Commission's questionnaires supports the Commission's price depression finding.  Although some questionnaire respondents (including parties who oppose duties) identified Mosaic – the largest U.S. producer – as a price leader, this does not make it unreasonable for the Commission to conclude, based on other evidence, that subject imports depressed prices for the domestic like product.

        d)      <u>Correlations between prices and other factors support the Commission's price depression finding</u>

OCP contends that the Commission ignored evidence showing the absence of a correlation between domestic producers' prices and the presence of subject imports.  OCP Br. at 30-31.  As the Commission's brief demonstrates, the Commission did in fact carefully examine domestic producer and subject import price trends in relation to other developments.  Unlike OCP, however, it did so while accounting for key factors such as demand and inventories.  ITC BR. at 31-32.  The Commission reasonably found that the increased presence of subject imports in the U.S. market corresponded with lower prices for the domestic like product (in 2019), and their absence from the U.S. market corresponded with a sharp increase in prices for the domestic like product (from July through September 2020, after Mosaic filed its petitions) – a correlation which confirms that subject imports were a significant cause of price depression.

Specifically, in 2019, U.S. demand fell.  APPX0020595, APPX0099610-0099611.  Whereas domestic producers' U.S. shipments decreased by **[       ]** percent from 2018 to 2019, APPX0020595, APPX0099611, subject import competition intensified:  subject import shipment volumes and market share increased; subject import entry volumes remained higher than in 2017; and multiple sources describe subject imports as oversupplying the U.S. market and pressuring prices.  APPX0020594-0020597, APPX0099610-0099613; *see also* Section V.B.1.a-

Case 1:21-cv-00219-SAV   Document 101   Filed 02/11/22   Page 18 of 29

Consol. Court No. 21-00219                                   NON-CONFIDENTIAL VERSION

c.  At the same time, U.S. prices fell below global prices.  APPX0020598, APPX0099615.

These correlations support the Commission's price depression finding.

2020 started with improved weather but subject import inventories still at elevated levels.

APPX0020597, APPX0099613 (showing subject import inventories at the end of 2019 were [

] percent higher than in 2017); APPX0020598, APPX0099615.  In the first half of 2020 (*i.e.*,

before Mosaic filed its petitions), domestic producers' prices recovered somewhat but remained

below their levels in early 2019 and 2017.  APPX0020594, APPX0020598, APPX0099609-

0099610, 0099615.  The situation changed dramatically after Mosaic filed the petitions:  subject

imports declined substantially, and U.S. prices "sharply increased to levels above other global

markets."  APPX0020598, APPX0099615; *see also* ITC Br. at 32.  This evidence also supports

the Commission's price effects finding.

OCP focuses on [

].  According to OCP, these developments undermine the Commission's price

depression finding.  OCP Br. at 30-31.  However, OCP ignores key facts in the Commission's

analysis:  demand [                                        ], APPX0020581, APPX0099591-

0099592, and [


].  APPX0020597,

APPX0099613.  Thus, contrary to OCP's contentions, the mere fact that [

] fails to

undermine the Commission's finding that subject imports depressed domestic prices during the

POI.

OCP also argues that a lack of correlation exists because, [

], subject import volume and market share [          ], while the average unit values of

domestic producers' U.S. shipments [      ].  OCP Br. at 31.  However, OCP's comparison of

these two periods obscures key facts that the Commission's analysis took into account, including

monthly pricing and import data that permitted a more detailed analysis than the data OCP cites.

Subject imports maintained a significant presence in the U.S. market throughout [

].  *See* APPX0020594, APPX0020598, APPX0099609-0099610,

APPX009915.  [              ], by contrast, covered both the [

], *and* [

] APPX0020598-0020598, APPX0099615-0099616.  The

Commission reasonably interpreted this evidence as showing that an oversupply of subject

imports in the U.S. market corresponded with lower U.S. prices for the domestic like product,

and their absence from the U.S. market corresponded with higher U.S. prices for the domestic

like product.

