# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| OCP S.A.,<br>        Plaintiff,<br><br>EUROCHEM NORTH AMERICA CORPORATION,<br>        Consolidated Plaintiff,<br><br>and<br><br>PHOSAGRO PJSC, INTERNATIONAL RAW MATERIALS LTD., and KOCH FERTILIZER, LLC,<br>        Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br>        Defendant,<br><br>and<br><br>THE MOSAIC COMPANY and J. R. SIMPLOT COMPANY,<br>        Defendant-Intervenors. | Consol. Court No. 21-00219<br><br>**NON-CONFIDENTIAL VERSION**<br><br>Business Proprietary Information Removed from Pages 5-7 |

## PLAINTIFF-INTERVENOR KOCH FERTILIZER LLC'S COMMENTS IN OPPOSITION TO THE INTERNATIONAL TRADE COMMISSION'S FINAL REMAND DETERMINATION

Kenneth G. Weigel
Lian Yang

**Alston & Bird LLP**
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3431
Emails:
Ken.Weigel@alston.com
Lian.Yang@alston.com

*Counsel to Koch Fertilizer, LLC*

**TABLE OF CONTENTS**

I. OVERVIEW ................................................................................................................. 1
II. IMPORTS WERE NECESSARY TO SUPPLY US FARMERS ........................................... 2
III. UNFORESEEN AND UNUSUAL WEATHER EVENT REDUCED US DEMAND.......... 4
IV. INVENTORIES LEVELS WERE REASONABLE ............................................................. 6
V. PRICE SUPPRESSION ON DEPRESSION ....................................................................... 6
VI. IMPACT ON US INDUSTRY ........................................................................................ 7
VII. CONCLUSION ............................................................................................................ 8

# PLAINTIFF-INTERVENOR KOCH FERTILIZER, LLC'S COMMENTS IN OPPOSITION TO THE INTERNATIONAL TRADE COMMISSION'S FINAL REMAND DETERMINATION

The U.S. International Trade Commission ("Commission" or "ITC") filed its remand determination with this Court on January 17, 2024. The remand determination, like the initial determination, is based on a finding of an oversupply of imports, but this time for a different reason - that the domestic industry could have met US demand.

Plaintiff-Intervenor Koch Fertilizer, LLC ("Koch")[1] submits that the Commission's remand determination is contrary to this Court's prior Order as well as unsupported by substantial evidence and not in accordance with law. Koch fully supports *Plaintiff's Comments in Opposition to the International Trade Commission's Final Remand Determination* filed by OCP SA on February 17, 2024. ECF. No. 157. In this submission, Koch sets forth its comments to supplement OCP's filing. Koch respectfully submits that the Court should again remand this determination to the ITC.

## I. OVERVIEW

The Commission's remand determination is basically that an excess of imports of phosphate fertilizer from Morocco and Russia created an oversupply of phosphate fertilizer in the US that caused prices to decline, thereby injuring the US industry. But this simplistic and superficial approach is not supported by the facts on the record and is not in accordance with the law. The facts on the record reveal that the imports were needed to satisfy anticipated US demand, but that three consecutive unforeseen weather events ultimately prevented applications of phosphate fertilizer in certain parts of the US and reduced demand after imports had already

---

[1] Koch is a major distributor of fertilizers to US farmers. In the POI it had 10-12 distribution warehouses that stocked and sold phosphate fertilizer and were located generally in MidAmerica. It does not produce and thus must purchase phosphate fertilizer to supply to its customers.

occurred. The Commission's decision improperly makes imports the scapegoat for a situation that was completely weather related.

To reach its conclusion that imports oversupplied the US market in the period of investigation ("POI"), the Commission now finds that although import inventories could not have been relocated, domestic phosphate inventories could have been relocated and, together with US production, domestic supply was sufficient to satisfy US demand.[2] However, as explained below, the record evidence clearly shows that imports were needed and that an unanticipated and temporary decrease in demand, due to three consecutive weather events, resulted in less use of phosphate fertilizers by US farmers at certain geographic locations.

