NONCONFIDENTIAL
VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| OCP S.A., | ) |
| Plaintiff, | ) |
| EUROCHEM NORTH AMERICA CORPORATION, | ) |
| Consolidated Plaintiff, | ) |
| and | ) |
| PHOSAGRO PJSC, INTERNATIONAL RAW MATERIALS LTD., and KOCH FERTILIZER, LLC, | ) |
| Plaintiff-Intervenors, | ) |
| v. | ) Consol. Court No. 21-00219 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| THE MOSAIC COMPANY and J.R. SIMPLOT COMPANY, | ) |
| Defendant-Intervenors. | ) |

### INTERNATIONAL RAW MATERIAL LTD.'S COMMENTS
### IN OPPOSITION TO REMAND DETERMINATION

PAUL C. ROSENTHAL
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400

March 1, 2024     *Counsel to International Raw Materials Ltd.*

NONCONFIDENTIAL
VERSION

**Table of Contents**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................1

I.   THE COMMISSION'S REMAND QUESTIONNAIRE WAS FLAWED AND FAILED TO COMPLY WITH THE COURT'S NARROW REMAND INSTRUCTIONS ...................................................................................2

   A.   The Scope of the Commission's Remand Questionnaire Was Not Narrowly Tailored to the Court's Remand Instructions ..........................2

   B.   Questionnaire Responses Nevertheless Confirm that Shipment of Phosphate Fertilizers in the U.S. Market is a Unidirectional Process ....................................................................................................3

II.  THE COMMISSION'S VOLUME ANALYSIS AGAIN RESTS ON A FLAWED ANALYSIS OF RECORD EVIDENCE..............................................4

   A.   The Commission Fails to Give Due Weight to Public, Contemporaneous Statements by the Domestic Industry Projecting the Extent of the Supply Gap and the Need for Imports to Fill that Gap ..........................................................................................................5

   B.   The Commission Fails to Give Due Weight to the Domestic Industry's Refusals to Supply U.S. Purchasers........................................7

   C.   The Commission's Volume Analysis Rests on a Flawed Understanding of U.S. Phosphate Fertilizer Market Dynamics.............8

III. THE COMMISSION'S PRICE EFFECTS ANALYSIS REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW .................................................................................10

NONCONFIDENTIAL
VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Int'l Imaging Materials, Inc. v. United States ITC,
 30 C.I.T. 1181 (2006) ................................................................................................... 6-7

OCP S.A. v. United States,
 658 F. Supp. 3d 1297 (2023) (ECF No. 141)  ("Remand Order") ......................................... 1-3


**Administrative Determinations**

Durum and Hard Red Spring Wheat From Canada,
 USITC Pub. 3639 (Final) (Oct. 2003) ...............................................................................7

Phosphate Fertilizers from Morocco and Russia,
 USITC Pub. 5172 (Final) (Mar. 2021)................................................................................1

Phosphate Fertilizers from Morocco and Russia; *OCP S.A. v. United States*,
 CIT Consol. Ct. No. 21-00219, dated Jan. 17, 2024
 (Remand CR 243-44, Remand PR 296R) (ECF Nos. 145-46)
 ("Remand Determination") (public version at Phosphate Fertilizers from
 Morocco and Russia, USITC Pub. 5490 (Final) (Remand) (Jan. 2024)) ......................... *passim*

Urea Ammonium Nitrate Solutions from Belarus et al.,
 USITC Pub. 3591 (Final) (Apr. 2003), aff'd,
 Nitrogen Solutions Fair Trade Comm. v. United States, 358 F. Supp. 2d 1314
 (Ct. Int'l Trade 2005) ..........................................................................................................9

NONCONFIDENTIAL
VERSION

# INTRODUCTION

Plaintiff-Intervenor International Raw Materials Ltd. ("IRM"), an importer of phosphate fertilizers, respectfully submits these comments in opposition to the affirmative injury remand determination of the U.S. International Trade Commission ("Commission") in the countervailing duty investigations covering phosphate fertilizers from the Kingdom of Morocco ("Morocco") and Russia. Phosphate Fertilizers from Morocco and Russia; *OCP S.A. v. United States*, CIT Consol. Ct. No. 21-00219, dated Jan. 17, 2024 (Remand CR 243-44, Remand PR 296R) (ECF Nos. 145-46) ("Remand Determination") (public version available at Phosphate Fertilizers from Morocco and Russia, USITC Pub. 5490 (Final) (Remand) (Jan. 2024)). The Remand Determination was issued pursuant to OCP S.A. v. United States, 658 F. Supp. 3d 1297 (2023) (ECF No. 141) ("Remand Order"), in which the Court remanded the Commission's original injury findings for further consideration. Phosphate Fertilizers from Morocco and Russia, USITC Pub. 5172 (Final) (Mar. 2021) ("Final Determination").