### 2.    The Commission's underselling analysis is in accordance with law

OCP asserts that "{t}he Commission must *determine* 'whether there has been significant

price underselling by the imported merchandise as compared with the price of domestic like

products of the United States.'"  OCP Br. at 22 (emphasis added) (quoting 19 U.S.C. §

1677(7)(C)(ii)(I)).  OCP's partial quote of the statute is misleading, as the full provision states

only that the Commission shall "consider" this question.  ITC Br. at 14; *see also Cemex, S.A. v.

United States*, 16 CIT 251, 260-261, 790 F. Supp. 290, 298-99 (1992).  The Commission fulfilled

Case 1:21-cv-00219-SAV   Document 101   Filed 02/11/22   Page 20 of 29

Consol. Court No. 21-00219                                        NON-CONFIDENTIAL VERSION

the statutory requirements to "consider" whether the subject imports significantly undersold the domestic like product, and whether they otherwise depressed or suppressed prices to a significant degree. ITC Br. at 13-15, 21-22; *see also* 19 U.S.C. § 1677(7)(C)(ii).

OCP quotes the Commission's *PET Resin Remand* determination, OCP Br. at 24-25, but the quoted passages addressed a Commission finding on underselling, not price depression. *See Polyethylene Terephthalate Resin from Brazil, Indonesia, Korea, Pakistan, and Taiwan*, Inv. Nos. 731-TA-1387-1391 (Final) (Remand), USITC Pub. 5125 at 16, 19 (Sept. 2020) ("*PET Resin Remand*"). Because the instant case involves a finding of price depression, *PET Resin Remand* does nothing to undermine the Commission's determinations. Moreover, the facts are different. In *PET Resin Remand*, the average overselling and underselling margins were 8.1 percent and 5.8 percent, respectively; underselling declined over the POI; and some purchasers reported domestic prices to be higher than import prices. *Id.* at 16, 18-19. Here, by contrast, the Commission relied on evidence showing that domestic and import prices "tracked each other closely over the POI," with "small" overselling and underselling margins of 3.7 percent and 1.7 percent, respectively; [                                                    ]; and not one purchaser reported domestic prices to be higher than import prices. APPX0020592-0020594, APPX0099607-0099609.

### C. The Commission's Impact Findings are Supported by Substantial Evidence and Otherwise in Accordance with Law

Mosaic agrees with and adopts the Commission's arguments with respect to its impact findings. *See* ITC Br. at 32-48. Mosaic presents below additional reasons why this Court should affirm them.

    **1.**     **The Commission's impact analysis reasonably accounted for correlations between subject imports and signs of injury**

Plaintiffs argue that the Commission failed to demonstrate that import volume trends were correlated with the domestic industry's financial performance.  In support of their position, Plaintiffs compare the domestic industry's operating margin to subject import volumes during the period of review.  OCP Br. at 46-47.  This ignores key factors, such as changes in U.S. demand, as the Commission explained in its brief, ITC Br. at 39-40, and detailed further below.

*First*, OCP contends that the Commission ignored that the increase in subject imports from 2017 to 2018 coincided with **[**     **]** in the domestic industry's profitability.  OCP Br. at 46.  To the contrary, the Commission recognized that a significant amount of those increased subject import volumes were not shipped into the U.S. market in 2018 but rather accumulated in importer inventories, and it reasonably concluded that this build-up of inventories combined with further subject imports at elevated levels in 2019 to cause an oversupply situation and consequent price declines that adversely affected the domestic industry's financial results in 2019.  APPX0020595-0020597, APPX0020603, APPX0099611-0099613, APPX0099622-0099623.