## II.  IMPORTS WERE NECESSARY TO SUPPLY US FARMERS

The Commission's affirmative remand determination that domestic supply was sufficient to satisfy US demand in 2019 is contradicted by overwhelming evidence on the record including that proffered by Koch.

There is no dispute that for reasons other than import competition Mosaic closed its Plant City facility and Nutrien closed its Redwater facility, and that these actions reduced the traditional available supply of phosphate fertilizer for US farmers. APPX0020319-APPX0020320. Mosaic even acknowledged that its action meant more imports of phosphate fertilizers. APPX0020352. However, to reach its affirmative remand determination the ITC

---

[2] The Court remanded finding that the ITC lacked evidence for finding that import inventories could be relocated. On remand, the ITC issued a questionnaire to attempt to place facts on the record to support its inventory relocation theory. Although the remand questionnaire was confusing and not designed to elicit information relevant to the Court's concern, based on the questionnaire responses the Commission now correctly finds that import inventories could not be relocated to meet the demand. APPX0099989. However, rather than acknowledge that this fact means imports were needed in 2019, the Commission now finds that the US industry could have met this demand including by relocating domestic product in inventories.

finds the supply of US phosphate fertilizer sufficient to meet US demand. This conclusion that domestic supply could have replaced these imports flies in the face of facts on the record.

First, the domestic industry intentionally does not sell to some purchasers such as Koch. Koch is a major supplier of fertilizers to US farmers, but it must rely on imports of phosphate fertilizer to be able to supply this to its fertilizer customers. Mosaic has declined to sell meaningful amounts of phosphate fertilizers to Koch in recent years, forcing Koch to purchase imported phosphate fertilizers to cover over 99 percent of its sales during the POI. APPX0009866. Koch explained to the ITC that in the last few years Koch has frequently asked Mosaic if it would sell it barges of phosphate fertilizers at market prices. Mosaic has generally declined these inquiries. APPX0015350. As a result, Koch has been able to purchase less than 1% of its North American needs from Mosaic. APPX0015350. Thus, in the POI, Koch has had to rely on imports for over 99 percent of its supply. APPX0015350.

Second, when Mosaic closed Plant City, it reduced sales to some of its existing US customers, forcing them to turn to imports. The ITC record is replete with facts that Mosaic abandoned or reduced sales to US customers, forcing these U.S. purchasers to source from imports. APPX0020409. Mosaic even explicitly told some of its U.S. purchasers to seek alternative sources, *i.e.*, imports, as Mosaic was planning to sell in Brazil. APPX0020352-APPX0020353.

Third, even if the remaining facilities had nameplate capacity to supply the US market, a significant portion of domestic production is exported. As Koch explained to the ITC, Mosaic participates in the global phosphate fertilizer market and Mosaic exports a significant amount of its U.S. production to its large Brazilian business (purchased in 2016). APPX0009868. Koch

further explained to the ITC why Mosaic's exports made economic sense. APPX0009869-APPX0009870. These actions intentionally left the U.S. market short of supply. APPX0009868.

Finally, the Commission's remand determination even recognized that Mosaic said it needed to import from Saudi Arabia to satisfy US demand when imports declined. APPX0021194.

In sum, the record contradicts the Commission's finding that there was sufficient US supply so imports were not needed, and thus oversupplied the US market in 2019. The finding that imports were not needed cannot be reconciled with the facts showing that imports were needed as domestic supply was in fact unavailable. Koch respectfully submits that this Court should remand this matter to the ITC so it may review and correct its finding that domestic production and domestic inventories which could be relocated were sufficient to satisfy US demand.