# ARGUMENT

IRM agrees with and incorporates by reference the comments in opposition to the Remand Determination filed on behalf of Plaintiff OCP S.A. ("OCP") on February 16, 2024 (ECF No. 156-57) (hereinafter, "OCP's Comments"). IRM provides the following supplemental points regarding the improper scope of the Commission's questionnaires during the remand proceeding and the Commission's repeated failure to consider material record evidence in the Remand Determination. In sum, the flaws in the Remand Determination render it unsupported by substantial evidence and not in accordance with law, and further remand to the Commission is warranted.

NONCONFIDENTIAL<br>VERSION

I. **THE COMMISSION'S REMAND QUESTIONNAIRE WAS FLAWED AND FAILED TO COMPLY WITH THE COURT'S NARROW REMAND INSTRUCTIONS**

  A. **The Scope of the Commission's Remand Questionnaire Was Not Narrowly Tailored to the Court's Remand Instructions**

The Remand Order instructed the Commission to "conduct a new analysis of the conditions of competition with respect to domestic reshipment." APPX0000036. The Court's narrow remand instructions directed the Commission to assess the extent to which U.S. market participants reship inventory "that has already reached its intended destination" and the Court emphasized that evidence regarding "intermodal delivery" of phosphate fertilizer to its destination was not relevant to this crucial issue. APPX0000034. The Commission's remand questionnaire failed to gather this key information and instead collected information that does not address the Court's specific question.

As OCP's Comments discuss in detail (see OCP Comments at 1-7), the Commission failed to define key terms in the remand questionnaire such as "inventory operations," "distribution network," "capability," and "modes of transportation used to distribute shipments," to ensure that interested parties' responses provided data relevant to the remand instructions. APPX0020873-APPX0020874, APPX0099921. In an attempt to ameliorate these shortcomings, IRM (along with other interested parties) urged the Commission to modify its questionnaire to request inventory data that would address the critical question of whether phosphate fertilizer is re-shipped once it has reached its intended destination. APPX0020891-0020894. To demonstrate the overly broad nature of the Commission's questions, IRM suggested a specific replacement question that would have elicited the relevant inventory data: "During 2017, 2018, and 2019, were any inventories that were delivered to their originally intended destination

subsequently re-shipped to another destination in response to local changes in demand?" <u>Id.</u> Despite interested parties' requests for a corrected questionnaire compliant with the <u>Remand Order</u>, the Commission maintained its original questions and thus collected overly broad and irrelevant inventory data. <u>See</u> OCP Comments at 1-3.

    **B.    <u>Questionnaire Responses Nevertheless Confirm that Shipment of Phosphate Fertilizers in the U.S. Market is a Unidirectional Process</u>**

Although the Commission rejected interested parties' requests to narrow the scope of the questionnaire, IRM's response (as well other importers' responses) addressed the question posed in the <u>Remand Order</u> by explaining that re-shipping phosphate fertilizer between inland inventory locations once it is delivered is not a normal industry practice for numerous reasons, including prohibitive costs, shipping logistics, legal rights, and lack of infrastructure. APPX0099913-0099918. The Commission's affirmative injury remand findings fail to give due weight to the extensive discussions of these factors in the questionnaire responses. <u>See also</u> OCP Comments at 3-5.

For its part, IRM explained the various factors that prohibit re-shipment of phosphate fertilizers once it is delivered to the intended customer. IRM imports phosphate fertilizer to [

] APPX0099717-0099719. This process is unidirectional: once the fertilizer arrives at a warehouse, it is not re-shipped to another warehouse, nor is it re-shipped once it arrives at the customer destination because it is cost prohibitive and logistically impossible to do so. <u>Id.</u> Inland warehouses are equipped to handle fertilizer delivery via rail or barge, but are not outfitted to re-load fertilizer via rail or barge for out-shipment. <u>Id.</u> For example, [

[            ]  Furthermore, finding a trucking carrier to move product significant distances can be challenging and extremely expensive, and it only moves a small volume.  Id.

On the whole, importers' supplemental questionnaire responses confirm that IRM's distribution experience is shared by other industry participants and that phosphate fertilizer is not re-shipped once it arrives at its intended destination.  See OCP Comments at 3-5 (discussing importer responses in detail and explaining that domestic producers' responses confirm the unidirectional nature of the delivery process).  The Commission's failure to analyze how this extensive record evidence that shipment of phosphate fertilizer in the U.S. market is unidirectional renders the Remand Determination unsupported by substantial evidence.