*Second*, OCP argues that there is a lack of correlation between the domestic industry's performance and subject imports' market presence in interim 2020 compared to interim 2019.  However, **[**     **]**, OCP's comparison of interim periods is misleading.  Interim 2019 (January-September 2019) omits the October to December 2019 period, when **[**

    **]**.  *See* APPX0020602, APPX0099621; APPX0018690-0018693, APPX0098473-0098476.  In addition, interim 2020 (January-September 2020) includes approximately six months of time before Mosaic filed its petitions, during which subject imports maintained a significant presence in the U.S. market and domestic prices **[**

]. *See id.*  The Commission reasonably found that subject imports' adverse impact during the first two-thirds of interim 2020 outweighed improvements in the domestic industry's production, sales, and prices during the last three months of interim 2020 (*i.e.*, in July-September 2020).  APPX0020602, APPX0099621.  Further, the Commission reasonably found that those improvements were attributable to the substantial declines in subject imports after Mosaic filed its petitions, thereby confirming the causal relationship between subject imports and the domestic industry's material injury.  *Id.*; APPX0020606, APPX0099626.

**2.      The Commission's findings regarding excess domestic industry capacity and the purported "supply gap" are supported by substantial evidence and otherwise in accordance with law**

OCP questions the credibility of domestic producers' reported excess capacity data, because the domestic industry did not [                                                                                    ] from interim 2019 to interim 2020.  OCP Br. at 37-38.  Contrary to OCP's assertion, however, there was no "golden opportunity" for increased domestic production for the first two-thirds of interim 2020 because subject imports remained in the market.  Then, from July to September 2020, subject imports largely exited the U.S. market in response to the petitions.  APPX0020590, APPX0020601, APPX0099604, APPX0099619.  Mosaic's CEO testified that the company was not in a position to respond to this supply shock by rapidly increasing its production, because the plant closures and curtailments it had been forced to implement in 2017-2019 (under pressure from subject imports) and the practical realities of phosphate fertilizer production precluded it

from doing so.[4]  APPX0017489; *see also* APPX0020606, APPX0099626.  Thus, OCP is

incorrect that it was unreasonable for the Commission to rely on the domestic industry's reported

excess capacity.  *See also* ITC Br. at 42; *Shandong TTCA Biochemistry Co. v. United States*, 35

CIT 545, 552-53, 774 F. Supp. 2d 1317, 1325 (2011) ("Based on these numbers {in the

Commission Staff report}, it was reasonable for the Commission to conclude there was excess

capacity.").

  The Commission also properly rejected respondents' arguments that a purported "supply

gap" pulled subject imports into the U.S. market.  ITC Br. at 43-47.  Contrary to Plaintiff's

arguments, the Commission did not "understate{} the domestic supply gap" or "overstate{} the

volume of subject imports pulled into the U.S. market to fill the gap," because the Commission

did not find that a "supply gap" existed.  *Compare* OCP Br. at 8, *with* ITC Br. at 43.  The

Commission discussed respondents' supply gap arguments, but it rejected them and did not

otherwise find a supply gap.  *See* APPX0020584-0020585, APPX0020604-0020605,

APPX0099595-97, APPX0099624-0099625.  Rather, the Commission found that "subject

imports eclipsed any reduction in U.S. production between 2018 and 2019 when U.S. demand

declined."  *Id.*, APPX0020605; APPX0099625.  This finding is supported by substantial

evidence, as the Commission explained in its brief, including Mosaic's hearing testimony that

---

[4] OCP makes a spurious comparison of subject imports to the domestic industry's excess
capacity and capacity utilization in 2019.  OCP Br. at 37 n.40.  This ignores that, after idling its
Plant City facility in December 2017, Mosaic was forced to idle and curtail other production
facilities in 2019 – when subject import shipments peaked – and then re-start production at those
facilities in December 2019 and 2020.  APPX0020582, APPX0020601, APPX0099593,
APPX0099619.

the idling of Plant City resulted in a decrease of U.S. market supply of only 700,000 ST.  *See*

ITC Br. at 44.[5]

　　OCP also argues that the Commission erred in ignoring "contemporaneous record

evidence show{ing} that Mosaic understood that the Plant City closure" resulted in a supply

reduction much greater than 700,000 ST.  *See* OCP Br. at 9.  However, the only evidence that

OCP cites in support of its argument is an isolated statement from Mosaic's CEO during a March

2019 analyst call that Mosaic "gave up 1 million tonnes" (*i.e.*, 1.1 million ST) of the U.S. market

after idling Plant City.  *See* APPX0012655-56.  The Commission reasonably gave greater weight

to other evidence of the impact of Plant City's idling in 2018, rather than this isolated

extemporaneous statement.