### III. UNFORESEEN AND UNUSUAL WEATHER EVENT REDUCED US DEMAND

On the demand side, there is no dispute that imports were necessary to satisfy demand by US farmers, but that three consecutive weather events in 2018-2019 prevented many US farmers from applying phosphate fertilizer as usual. APPX0020318. As Koch explained, the phosphate fertilizer must be at its distribution location when needed by the farmers. As it takes about 6 months to have imported phosphate fertilizer at a distribution location, inventories must exist for anticipated demand. In this regard, Koch told the ITC that its customers (retailers) may buy the product at any time to stock up for when their customers (farmers) need it. They, like Koch, buy based on their inventory levels, their anticipated needs (based on the weather) and their belief as to whether prices will fall or rise. Accordingly, Koch makes sales all year long and its inventory

must be replenished constantly, which intensifies during the first and the third quarters. APPX0009871. Because [                                              ] must plan its purchases well in advance of need based on *anticipated* market demand. APPX0091732.

Discussing demand in the POI, Koch explained in its questionnaire response that US demand stayed strong through September 2018 but started decreasing in October when an historically wet weather period started and continued through December, significantly reducing fall 2018 demand and prices, and resulted in [

] APPX0087593. Koch further explained that from December 2018 to June 2019, in anticipation of significantly higher spring demand, including needing to catch up from a historically poor fall season, both domestic producers (by limiting exports to normal levels) and importers positioned supply accordingly. APPX0087593. Unfortunately, the wet weather continued through the spring of 2019 and beyond and again resulted in [

] and others. APPX0099985-APPX0099986.

The weather events had another effect that harmed Mosaic. In its questionnaire response, Koch stated that there was an earlier than normal summer-fill buying (buying occurred in April and May vs the normal June and July). This early buying allowed [

] APPX0087593. However, this early summer fill had an adverse impact on Mosaic as Mosaic had stopped US sales (in favor of exports as usual in this time period). So, when Mosaic returned to the U.S. market in the third quarter 2019, much U.S. demand had already been filled. Thus, Mosaic's actions, not imports, added downward pressure on the U.S. prices. In short, the actual sequence of events reveals that Mosaic (not imports) was the culprit of the price decrease in late 2019. APPX0009872.

The ITC continues to find that imports could have been stopped sooner in 2019. In support of this finding, the Commission notes that imports were able to be stopped quickly upon the filing of the petition. APPX0021184. But the ITC's comparison is misplaced. As Koch explained above, imports were planned and thus occurred in 2019 so that Koch and others had sufficient inventory to supply customers assuming anticipated demand. In contrast, when the petition was filed, the potential future cost increase in duties was known so it was reasonable to replace these imports with others. Koch supports OCP's discussion of this issue.

### IV. INVENTORIES LEVELS WERE REASONABLE

In a further attempt to support its import oversupply finding in the remand determination, the ITC analyzes inventory levels. The conclusions drawn from this analysis do not support a finding of material injury by reason of imports. Koch supports OCP's analysis of US and imported inventories. Koch also notes that the ITC's available inventory data do not reveal the geographic differences in import inventory levels, and it is now a fact that <u>import</u> inventories at their final destination are not moved to other locations; those other locations must be filled with imports for companies such as Koch. Thus, the ITC's consideration of inventories to support its finding that the level of imports was too high is contrary to facts on the record. Phosphate fertilizer sellers like Koch could not relocate import inventories or procure domestic product.

Koch explained its inventory practices in the POI, stating that Koch maintains an inventory of [        ] tons in its supply system. APPX0091732. Koch's planning and inventory ensure timely delivery through the supply chains so when farmers need to apply fertilizer, usually in the second (Spring) and the fourth (Fall) quarters as the weather dictates in these time windows, it is available. APPX0009871.

### V. PRICE SUPPRESSION ON DEPRESSION

In the remand determination, the Commission continues to find price depression, but this finding is clearly not supported by the record as a whole. The Commission's again superficial view is that because imports were oversupplied, imports must have caused price depression or suppression. Even assuming *arguendo* that there was an oversupply of imports, the evidence does not support a finding that imports caused any price suppression or depression.