II.     **THE COMMISSION'S VOLUME ANALYSIS AGAIN RESTS ON A FLAWED ANALYSIS OF RECORD EVIDENCE**

In the Remand Determination, the Commission again finds that subject imports were significant and oversupplied the U.S. market during the period of investigation ("POI"). APPX0099963.  To reach this conclusion, the agency finds no "domestic industry supply gap" and concludes that "the increase in volume of cumulated subject imports eclipsed any such reduction." Id.  This conclusion, again, ignores substantial record evidence regarding the supply shortfall caused by reductions in domestic production, public statements regarding the extent of domestic supply availability in the U.S. market, and public invitations from Mosaic for imports to fill that supply gap.  This evidence is material to the Commission's volume analysis, and the agency's failure to fairly weigh all detracting evidence requires a second remand.  See also OCP Comments at 7-22.

NONCONFIDENTIAL VERSION

### A. The Commission Fails to Give Due Weight to Public, Contemporaneous Statements by the Domestic Industry Projecting the Extent of the Supply Gap and the Need for Imports to Fill that Gap

In the Remand Determination, the Commission again ignored contemporaneous, public statements from Mosaic regarding the idling of its Plant City, Florida facility that signaled to the U.S. market a far greater supply shortage than the volume Mosaic reported to the Commission. In addition, the Commission failed to adequately consider Mosaic's *explicit invitation* for imports to fill that supply gap and the impact of these statements on purchasers' decision-making in real time during the POI. These repeated mistakes in the Remand Determination warrant further remand.

Relying on Mosaic's after-the-fact statements submitted during the underlying investigation, the Commission concludes that closing Plant City resulted in a supply shortfall of only 700,000 short tons ("ST"). APPX0099963; APPX0015535. In reality, however, market participants relied on Mosaic's public statements *made at that time* when making purchasing decisions, which put the perceived supply gap at 1.1 million ST. APPX0099624. IRM's posthearing brief referenced numerous, contemporaneous statements from Mosaic signaling to the market that it was intentionally pulling domestic phosphate supply from the U.S. market at volumes *far in excess of* the 700,000 ST figure it later provided to the Commission:

- 2017 (first year of the POI): Mosaic announced the "intentional" idling of its phosphate fertilizer production facility in Plant City, Florida, thereby sending a message to the U.S. market that a significant volume of phosphate fertilizer would be pulled from the U.S. market. APPX0096277-0096279.

- 2018 and 2019: Mosaic publicly discussed the idling of Plant City and stated that the idling created a supply hole of **1.1 million short tons** (1 million "tonnes") in the U.S. marketplace, and confirmed that imports were necessary to fill that supply gap:

- o "{C}learly the import requirements into the US are increasing by {the closings of} both Red Water and Plant City there's no question of that . . . *it certainly indicates that there will be a need for more imports* . . . ." APPX0096280 (emphasis added).

- o "{W}hen we shut down -- sorry, *idled Plant City, that opened a hole for some imports to increase,* and I think part of the increase you've seen has been just a response to that. We went from 55%, 60% market share to a more sustainable 50-ish percent market share. So we gave up 1 million tonnes of market here in the U.S. *intentionally*." APPX0096279 (emphasis added).

Based on these statements, U.S. market participants understood Mosaic to be pulling 1.1 million short tons of phosphate fertilizer supply out of the U.S. market, and instructing customers to buy imports instead.[1] Also in 2018, producer Nutrien announced the closure of its 600,000 ST phosphate fertilizer operations in Redwater, Alberta, Canada (a major source of supply in the western United States), as a "business decision," thereby increasing the perceived supply gap in the U.S. market to nearly 1.7 million ST. APPX0091717-0091718. As OCP's Comments explain, the Commission improperly discounts the impact of the closure of Nutrien's Redwater facility because it misunderstands Nutrien's U.S. production vis-à-vis its exports to Canada during the POI. See OCP Comments at 9-10.