　　For example, as Mosaic testified at the hearing, Plant City had a nameplate capacity to

produce 2.2 million ST of phosphate fertilizer per year but was operating below full capacity and

only producing 1.4 million ST per year when Mosaic idled the facility in December 2017.  *See*

APPX0017503.  Of that amount, Mosaic sold approximately half in the U.S. market and half in

export markets.  *See id.*; *see also id.* APPX0017575 ("We shipped into the U.S. market from

Plant City approximately 700,000 short tons."); *see also* ITC Br. at 44 (citing APPX0099596).

Mosaic's certified U.S. producer's questionnaire response – which reflects Mosaic's audited

sales records for 2017 and 2018 – corroborates this evidence.  *See* Mosaic US Producer's QR, Q

---

[5] The Commission rebuts OCP's argument that the impact analysis [                                                    ] the
effects of Plant City's 2017 idling and shows that Mosaic's reasons for that decision are not
central to the Commission's impact finding.  *See* ITC Br. at 35-37; OCP Br. at 33-36.  Further,
Mosaic's statements about asset optimization, which OCP cites, are consistent with record
evidence, including Mosaic's sworn testimony, that "subject imports played a significant role in
driving prices to levels that made it uneconomical to operate" the facility.  APPX20604,
APPX0099624; *see also* APPX0017487.  As Mosaic's counsel summarized at the hearing,
domestic producers' highest-cost facilities are the first to fall when confronted with unfair import
competition.  APPX0017790.

Case 1:21-cv-00219-SAV   Document 101   Filed 02/11/22   Page 25 of 29

Consol. Court No. 21-00219                                    NON-CONFIDENTIAL VERSION

II-7 (showing [

]).  Moreover, the Commission relied on record evidence undermining OCP's

contention that subject imports merely served U.S. customers who could not get domestic supply

following Plant City's idling.  *Cf.* OCP Br. at 8-9, 41-43.  [


].

APPX0020605, APPX0099625.  The Commission weighed this substantial record evidence

against the solitary piece of evidence that respondents proffered and reasonably credited the

former in finding that respondents' "supply gap" theory did not break the causal link between

subject imports and the domestic industry's material injury.  It is not this Court's role to reweigh

the evidence.

     Further, the Commission did not unreasonably depart from prior practice in comparing

Mosaic's reduction in U.S. supply to the total volume of subject imports, contrary to Plaintiff's

arguments.  *See* OCP Br. at 12-13.  Plaintiff cites examples of the Commission measuring

apparent U.S. consumption based on shipment data, *i.e.*, U.S. importers' reported U.S. shipments

and U.S. producers' reported U.S. commercial shipments.  *See id.*  None of the Commission

decisions that Plaintiff cites involved analysis of a "supply gap," which, as the Commission

explained in its brief, the Commission generally understands to mean a "shortfall between

domestic capacity and demand."  *See* ITC Br. at 43.  In prior cases, the Commission has

analyzed either import entries or shipment data for this purpose.  *See, e.g.*, *Certain Corrosion-*

*Resistant Steel Prod. from China, India, Italy, Korea, & Taiwan*, USITC Inv. No. 701-TA-534,

USITC Pub. No. 4620, at 24 (July 2016) (Final) (comparing the scope of supply disruptions to

the magnitude of the increase in subject imports of 1.3 million ST); *Certain Structural Steel*

*Beams from China, Germany, Luxembourg, Russia, South Africa, Spain, & Taiwan*, USITC Inv.

No. 731-TA-935, USITC Pub. No. 3522, at 13-14 (June 2002) (comparing supply shortages and

changes in subject import levels based on official import statistics).  Thus, the Commission's

comparison of the reduction in U.S. supply to import entry data in this case does not represent a

departure from prior determinations.