As usual, the Commission collected quarterly prices on certain phosphate fertilizer products in questionnaires issued to domestic producers and importers. The questionnaire response data actually show overselling by imports in the overwhelming majority of quarters and products. APPX0021164-APPX0021166. The Commission's conclusion from these data is that prices were comparable. APPX0021166.

However, the Commission then uses selected qualitative data as well as unverified news accounts from the petition to support its claim that imports undersold US product. APPX0021176-APPX0021178.

The Commission does even not attempt to reconcile these two different price findings, but the overwhelming evidence is that imports did not undersell the domestic phosphate fertilizer. The facts support the comparable finding as Koch said prices at major supply-and-demand hubs are transparent as they are published. APPX0015691. Koch, which sold exclusively imported phosphate fertilizer in the POI, explained that it has no reason or incentive to sell below the U.S. market price. APPX0009866. Rather, Koch competes by leveraging its logistics network to sell to customers where it is "freight advantaged" at the market price. [             ] APPX0091727.

VI. **IMPACT ON US INDUSTRY**

The economic indicia for the US industry showed declines in the POI. APPX0020476 – APPX0020492. The same is true of Koch's phosphate fertilizer business. APPX0087577-APPX0087629. The issue is why this occurred, and here the Commission incorrectly attributes it to imports. The Commission says it considered other factors and concludes that in any respect imports were a factor, and that is all that is required under the statute. APPX0021159. Koch agrees with OCP that the record evidence does not support a finding that imports caused any injury to Mosaic or the US industry. Instead, the record shows that the imports were needed to satisfy anticipated US demand and only because of the three consecutive weather events did US demand temporarily decline. It was the weather events, not the imports, which caused the temporary decline in demand and resulting economic consequences.

## VII. CONCLUSION

In the remand determination the ITC continues to reach an affirmative determination because of alleged excess imports. It just provides a different reason why they were in excess, but this reason like the last one is not supported by the record. And the Commission's pricing analysis continues to be internally inconsistent and unsupported by the record as a whole. The record however only supports a finding that weather events were the cause of the industry's economic problems in end of the POI.

For the foregoing reasons, and those incorporated by reference in OCP's comments, Plaintiff-Intervenor Koch respectfully requests that the Court remand the matter to the ITC.

Dated: March 1, 2024　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Kenneth G. Weigel*

　　　　　　　　　　　　　　　　　　　　Kenneth G. Weigel
　　　　　　　　　　　　　　　　　　　　Lian Yang

　　　　　　　　　　　　　　　　　　　　**Alston & Bird LLP**
　　　　　　　　　　　　　　　　　　　　950 F Street, NW
　　　　　　　　　　　　　　　　　　　　Washington, DC 20004
　　　　　　　　　　　　　　　　　　　　Telephone: 202-239-3431
　　　　　　　　　　　　　　　　　　　　Emails: Ken.Weigel@alston.com

　　　　　　　　　　　　　　　　　　　　*Counsel to Koch Fertilizer, LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the attached Plaintiff-Intervenor's Comments, filed March 1, 2024, contains 2,352 words, including headings, footnotes, and quotations, and excluding the cover page, table of contents, table of authorities, counsel's signature block, and this certificate, according to the word count function of the word-processing system used to prepare this brief, and therefore complies with the maximum 10,000 word count limitation set forth in the Standard Chambers Procedure of the U.S. Court of International Trade.

Dated: March 1, 2024

Respectfully submitted,

*/s/ Kenneth G. Weigel*

Kenneth G. Weigel
Lian Yang

**Alston & Bird LLP**
950 F Street, NW
Washington, DC 20004
Telephone: 202-239-3431
Emails: Ken.Weigel@alston.com

Counsel to Koch Fertilizer, LLC