The Commission's analysis in the Remand Determination also does not square with its analysis of public statements made by interested parties in past cases. In Int'l Imaging Materials, Inc. v. United States ITC, the Court of International Trade affirmed the Commission's reliance on public statements by Sony during the investigation period, explaining that the agency "provided *substantial evidence* showing that Sony was the downward price leader during the

---

[1]   Notably, *in real time* Mosaic also attributed its loss of market share from 60 percent or 55 percent to "50ish" percent to the Plant City idling, not to subject imports as it later argued before the Commission.

period of investigation" based on "***public statements*** . . . corroborating that Sony was at the front of an intra-industry price war" as well as "the statement of a Sony consultant who later became an executive." Int'l Imaging Materials, Inc. v. United States ITC, 30 C.I.T. 1181, 1197 (2006) (emphasis added). The Commission's approach here is also a departure from Durum and Hard Red Spring Wheat From Canada, wherein the agency explicitly noted the veracity of statements made by an interested party *not in connection with the Commission's investigation*:

> The record contains information from the MGE both in the form of public statements not made in connection with our investigations, and in testimony by a representative of the MGE at the Commission's hearing. ***In the event that the two sources of information differ, we give more weight to the public statements not made in connection with our investigations.***

Durum and Hard Red Spring Wheat From Canada, USITC Pub. 3639 (Final) (Oct. 2003) at 22 n.203 (emphasis added). In this case, IRM submitted to the Commission over **40** quotes from Mosaic that either contradict or undermine the arguments Mosaic put forward in the underlying investigations. APPX0096277-0096284. The Remand Determination fails to justify the Commission's departure from past practice with respect to the weight afforded to public, contemporaneous statements by interested parties versus those made in the context of litigation.

### B. The Commission Fails to Give Due Weight to the Domestic Industry's Refusals to Supply U.S. Purchasers

Compounding market participants' belief that imports were necessary to fill the gap of nearly 1.7 million ST of phosphate fertilizer being pulled from the U.S. market, is the well-documented fact that domestic producers *refused* to sell to certain U.S. purchasers during the POI. See IRM Rule 56.2 Br. at 8-11; see also OCP Comments at 10-11. The Commission failed to account for the interplay between the domestic industry's "intentional" reduction of its U.S. footprint, the invitation for increased imports, and the simultaneous *refusals* to supply U.S.

customers. For example, Mosaic refused to supply a number of customers and told some *directly to buy imports instead of domestic product.* APPX0015767, APPX0015701, APPX0015784, [                    ]. Moreover, the majority (16 of 28) of responding purchasers described extensive and widespread supply constraints during the POI (APPX0098404) and purchaser questionnaire responses detailed numerous supply issues, including denials to supply by [






                                                                                                                                      ]

These well-documented refusals to supply by the domestic industry further undercut the Commission's volume analysis and the agency did not afford them adequate consideration in the Remand Determination.

### C. The Commission's Volume Analysis Rests on a Flawed Understanding of U.S. Phosphate Fertilizer Market Dynamics

The Commission's renewed conclusion that subject import volumes were significant is based on a flawed understanding of U.S. market dynamics. See OCP Comments at 11-19. Extensive record evidence reflects the realities of purchasing fertilizer in the U.S. market, including the need to make purchasing decisions in real time based on projected future demand, the impact of unexpected weather conditions on fertilizer application season-to-season, and the fact that not all U.S. imports are for domestic consumption but rather are re-exported to Canada.[2]

---

[2]   As explained during original briefing in this appeal and in OCP's Comments, reliance on subject import volumes alone is misleading because that figure includes re-exports to Canada
(cont'd on next page)

See id.; see generally IRM Rule 56.2 Br. Despite the importance of these market dynamics to this case, the Commission concludes that "cumulated subject imports entered the U.S. market in significant volumes, contributed to oversupply conditions, and depressed U.S. prices to a significant degree, *regardless of how they were ordered.*" APPX0099988 (emphasis added).

Notably, the Commission's dismissal of the importance of U.S. market dynamics is inconsistent with the agency's understanding of the marketplace in a prior case covering imports of urea ammonium nitrate solutions, wherein the Commission acknowledged the importance of market perceptions to purchaser decisions:

> {T}he increase in subject imports came at a time of domestic production curtailments due to unusually high natural gas prices. Unscheduled production curtailments were approximately 154,000 tons per month during September 2000 to March 2001, when natural gas prices peaked. Reported in the press, ***these cutbacks appear to have created at least a perception in the marketplace (if not a reality) that domestic supply was unreliable and purchasers should find alternative sources of supply***. Subject imports and nonsubject imports increased during this period and both peaked in interim 2001.

Urea Ammonium Nitrate Solutions from Belarus et al., USITC Pub. 3591 (Final) (Apr. 2003) at 19-20 (footnotes omitted) (emphasis added), aff'd, Nitrogen Solutions Fair Trade Comm. v. United States, 358 F. Supp. 2d 1314 (Ct. Int'l Trade 2005). In this case, a correct understanding of U.S. market dynamics was critical to the Commission's analysis because it indicates whether or not the volumes of subject imports undershot or overshot the perceived supply gap. See also OCP Comments at 11-19.