### 3. The Commission reasonably considered and rejected Plaintiffs' arguments about the domestic industry's alleged unwillingness to supply the U.S. market

Plaintiffs contend that the Commission inadequately addressed their arguments that the

domestic industry's material injury can be explained by its alleged failure to supply U.S.

customers and its prioritization of export markets.  OCP Br. at 42-43; IRM Br. at 8-11; Koch Br.

at 3-5.  As its brief demonstrates, the Commission fully considered – and reasonably rejected –

these non-attribution arguments.  ITC Br. at 40-43; *see also* APPX0020605-0020606,

APPX0099626-0099627.

The Commission relied on record evidence undermining Plaintiffs' arguments.  The

majority of purchasers reported that domestic product was either comparable or superior to

subject imports in terms of availability and reliability of supply, APPX0020606, APPX0099626,

and only a minority of purchasers reported supply constraints solely with respect to domestic

product.  APPX0020606, APPX0099626.  Moreover, exports to counter-seasonal markets like

India and Brazil help support the domestic industry's year-round capacity utilization during "off-

season" periods in the United States and help mitigate risk when U.S. demand is low.

APPX0020606, APPX0099626.  During the oversupply situation that prevailed in 2019 – when

Moroccan and Russian producers were [                                                                    ]

Case 1:21-cv-00219-SAV  Document 101  Filed 02/11/22  Page 27 of 29

Consol. Court No. 21-00219                                    NON-CONFIDENTIAL VERSION

to stuff the U.S. market with excess imports, APPX0020605, APPX0099626 – Mosaic increased

exports because the U.S. market could not absorb additional product.  APPX0017108,

APPX0020600, APPX0097162, APPX0099618.  Then, when subject imports largely exited the

U.S. market after Mosaic filed the petitions,  "the domestic industry increased production and

U.S. shipments, and also diverted export shipments to make additional product available to U.S.

customers."  APPX0020606, APPX0099626.  Thus, record evidence supports the Commission's

findings that subject imports were injurious and not merely responding to Mosaic's alleged

preference exporting rather than supplying U.S. customers.

      In addition, many of the examples OCP cites as instances of alleged refusals to supply are

either from the post-petition period, when subject imports' withdrawal from the market created a

short-term supply shock, or reflect [

                        ].  *Compare* OCP Br. at 42; APPX0016486-0016491,

APPX0097695-0097700, *with* APPX0020605, APPX0099625.  This evidence provided the

Commission with a reasonable basis to conclude that the domestic industry's injury was not due

to the domestic industry's refusal to sell product to home-market customers, but rather to the

effects of subject imports.

**VI.    <u>CONCLUSION</u>**

      For the reasons discussed above, Mosaic respectfully requests that this Court reject all

arguments made by Plaintiffs and *amici* and accordingly deny Plaintiffs' motions for judgment

on the agency record in their entirety.

**NON-CONFIDENTIAL VERSION**

Respectfully submitted,

/s/ Patrick J. McLain
David J. Ross
Jeffrey I. Kessler
Patrick J. McLain
Stephanie E. Hartmann
Alexandra Maurer
Wilmer Cutler Pickering Hale and Dorr
LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6393
patrick.mclain@wilmerhale.com

*Counsel for The Mosaic Company*

Dated: February 10, 2022

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this Memorandum in Opposition to Plaintiffs' Rule 65.2 Motions for Judgment on the Agency Record complies with the Court's 7,000-word limitation requirement.  The word count for this submission, as computed by Wilmer Cutler Pickering Hale and Dorr LLP's word processing system, is 6,838 words, including headings, footnotes, and quotations, and excluding the cover page, table of contents, table of authorities, counsel's signature block, and this certificate.

<u>/s/ Patrick J. McLain</u>
(Signature of Attorney)

<u>Patrick J. McLain</u>
(Name of Attorney)

<u>The Mosaic Company</u>
(Representative Of)

<u>February 10, 2022</u>
(Date)