\*   \*   \*

---

and thus is overstated. See IRM Rule 56.2 Br. at 5-6; OCP Comments at 13-14. [

]

NONCONFIDENTIAL
VERSION

The Commission's failure to give adequate weight to public, contemporaneous statements from domestic producers regarding the extent of the supply gap, the invitation for imports to fill that supply gap, the domestic industry's refusals to supply U.S. purchasers, and the Commission's flawed understanding of U.S. market dynamics all materially detract from the agency's findings with respect to subject import volumes and the supply gap. Further remand is warranted.

### III. THE COMMISSION'S PRICE EFFECTS ANALYSIS REMAINS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

The Court held that the Commission's price depression analysis was tainted by its reliance on the assumption that any price depression could have been avoided if phosphate fertilizer inventories had been reshipped to higher-demand regions. APPX0000042-0000043. On remand, the Commission side-steps this finding, claiming that "regardless of whether subject import inventories were being reshipped once they reached their destination," the "oversupply of subject imports and their low prices exerted downward pricing pressure on the domestic like product and significantly depressed U.S. prices in 2019." APPX0099952-0099953, APPX0099988-0099989. Because the Commission again failed to consider critical record evidence, its analysis of the price effects of subject imports is unsupported by substantial evidence and not in accordance with law.

In addition to the points provided in OCP Comments regarding the extent to which subject imports *oversold* domestic product in this investigation (see OCP Comments at 22-34), IRM reiterates that the Remand Determination ignores extensive record evidence that domestic producers are the price leaders in the U.S. market. The Commission's failure to discuss the existence of Mosaic's price leadership and its impact on the U.S. marketplace reveals that this

-10-

critical evidence was not taken into account when the Commission again found that subject imports caused negative price effects. Indeed, Mosaic's price leadership indicates that its prices, and not those of subject imports, are driving prices in the U.S. marketplace.

Indeed, the level of *underselling by domestic products* is consistent with the extensive record evidence that Mosaic is the price leader in the U.S. market. Mosaic was cited by a clear majority of purchasers as the U.S. price leader (18 of 28 purchasers). APPX0098470. Mosaic is [

] APPX0098429. [

] in the U.S. market. APPX0088646. Individual purchasers provided further compelling evidence that domestic producers, not subject imports, are the price leaders of the U.S. market. APPX0088787, APPX0088729, APPX0088151, APPX0088313. By way of comparison, just two purchasers cited foreign producers OCP and EuroChem as price leaders. APPX0098471.

At the Commission's hearing, Mr. David Coppess of Heartland Co-op, a major co-op in Iowa, explained that "when it comes time to fill, {Mosaic} tell{s} us how many tons we're going get from the market plan and what price it will be at." APPX0015787. Mr. Coppess expanded on this discussion [

] APPX0096301. This [

] is consistent with the numerous examples offered at the hearing that Mosaic is a price leader in the U.S. market. Id.

NONCONFIDENTIAL<br>VERSION

The Commission's repeated failure to discuss the impact of the domestic industry's price leadership in the U.S. marketplace in the <u>Remand Determination</u> demonstrates that material record evidence was not taken into account in the Commission's renewed finding that subject imports caused negative price effects *despite* the extensive overselling by subject imports.

## CONCLUSION

For the above reasons, IRM respectfully requests that the Court determine that the Commission's affirmative remand determination is unsupported by substantial evidence and enter judgment in favor of Plaintiffs and Plaintiff-Intervenors.

Respectfully submitted,

/s/ Melissa M. Brewer

Paul C. Rosenthal
Melissa M. Brewer
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

*Counsel to International Raw Materials Ltd.*

CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for Plaintiff-Intervenor International Raw Materials Ltd., certifies that these comments in opposition to the affirmative injury remand determination of the U.S. International Trade Commission in the countervailing duty investigations covering phosphate fertilizers from the Kingdom of Morocco ("Morocco") and Russia, dated Jan. 17, 2024 (Remand CR 243-44, Remand PR 296R) (ECF Nos. 145-46), contain 3,409 words, including footnotes.  The word count certification is made in reliance on the word count feature contained in Microsoft Word Office 2013.

          Respectfully submitted,

          /s/ Melissa M. Brewer
          PAUL C. ROSENTHAL
          MELISSA M. BREWER
          KELLEY DRYE & WARREN LLP
          3050 K Street, NW, Suite 400
          Washington, DC 20007
          (202) 342-8400

          Counsel to International Raw Materials Ltd.

Dated:  March 1, 2024