*NONCONFIDENTIAL VERSION*

---

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE**

———————————

**Consol. Court No. 21-00219**

———————————

**OCP S.A.,**

*Plaintiff,*

**EUROCHEM NORTH AMERICA CORPORATION,**

*Consolidated Plaintiff,*

**and**

**PHOSAGRO PJSC, INTERNATIONAL RAW**
**MATERIALS LTD., and KOCH FERTILIZER, LLC,**

*Plaintiff-Intervenors,*

**v.**

**UNITED STATES,**

*Defendant,*

**and**

**THE MOSAIC COMPANY and J. R. SIMPLOT COMPANY,**

*Defendant-Intervenors.*

---

**DEFENDANT UNITED STATES INTERNATIONAL TRADE COMMISSION'S**
**SUPPLEMENTAL BRIEF ON CONFIDENTIALITY**

---

**COURTNEY S. McNAMARA**
Attorney for Defendant
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC  20436
Telephone (202) 205-3095
Fax (202) 205-3111

**DOMINIC L. BIANCHI**
General Counsel
Telephone (202) 205-3061

**ANDREA C. CASSON**
Assistant General Counsel
   for Litigation
Telephone (202) 205-3105

**DATED:  MAY 8, 2024**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

I.    Congress Established a Comprehensive Statutory Scheme Regarding
      the Collection and Protection of Confidential Business Proprietary
      Information..............................................................................................................3

II.   The Commission Promulgated Rules Regarding the Collection and
      Protection of Confidential Business Proprietary Information
      Consistent with the Statutory Scheme  ...............................................................13

III.  Consistent with the Statute and Regulations, the Commission Has
      Developed and Refined its Policies and Procedures to Protect
      Confidential Business Information ......................................................................19

IV.   Court Rules Recognize the Proprietary Nature of Business
      Proprietary Information in Commission Investigations  ...................................25

      CONCLUSION .......................................................................................................27

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Atl. Sugar, Ltd. v. United States,*
    744 F.2d 1556 (Fed. Cir. 1984)..................................................................15

*Baker & Hostetler LLP v. U.S. Dep't of Comm.,*
    473 F.3d 312 (D.C. Cir. 2006)....................................................................5

*Basic Inc.v. Levinson,*
    485 U.S. 224 (1988)..................................................................................16

*CBS Corp v. FCC,*
    785 F.3d 699 (D.C. Cir. 2015)..................................................................12

*Hebei Golden Bird Trading., Ltd. v. United States,*
    2017 WL 3017099 (Ct. Int'l Trade Jul. 17, 2017) ................................10

*Kemira Fibres Oy v. United States,*
    18 CIT 687, 858 F. Supp. 229 (1994).........................................................7

*Monsanto Indus. Chem. Co. v. United States,*
    6 CIT 241 (1983) ......................................................................................13

*Mudge Rose Guthrie Alexander & Ferdon v. USITC,*
    846 F.2d 1527 (D.C. Cir. 1988)..................................................................5

*Qwest Commc'ns. Int'l Inc. v. F.C.C.,*
    229 F.3d 1172 (D.C. Cir. 2000)..........................................................12, 14

*Sacilor, Acieries er Laminiors de Lorraine v. United States,*
    3 CIT 191, 542 F. Supp. 1020 (1982).........................................................8

*Wiener v. NEC Elecs, Inc.,*
    848 F. Supp. 124 (N.D. Cal. 1994)...........................................................13

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,*
    1978 WL 1333 (E.D. Pa. May 2, 1978) ....................................................13

**Statutes**

15 U.S.C. § 78m(a)........................................................................................16

15 U.S.C. § 781(b).........................................................................................16

18 U.S.C. § 1905.........................................................................................9, 12

19 U.S.C. § 1333.........................................................................................3, 4

## TABLE OF AUTHORITIES (cont'd)

**Statutes (cont'd)**                                                    **Page(s)**

19 U.S.C. § 1333(a)(4)........................................................................................4

19 U.S.C. § 1516a........................................................................................26, 27

19 U.S.C. § 1516a(1)......................................................................................10

19 U.S.C. § 1516a(b)(2)(B)..............................................................................9

19 U.S.C. § 1675a(a)(1)...................................................................................10

19 U.S.C. § 1677f............................................................................... *passim*

19 U.S.C. § 1677f(a)(4)......................................................................................4

19 U.S.C. § 1677f(a)(4)(A)............................................................................5, 6

19 U.S.C. § 1677f(b)......................................................................................13, 18

19 U.S.C. § 1677f(b)(1)(A)......................................................................6, 10, 17

19 U.S.C. § 1677f(b)(2)........................................................................6, 11, 15

19 U.S.C. § 1677f(c)........................................................................................5, 20

19 U.S.C. § 1677f(c)(1)...................................................................................5, 20

19 U.S.C. § 1677f(c)(1)(B)................................................................................8

19 U.S.C. § 1677f(c)(2).....................................................................................10

19 U.S.C. § 1677f(f)(7)......................................................................................4

19 U.S.C. § 1677f(C)(1).....................................................................................7

28 U.S.C. § 1491(b)..........................................................................................26

**Regulations**

17 C.F.R. § 229.601(b)(10)..............................................................................16

17 C.F.R. § 240.12b-1.......................................................................................16

19 C.F.R. § 201.6......................................................................................19, 20, 24

19 C.F.R. § 201.6(a)......................................................................... *passim*

## TABLE OF AUTHORITIES (cont'd)

**Regulations (cont'd)**                                                    **Page(s)**

19 C.F.R. § 201.6(b)(3) ..................................................................17, 18

19 C.F.R. § 201.6(d) .......................................................................15, 18

19 C.F.R. § 201.6(g) ............................................................................18

19 C.F.R. § 207.7 ..................................................................................9

19 C.F.R. § 207.7(a)(4)(ii) ...................................................................18

19 C.F.R. § 207.7(d) ..............................................................................9

**Rules**

CIT R. 11 .............................................................................................25

CIT R. 73.1 ..........................................................................................25

CIT R. 73.2 ..........................................................................................25

CIT R. 73.2(c)(2) .................................................................................25

CIT R. 73.3 ..........................................................................................25

CIT R. 81(h) .........................................................................................25

Fed. Cir. R. 25.1 ..................................................................................26

Fed. Cir. R. 25.1(c) ..............................................................................26

Fed. Cir. R. 25.1(c)(1) ..........................................................................27

Fed. Cir. R. 25.1(c)(2)(B) .....................................................................27

Fed. Cir. R. 25.1(d)(1) ..........................................................................26

Fed. Cir. R. 25.1(d)(2) ..........................................................................26

Fed. Cir. R. 25.1(d)(1)(B) .....................................................................26

Fed. Cir. R. 25.1(d)(1)(D) .....................................................................26

**TABLE OF AUTHORITIES (cont'd)**

**Legislative History Materials**

S. Rep. 100-71 (1987).........................................................................................5, 8, 15

S. Rep. 96-249 (1979)..............................................................................................9

**Other Authorities**

*Antidumping and Countervailing Duty Handbook*,
    USITC Pub. 4540 (14th ed. June 2015)................................................................19

*An Introduction to Administrative Protective Order Practice in Import Injury Investigations*,
    USITC Pub. 5280 (5th Ed. Jan. 2022) ..................................................................19

Pursuant to the Court's order dated March 29, 2024, defendant the United States International Trade Commission ("Commission" or "ITC") hereby submits its supplemental brief regarding confidential information in these proceedings.

The Commission acknowledges the Court's concern that the Commission's Remand Determination brackets information that the Court has identified as publicly available from websites, press releases and media reports, and the public annual reports required by the Securities and Exchange Act of 1934.  The Court also expressed concern that bracketed information may not meet the Commission's confidentiality standards.

The Commission shares the Court's interest in presenting information and argument in a public manner. Indeed, the Commission holds a public hearing to receive testimony and argument, Commission staff releases a pre-hearing staff report that generally contains non-confidential aggregated data concerning the domestic industry, imports, and foreign producers, and purchasers. Commission staff independently researches publicly available information concerning the product, producers, and market trends and adds that information to the investigatory record.  The Commission votes and then writes an opinion explaining its determinations in a manner that the public can understand, while safeguarding confidential business proprietary information as required by statute.

In this brief we explain why most of the bracketed confidential information in the Remand Determination should remain confidential and why seemingly related public information from websites and public filings before the Securities and Exchange Commission ("SEC") is different from the targeted information collected by the Commission through specifically-focused ITC questionnaires and other party submissions. In this case, the public information identified by the Court (parties' websites, press releases and media reports, and

1

public annual SEC reports) concerns companies' information that is overly broad compared to the product under investigation. The information collected by the Commission is narrowly defined to elicit very specific information regarding a firm's production of the domestic like product that typically differs from the information provided by companies on their entire operations, such as in 10-K reports provided to the SEC. While the trends derived from questionnaires may sometimes be similar to trends derived from public reports, and the public may be able to deduce some of the information or trends from publicly available information, this does not negate the confidential nature of information submitted in response to the investigation.

In the case before the Court, the domestic industry is concentrated with one large producer and two smaller producers. As set out in this brief, including Exhibit B, given the concentration of firms in this industry, in order to retain the confidential status of the individual company information, it was necessary to bracket much of the aggregate information. To do otherwise would enable one or more of the domestic producers to back out their data and derive meaningful information regarding their competitors' operations—exactly what Congress intended to prevent when it created statutory protection for information provided by individual market participants.

In order to address the Court's concern as to whether the bracketed information identified by the Court meets the Commission's confidentiality standards, the brief first describes the statutory scheme designed to afford the Commission the ability to obtain information necessary for it to perform its statutory functions in antidumping and countervailing duty ("AD/CVD") investigations within a framework that provides robust protection for business proprietary information that is critical to the Commission's decision-making. We then describe the

Commission's regulations pertaining to the identification, collection, and protection of confidential business information consistent with the statutory scheme. The Commission followed these statutory and regulatory standards to determine which information was to be treated as business proprietary in these investigations.

## I.     Congress Established a Comprehensive Statutory Scheme Regarding the Collection and Protection of Confidential Business Proprietary Information

Congress established a statutory scheme designed to afford the Commission the ability to obtain information necessary for it to perform its statutory functions within a framework that provides robust protection for business proprietary information that is critical to the Commission's decision-making.

As a threshold matter, Congress granted the Commission in its organic statute broad authority to gather any and all information necessary for it to perform its statutory functions and duties, including business proprietary information. Section 1333 of title 19 provides:

> (a) Authority to obtain information
>
> For the purposes of carrying out its functions and duties in connection with any investigation authorized by law, the commission or its duly authorized agent or agents (1) shall have access to and the right to copy any document, paper, or record, pertinent to the subject matter under investigation, in the possession of any person, firm, copartnership, corporation, or association engaged in the production, importation, or distribution of any article under investigation, (2) may summon witnesses, take testimony, and administer oaths, (3) may require any person, firm, copartnership, corporation, or association to produce books or papers relating to any matter pertaining to such investigation, and (4) may require any person, firm, copartnership, corporation, or association, to furnish in writing, in such detail and in such form as the commission may prescribe, information in their possession pertaining to such investigation. Any member of the commission may sign subpoenas, and members and agents of the commission, when authorized by the commission, may administer oaths and affirmations, examine witnesses, take testimony, and receive evidence.

19 U.S.C. § 1333.  It is under this authority that the Commission obtains information from market participants that is essential to its performance of its statutory functions in AD/CVD investigations, including but not limited to issuing questionnaires, conducting verifications, and participating in site visits.[1]

Congress also specified what information obtained in the course of the Commission's antidumping and countervailing duty investigations shall, and shall not, be disclosed publicly.  In this regard, 19 U.S.C. § 1677f(a)(4) sets forth two types of information that *shall* be disclosed provided that certain requirements are satisfied:

> (4) Summaries; non-proprietary submissions
>
> The administering authority and the Commission *shall* disclose—
>
> (A) any proprietary information received in the course of a proceeding *if it is disclosed in a form which cannot be associated with, or otherwise be used to identify, operations of a particular person*, and
>
> (B) *any information submitted in connection with a proceeding which is not designated as proprietary by the person submitting it.*

*Id.* (emphasis added).  This provision thus makes clear that Congress directs that the Commission *shall* disclose summaries of such proprietary information that the Commission has received *only if* it can be disclosed in a form that cannot be associated with or identifiable as pertaining to the operations of a particular person or firm and any information that has *not* been designated as proprietary by the person or firm submitting it.  In doing so, Congress expressly recognized the

---

[1]  While 19 U.S.C. § 1677f(f)(7) also requires testimony and production of papers and is specific to AD/CVD investigations, 19 U.S.C. § 1333(a)(4) provides the Commission authority to issue questionnaires.

significance of information that could be associated with or used to identify operations of a particular firm.[2]

Congress further directed what information obtained in the course of an investigation *shall not* be disclosed publicly.  Specifically, Congress mandated that the Commission *shall not* publicly disclose any proprietary information, unless it can be done so as contemplated in subsection (a)(4)(A) in a manner that does not reveal the individual operations of a firm,[3] *or* the Commission received the consent of the person submitting such information.

---

[2] The Senate Finance Committee further expanded on the importance of the confidential business proprietary information to the Commission's investigations and the prohibition on the Commission revealing proprietary information of individual firms:

> {T}he bulk of the information collected by the ITC and on which it bases its decisions consists of confidential business information submitted by domestic producers, importers, and purchasers of the allegedly dumped or subsidized articles under investigation.  Only aggregate data that cannot reveal the proprietary information of individual companies are released to the parties and the public.

S. Rep. 100-71, at 112 (June 12, 1987).

[3] Decisions of the Court of Appeals for the D.C. Circuit suggest that the class of business or "commercial" information entitled to statutory protections should be construed broadly. Rejecting appellant's arguments to narrow the Freedom of Information Act's ("FOIA") exemption regarding "trade secrets and commercial or financial information obtained from a person and privileged or confidential" as defining the term "commercial" to apply only to information that "reveal{s} basic commercial operations … or relate{s} to the income-producing aspects of a business," the D.C. Circuit stated that the "exemption reaches more broadly and applies (among other situations) when the provider of information has a commercial interest in the information submitted to the agency."  *Baker & Hostetler LLP v. U.S. Dep't of Comm.*, 473 F.3d 312, 317 (D.C. Cir. 2006).  In *Mudge Rose Guthrie Alexander & Ferdon v. USITC*, 846 F.2d 1527 (D.C. Cir. 1988), the D.C. Circuit held that information that had been designated as proprietary by the submitter pursuant to 19 U.S.C. § 1677f satisfied the second prong of exemption 3 to FOIA because Section 1677 "explicitly exempts from disclosure 'particular types of matters' – namely, matters designated as 'proprietary' that can be associated with or used to identify the operations of particular firms in the industry."  *Id.* at 1530.  The Court of Appeals, however, remanded the case back to the district court for further explanation from the Commission regarding the Commission's aggregation rules as they applied to three or more firms.  *Id.* at 1531-32.  As detailed below, we provide an explanation of that rule as it presently applies, and how it was implemented in this particular case.  To the best of the Commission's

Specifically, 19 U.S.C. § 1677f(b)(1)(A) provides that:

> Except as provided in subsection (a)(4)(A) and subsection (c), information submitted to the administering authority or the Commission which is designated as proprietary by the person submitting the information shall not be disclosed to any person without the consent of the person submitting the information…

Congress also specifically provided for a mechanism that enables submitters to have their information returned if the Commission is unpersuaded that proprietary treatment is warranted prior to disclosure during the pendency of Commission proceedings. Specifically, 19 U.S.C. § 1677f(b)(2) provides that:

> If the administering authority of the Commission determines, on the basis of the nature and extent of the information or its availability from public sources, that designation of any information as proprietary is unwarranted, then it shall notify the person who submitted it and ask for an explanation of the reasons for the designation. Unless that person persuades the administering authority or the Commission that the designation is warranted, or withdraws the designation, the administering authority or the Commission, as the case may be, shall return it to the party submitting it. In a case in which the administering authority or the Commission returns the information to the person submitting it, the person may thereafter submit other material concerning the subject matter of the returned information if the submission is made within the time otherwise provided for submitting such material.

In short, while the agency proceedings are pending and the record is open, the confidential nature of information submitted by a party may be challenged and, if the Commission determines proprietary treatment is unwarranted, the Commission will return the information and party then has the option to submit other information regarding the same subject matter. However, once the record is closed, the Commission is unable to afford a party the due process contemplated by Congress.

---

recollection and information, the Commission provided further explanation to the district court on remand and the case was subsequently dismissed.

While Congress established this framework to provide robust protection to business proprietary information, it balanced such protection with the due process rights of parties appearing before the Commission, by permitting, as noted above in subsection (b), disclosure under a protective order as set forth in subsection (c). Subsection (c)(1) provides for limited disclosure of certain proprietary information under protective order:

> (A) In general
>
> Upon receipt of an application (before or after receipt of the information requested) which describes in general terms the information requested and sets forth the reasons for the request, the administering authority or the Commission shall make all business proprietary information presented to, or obtained by it, during a proceeding (except privileged information, classified information, and specific information of a type for which there is a clear and compelling need to withhold from disclosure) available to interested parties who are parties to the proceeding under a protective order described in subparagraph (B), regardless of when the information is submitted during a proceeding….
>
> (B) Protective order
>
> The protective order under which information is made available shall contain such requirements as the administering authority or the Commission may determine by regulation to be appropriate. The administering authority and the Commission shall provide by regulation for such sanctions as the administering authority and the Commission determine to be appropriate, including disbarment from practice before the agency.

19 U.S.C. § 1677f(c)(1).[4] *See Kemira Fibres Oy v. United States*, 18 CIT 687, 858 F. Supp. 229, 234 (1994) (the balance between Commerce's investigatory needs and a party's need for confidentiality is achieved through proprietary information safeguards).

---

[4] The Senate Finance Committee underscored the necessity of balancing the interests of the various companies submitting confidential business proprietary information, some of which are not parties to the proceedings, with the due process rights of parties that are appearing before the Commission: "{I}n an injury investigation conducted by the ITC pertinent information is derived from a variety of sources, many of whom are not parties to the proceeding. This section,

Critical to this statutory scheme established by Congress is the Commission's ability to enforce compliance with protective orders to ensure the robust protection of business proprietary information. Indeed, the Senate Finance Committee specifically explained that, while confidential business proprietary information may be disclosed pursuant to a protective order to allow meaningful preparation of a party's case, such disclosure should be made *only* under the threat of sanctions for improper disclosure:

> The persons to whom access to confidential information may be granted under protective order are counsel or other representatives of the parties who require access in order to assist in their preparation of the case.... Information should only be made available if the ITC is satisfied that adequate sanctions for disclosure are available against the proposed recipient of the information.

S. Rep. 100-71 at 113.[5]

---

therefore, provides the parties before either agency full access to meaningful information that will assist in their preparation of a case." S. Rep. 100-71 at 112.

[5] Although it recognized that the Commission has a "legitimate concern that the availability under protective order of domestic firms' closely guarded financial information may have a 'chilling effect' on the willingness of some firms to supply information voluntarily", the Committee further emphasized "that the Commission possesses effective statutory authority to deal with the refusal of firms to provide information," including its subpoena powers and the statutory provisions enabling the Commission to rely on information otherwise available, potentially using adverse information as appropriate. S. Rep. 100-71 at 113-14. Of particular significance is the Committee's concluding discussion:

> Finally, the best insurance that the ITC will be able to obtain the information it needs for its investigations is its reputation for strictly maintaining the confidentiality of information submitted to it. The Committee endorses the ITC's protecting that reputation through the threat, and if necessary, use of strong sanctions under section 1677f(c)(1)(B) against any person found in violation of an administrative protective order, including disbarment or suspension from practice before the ITC, referral to the organized Bar for investigation of possible ethical violations, and withholding of confidential information from the party or its representative. The ITC's regulations should provide for all appropriate sanctions.

Pursuant to this directive, Commission Rule 207.7 informs persons who receive information under a Commission administrative protective order of the potential sanctions for improperly disclosing information received under an administrative protective order, which include, among other potential actions: disbarment from practice before the Commission, referral to the United States Attorney, referral to the ethics panel of a bar or other professional organization, denial of further access to business proprietary information, issuance of a public or private letter of reprimand, and warning letters. 19 C.F.R. § 207.7(d).[6]

Indeed, Congress intended the confidential treatment of any business proprietary information treated as such before the agency to continue in subsequent proceedings before the Court, and for the Court to continue to afford the appropriate protection to information that was designated as proprietary or confidential before the Commission. Specifically, 19 U.S.C. § 1516a(b)(2)(B) requires that:

> The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action {before the Court of International Trade} under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

19 U.S.C. § 1516a(b)(2)(B).

In turn, the legislative history clarifies that the "terms and conditions" referenced in the second sentence are those of a protective order. *See* S. Rep. No. 96-249, at 248 (1979) (making clear that section (b)(2)(B) was intended to address the possibility of "disclosure of the privileged or confidential material only under the terms of a protective order"). Therefore, the

---

[6] Commission employees are likewise required to protect confidential information obtained in the course of a Commission investigation, and unauthorized disclosure could result in a criminal penalty. *See* 18 U.S.C. § 1905.

statute does not permit the Commission to publicly disclose BPI treated as confidential in its proceedings, even in the context of an action before the Court of International Trade. *See Hebei Golden Bird Trading., Ltd. v. United States*, 2017 WL 3017099, at *5 (Ct Int'l Trade July 17, 2017) ("{B}y statute, Commerce is barred from disclosing proprietary information it receives without the consent of the party that submitted that information" (citing 19 U.S.C. § 1677f(b)(1)(A)). Moreover, this provision makes clear that Congress intended that, although this Court may disclose such material under such terms and conditions as it may order, such disclosure would still have to be under a protective order that preserves the proprietary status. [7]

Importantly, the preservation of the confidentiality of information does not have an expiration date under the statute. Congress did not establish any requirement or procedure to re-evaluate the confidential nature of the information following record closure or after the passage of any particular period of time. In fact, in five-year reviews, the Commission is specifically required to consider the records of the original injury determination and prior five-year reviews, which would include information that was previously identified as confidential. *See* 19 U.S.C. § 1675a(a)(1) (requiring the Commission to take its prior injury determination into account in reviews). It would seem Congress was aware that the Commission would need to consider and may need to rely upon BPI from the earlier proceeding when it added the five-year review provision as part of the Uruguay Round Agreements Act. Uruguay Round Agreements Act, Pub.

---

[7] Congress further provided, if disclosure of information under a protective order is denied, a party may seek such disclosure under a protective order from the Court. 19 U.S.C. § 1677f(c)(2). Notably, Congress clearly contemplated that in any such proceedings the Court would continue to balance the competing interests of protecting proprietary information with the due process rights of parties appearing before the Commission by specifically providing for the participation and opportunity to be heard to the party or parties, whose information is at issue in the disclosure, and specifying that any disclosure under this provision would continue to be limited and pursuant to a protective order. *Id.*

L. No. 103-465, 104 Stat. 4809 (1994).  Despite this, Congress did not alter § 1677f to include any requirement or procedure to re-evaluate the confidential nature of information, regardless of its age.

In the current case, the Commission's remand record closed on December 18, 2023, which meant that after that date the Commission could no longer avail itself of the process to challenge whether proprietary treatment is warranted as set forth in 19 U.S.C. § 1677f(b)(2). Given that withdrawal of information was no longer an available option, any nonconsensual public disclosure of a party's information that it understood to be considered BPI would deprive it of the protection prescribed by Congress: the ability to have that information returned with the opportunity to potentially submit instead other material concerning the subject matter of the returned information.

In sum, Congress has established a comprehensive statutory scheme that establishes what the Commission must and must not disclose, while affording the Commission broad authority to obtain the information necessary for it to perform its functions.  The Commission must rely upon data provided in response to the specific product and industry under investigation to reach its determinations in AD/CVD investigations. Such information necessarily includes business proprietary information pertaining to the operations of individual entities.  This statutory scheme balances the obligation to fully protect business proprietary information against the need for parties appearing before the Commission to have meaningful access by allowing limited disclosure.

Significantly, while the statutory scheme set forth by Congress balances the necessity of protecting confidential business proprietary information with the needs of meaningful access to parties appearing before the Commission, these statutory provisions establish that the general

rule is one that shields, rather than reveals, such information from the public.  Indeed, courts have recognized the importance of effectuating statutorily prescribed protection of confidential business information from public disclosure.  As the D.C. Circuit explained, "{t}he Trade Secrets Act exists for an important reason – Congress has decided that confidential business information should be private unless there's good cause to disclose it . . . ."  *CBS Corp v. FCC*, 785 F.3d 699, 706 (D.C. Cir. 2015).  As the court further explained, it had previously held "that a general desire to permit broad public participation, even an interest in a more effective decision-making process must yield when sensitive information will be disclosed to competitors."  *Id.* (citing *Qwest Commc'ns. Int'l Inc. v. FCC*, 229 F.3d 1172, 1180-84 (D.C. Cir. 2000)).[8]  We submit that the reasoning of *CBS* and *Qwest* are even more compelling when viewed in the context of 19 U.S.C. § 1677f, pursuant to which the due process rights of parties to the investigation are fully addressed by allowing their counsel to have access to all business proprietary information under a protective order.  Indeed, as one district court noted in denying access to such business proprietary information to a private plaintiff:

> The Department {of Commerce}and the U.S. International Trade
> Commission rely heavily on proprietary information submitted by
> both U.S. and foreign parties in order to conduct their antidumping

---

[8]  Disclosure pursuant to 19 U.S.C. § 1677f is essentially an exception to the Trade Secrets Act, which provides that a Federal employee who

> publishes, divulges, discloses, or makes known in any manner or to
> any extent not authorized by law any information {obtained through
> his employment} . . . {that} concerns or relates to the trade secrets,
> processes, operations, style of work, or apparatus, or to the identity,
> confidential statistical data, amount or source of any income, profits,
> losses, or expenditures of any person, firm, partnership, corporation,
> or association . . . shall be fined under this title, or imprisoned not
> more than one year, or both; and shall be removed from office or
> employment.

18 U.S.C. § 1905.

> duty investigations. Permitting private plaintiffs access to proprietary information and documents submitted during the course of those agencies' antidumping proceedings would create a powerful disincentive for those parties to provide the agencies with submitted proprietary information in future antidumping investigations.

*Wiener v. NEC Elecs., Inc.*, 848 F. Supp. 124, 127 (N.D. Cal. 1994) (citing *Monsanto Indus.*

*Chems. Co. v. United States,* 6 CIT 241, 243 (1983) and *Zenith Radio Corp. v. Matsushita Elec.*

*Indus. Co.,* 1978 WL 1333 (E.D. Pa. May 2, 1978)).

## II.    The Commission Promulgated Rules Regarding the Collection and Protection of Confidential Business Proprietary Information Consistent with the Statutory Scheme

Consistent with the statutory scheme described above, the Commission promulgated

regulation 19 C.F.R. § 201.6(a), in which the Commission defines confidential business

information to mean:

> {I}nformation which concerns or relates to the trade secrets, processes, operations, style of works, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, or amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions, or causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained, unless the Commission is required by law to disclose such information. The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. 1677f(b)). Nonnumerical characterizations of numerical confidential business information (e.g., discussion of trends) will be treated as confidential business information only at the request of the submitter for good cause shown.

19 C.F.R. § 201.6(a).  In doing so, the Commission specifically identified the types of

information that tends to reveal the individual operations of companies, which, consistent with

19 U.S.C. § 1677f, may not be disclosed.  Further, consistent with the full protection for business

proprietary information set forth in the statutory scheme, and echoing the legislative history recognizing the importance of the Commission maintaining its reputation for strictly maintaining the confidentiality of information submitted to it, the Commission's regulation provides that information shall not be disclosed if it is likely to have the effect of either impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions, <u>or</u> causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained.

In line with 19 U.S.C § 1677f and the first clause of 19 C.F.R. § 201.6(a), the Commission automatically treats as business proprietary information all information provided in questionnaires, during verifications, and obtained during site visits because such information can be "associated with, or otherwise be used to identify, operations of a particular person" and constitutes "trade secrets, processes, operations, style of works, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, or amount or source of any income, profits, losses, or expenditures . . . ." 19 C.F.R. § 201.6(a). Due to the specifically individual nature of the information, coupled with the prohibition on disclosing it in this form, the Commission preemptively treats this information as confidential business proprietary information. [9]  The Commission's mandate to conduct thorough fact-

---

[9]  The Commission has long treated such information as presumptively proprietary, and, as discussed at the March 29, 2024 hearing, firms submit information in questionnaires with the expectation that the information will be afforded such confidential treatment. *See, e.g.*, Tr. at 140-41 (Mar. 29, 2024) (ECF 176) (Mr. Kessler); Tr. at 155-56 (Mr. Greer).  As the D.C. Circuit has explained in proceedings involving another agency's treatment of confidential information pursuant to its statute and precedent, parties are entitled to rely on the reasonable expectation of consistent proprietary treatment.  *Qwest Comm. Int'l.*, 229 F.3d at 1184 (in submitting certain data, the company "Qwest was entitled to rely on the {FCC}'s announced policy and precedent on how it would handle confidential audit information.  Qwest is similarly entitled to assurances that the unprecedented disclosures will be consistent with the standards that the Commission has set for itself….").

intensive antidumping and countervailing duty investigations on tight statutory deadlines supports this approach.[10]  In addition, self-selected disclosure of only some firms' individual data could limit the Commission's ability to publicly present aggregate data because knowledge of one firm's information might enable a reader to decipher the confidential information of the remaining firm or firms through simple subtraction.

In addition, the data that the Commission collects in these questionnaires is almost always uniquely proprietary in that it is collecting precise and granular information spanning several years that is specific to the domestic product that the Commission is investigating.[11]  As such, although broader data may be more generally publicly disclosed, the data that the Commission collects would provide competitors with the directly comparable confidential information about each other's operations over several years.  Such direct insight into a competitors' operations would exemplify the need addressed by the Commission's regulation to protect information that would have the effect of "causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained . . . " 19 C.F.R. § 201.6(a).  Additionally, concerns that, absent the

---

[10] *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1563 (Fed. Cir. 1984) (discussing "the compromise which the ITC must make between a perfectly accurate and an extremely rapid determination under this complex statute").

[11]  While the statute (19 U.S.C. § 1677f(b)(2)) and regulations (19 C.F.R. § 201.6(d)) permit the Commission to determine whether particular information submitted in questionnaires is proprietary, this rarely occurs because firms are answering specific questions related to the narrow product and operations under investigation.  How a firm responds to questions may disclose the competitive position of the firm and its operation.  *See* S. Rep. 100-71 at 113-14 (Congress recognized that the Commission has a "legitimate concern that the availability under protective order of domestic firms' closely guarded financial information may have a 'chilling effect' on the willingness of some firms to supply information voluntarily", and Congress further noted that "the best insurance that the ITC will be able to obtain the information it needs for its investigations is its reputation for strictly maintaining the confidentiality of information submitted to it.").

promised protection from disclosure, information could fall into a competitor's hands illustrates the alternative regulatory criteria of impairing the Commission's ability to obtain such information, as it would have a chilling effect on firms' willingness to submit information on their operations.  *See id.*

Moreover, the information collected in the Commission's trade remedy investigations is often narrower and differently focused than information provided in different contexts, such as in 10-K reports provided to the Securities and Exchange Commission.[12]

---

[12] At the March 29, 2024 hearing, the Court questioned why the Commission designates certain company information as confidential while the Security and Exchange Commission ("SEC") requires companies to submit disclose specific company information. *See, e.g.*, Tr. at 132-35, 168.  The purposes of the respective governing statutes inform this difference.  The purpose of the Securities Exchange Act of 1934 (the "Exchange Act") disclosure scheme differs fundamentally from that of 19 U.S.C. § 1677f and other statutes that seek to balance the public interest of government transparency with the private interest of protection of confidential information.  Promulgated in the wake of the Wall Street Crash of 1929 and the onset of the Great Depression, the Exchange Act was "designed to protect investors against manipulation of stock prices" by "implementing a philosophy of full disclosure."  *Basic Inc. v. Levinson*, 485 U.S. 224, 230 (1988) (quotation omitted).  The text of Section 13 of the Exchange Act indicates that the purpose of the SEC's disclosure rulemaking is investor protection. *See* 15 U.S.C. § 78m(a) (requiring issuers to make disclosures "in accordance with such rules and regulations as the {SEC} may prescribe as necessary or appropriate *for the proper protection of investors and to insure fair dealing in the security*") (emphasis added); *accord* 15 U.S.C. § 78l(b) (same for registration applications).

This purpose is further reinforced by the focus of the Exchange Act and corresponding SEC regulations on material information, or information that an investor would find important in making investment decisions. *See, e.g.*, 17 C.F.R. § 240.12b-1 ("In addition to the information expressly required to be included in a statement or report, there shall be added *such further material information*, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading.") (emphasis added); *see also Basic*, 485 U.S. at 231-32 (discussing the standard of materiality in securities laws).  For example, issuers are required to disclosure certain "material contracts." *See, e.g.*, 15 U.S.C. § 78l(b)(1)(I), (3); 17 C.F.R. § 229.601(b)(10).  Item 601 of Regulation S-K, however, permits issuers to redact provisions within those contracts before public disclosure if the issuer "customarily and actually treats that information as private or confidential and if the omitted information is not material." 17 C.F.R. § 229.601(b)(10)(iv).  The focus for disclosure is on materiality, not confidentiality.

With respect to other information that is submitted by parties or firms in the course of an investigation under the second clause of 19 C.F.R. § 201.6(a), such information may likewise include individually identifiable information or other information of commercial value.  To be treated as confidential business proprietary information in these circumstances, the submitter must designate such information as proprietary, consistent with 19 U.S.C. § 1677f(b)(1)(A).  And consistent with 19 C.F.R. § 201.6(b)(3), the information must be of such that disclosure is likely to have the effect either of  "impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions," or of "causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained."  19 C.F.R. § 201.6(a).  In contrast to questionnaire responses, such submissions require the submitter of business proprietary information to provide

---

The "access to information" provision of the antidumping and countervailing duty laws (19 U.S.C. § 1677f) has a different purpose altogether.  As discussed in this submission, it is designed to enable the Department of Commerce and the Commission the ability to conduct thorough investigations through collection of confidential business information that will be protected under APO, while at the same time affording parties to those investigations due process by granting their authorized counsel full access to the confidential information under the APO.

Commission counsel likewise explained at the March 29, 2024 hearing why the Commission included as confidential other information identified by the Court as potentially "Publicly Available Information" in the Exhibit (ECF 159) to the Court's February 29, 2024 Order (ECF 158).  *See* Tr. at 64-137.  The identified items consisted primarily of information that was obtained in questionnaires and reflected the operations of individual domestic producers.  Also discussed at the hearing was the Commission's approach to subscription based services, which is to bracket information obtained since it is proprietary to the subscription service.  In addition to the items discussed at the hearing, similar criteria apply to the identified pricing data from the domestic industry, which likewise consisted of information from a single domestic producer.  APPX0098471.

Counsel for Mosaic and Simplot further discussed some of the items identified in ECF 159.  *See* Tr. at 147-52 (Mr. Kessler) and Tr. at 153-66 (Mr. Greer).  The Court has given those parties the opportunity to further address the identified information specific to each of them.  *See* Tr. at 167-68.

a written, public statement that justifies the request for confidential treatment and a certification in writing under oath that substantially identical information is not publicly available. *See* 19 C.F.R. § 201.6(b)(3). Upon receipt of such submissions, the Secretary of the Commission approves or denies requests for confidential treatment. 19 C.F.R. § 201.6(d). Generally, the Secretary will approve the request for confidential treatment if the submitter has satisfied 19 C.F.R. § 201.6(b)(3), and, as in this case, no Commission staff or interested parties challenged the various BPI designations.

Commission Rule 201.6(g) states that any confidential business information (which is defined in subsection (a) to include business proprietary information within the meaning of 19 U.S.C. § 1677f(b)) submitted in confidence and determined to be entitled to confidential treatment shall be maintained in confidence by the Commission, and not disclosed except as required by law. 19 C.F.R. § 201.6(g). In the event that any business information submitted to the Commission is not entitled to confidential treatment, the submitter is permitted to withdraw the submitted information within five days of the denial of confidential treatment, unless the information is the subject of a FOIA request, or judicial discovery proceedings. *Id.* If the information in question is not withdrawn in the five day period, it will be treated as public information. *Id.*[13]

---

[13] Furthermore, under 19 C.F.R. § 207.7(a)(4)(ii),

> Should the Secretary determine pursuant to this section that materials sought to be protected from public disclosure by a person do not constitute business proprietary information . . . , then the Secretary shall, upon request, issue an order on behalf of the Commission requiring the return of all copies of such materials served {to other parties under the protective order} in accordance with paragraph (f) of this section.

III.    **Consistent with the Statute and Regulations, the Commission Has Developed and Refined its Policies and Procedures to Protect Confidential Business Information**

Against this statutory and regulatory background, the Commission's Office of Investigations has developed policies and procedures over many years to minimize the risk of inadvertent disclosure, particularly of information that is associated with or could be used to identify, operations of a particular firm.

Specifically, the Commission applies consistent guidelines in each investigation to ascertain what information falls under the statutory and regulatory mandates to protect business proprietary information. The Commission has strived to set this approach out in its publicly available *Antidumping and Countervailing Duty Handbook*, USITC Pub. 4540 (14th ed. June 2015) ("AD/CVD Handbook) (Exhibit A), as well as in *An Introduction to Administrative Protective Order Practice in Import Injury Investigations*, USITC Pub. 5280 (5th ed. Jan. 2022) ("APO Handbook") (Exhibit A1), and is further explained below.[14] The Commission applied these guidelines, consistent with Rule 201.6, in this investigation. As provided in Rule 201.6, financial and trade data, including "information which concerns or relates to trade secrets, processes, operations, style of works, or apparatus, or to the production sales, shipments, purchases, transfers, identification of customers, inventories, or amount or source of any income, profits, losses, expenditures," are individually identifiable or otherwise of commercial value and therefore presumptively treated as business proprietary information when provided in a questionnaire. 19 C.F.R. § 201.6(a).

---

[14] The Commission notes that although the most recent edition of its Handbook was published in 2015, there have been no statutory or regulatory changes since its publication that would affect the discussion of the treatment of business proprietary information in this edition.

In Exhibit B, we provide an item-by-item explanation for the business proprietary treatment afforded to the information identified in the Court's order of February 29, 2024, that "may not meet the Commission's own standard for confidentiality."  *See* ECF 158.  Each of these items was afforded confidential treatment consistent with the guidelines described below:

1) **Information involves one or two firms**.  Consistent with Rule 201.6 and the questionnaire commitments, the Commission treats as business proprietary information all financial and trade data, and other data provided in questionnaire responses, where those data reflect the operations of a single domestic producer, importer, or foreign producer.  The Commission likewise treats data derived from information from two firms as business proprietary information, since each of the two producers/importers would be able to back out its own information from the total shown, thereby revealing confidential information held by their sole competitor.  This policy is set out in the handbook. (*See* Ex. A at II-26: *"The Commission's practice in presenting and analyzing statistical data is that aggregate data are confidential if they include only one or two companies…"*).

This guideline was employed in the current case in certain examples where the information presented involved a one or two firms, including a domestic producer or importer.

2) **Information involves three or more firms, two of which are individually or jointly dominant**.  In these circumstances, the Commission treats all data as business proprietary information, since the data reveal the individual operations of either (1) the dominant (75%+) domestic producer / importer to all readers or (2) each of the two leading producers / importers (90%+) to their leading competitor, which can back out its own information from the total shown.  In this situation, given the relative size of the major producers/importers, revealing the total data would enable a firm to back out its own data and glean not otherwise available close

estimates of commercial information about competitors.  This practice is set out in our handbook. (*See* Ex. A at II-26: *"The Commission's practice in presenting and analyzing statistical data is that aggregate data are confidential if they include … three or more companies and one company accounts for at least 75 percent of the total or two account for at least 90 percent of the total."*).

This approach was employed in the current case regarding domestic industry data because there were three domestic producers and these requirements were met.

**3)  <u>Data from one or two firms or one or two dominant firms expressed as a ratio or percentage</u>**.  In these circumstances, the Commission treats the data as business proprietary information because it could reveal the operations of individual firm(s). If *both* the numerator *and* the denominator are confidential, then the ratio/percentage itself is attributable to one firm (if exclusive or dominant) or derivable by competitors if two firms or two dominant firms (by backing out known numerator and denominator data).  For example, in this case, because there were three domestic producers and the aggregation requirements above are met, the capacity utilization rate is bracketed.  Both the numerator (domestic producers' production) and the denominator (domestic producers' capacity) are bracketed; therefore, the ratio expressed in the capacity utilization rate is bracketed.  If *only* the numerator *or* the denominator is confidential, then the ratio / percentage can be applied against the known data to calculate the confidential data.  For example, in this case, because there were three domestic producers and the aggregation requirements above are met, the domestic industry's U.S. shipment data is bracketed.  As a result, total apparent U.S. consumption, which consists of both BPI (domestic producers' U.S. shipments) and non-confidential information (importers' U.S. shipments of subject imports), is bracketed.  Thus, in expressing subject import market share, the numerator (U.S. shipments of

subject imports) is non-confidential information but the denominator (total apparent U.S. consumption) is bracketed, subject import market share should be bracketed.

We note that, particularly for concentrated industries, mixed designations – when one firm might designate its information as not confidential while others might designate the same type of information confidential for their own operations – is not likely to increase transparency and may instead result in increased bracketing of information.  For example, if one firm opted to designate its own information as not confidential, the aggregate information would still need to be bracketed because it would tend to reveal the individual operations of the other firms.  Indeed, mixed designations may result in the bracketing of information that might otherwise have been treated as non-confidential.  Specifically, aggregated data of multiple firms might need to be bracketed if a firm's designation of its own information as not confidential would result in revealing the individual operations of the other firms, whose information has been designated as confidential.

As illustrated by some of the examples in Exhibit B, this approach was employed with respect to domestic industry ratios and percentages, because the industry consists of three producers, and these requirements were met.

**4) Data from multiple sources, some of which are confidential**.  When data for one or multiple point(s) in a data period are confidential, it can be prudent to bracket all associated data for that period.  Moving back and forth between redacted and unredacted data conveys information regarding relative concentration, and the inadvertent disclosure risk of divulging confidential information is much higher.  In addition, public presentation of portions of a limited data series may preclude presentation of more aggregated data that are more likely to be discussed in a hearing, in briefs, or in the Commission's Views.  For example, in this case, there

are three data points regarding U.S. importers' end-of-period inventories of subject imports that are bracketed because these data are from a single firm.  Given the considerations discussed above, the Commission bracketed all the data points regarding U.S. importers end-of-period inventories of subject imports.  Given the considerations discussed above, the Commission brackets all the data points regarding U.S. importers end-of-period inventories of subject imports.

As illustrated in Exhibit B, this approach was applied to certain aggregate data in this investigation.

5) **Highly specialized / granular data for a concentrated industry or market**.  When presenting datasets that feature a large number of observations from a small number of sources, bracketing all associated data may prevent unintended disclosure of underlying confidential datapoints.  In such circumstances, reporting concentration can shift unexpectedly through data revisions or late submissions.  In addition, the same concerns raised by "mixed" datasets (item 4 above – relative concentration, risk of inadvertent disclosure, and data aggregation considerations) apply to this category.  For example, although the data concerning subject import quarterly inventories do not technically, meet the Commission's confidentiality aggregation threshold, Commission staff gave careful consideration to the fact that the body of importers is relatively concentrated and for these more granular sets of data, there is greater hesitancy to make some sections of the data public and others, such as domestic producers' data that do meet the aggregation requirements, confidential.  Consequently, Commission staff bracketed importers' data as well as domestic producers' data.

6) **Data changes**.  Once a dataset is published the addition or subtraction of data can change the status of the dataset from public to confidential.  In situations such as this, the change becomes subject to confidentiality considerations and the Commission determines confidential treatment in accordance with the guidelines described in 1, 2, and 3, above.  For example, if a single firm's data is added to the data set between issuance of prehearing report and the final report, comparing the original data to the new dataset would reveal information about that one firm's operations.  Because of that, the updated information that was originally public would need to be treated as confidential in the subsequent publication to preserve that firm's BPI.  This policy was not relied upon in the current case but is provided to the Court to enable a full explanation of the Commission's policies and procedures.

In sum, while we recognize the Court's concern that an agency practice ungrounded in a statute or regulation might be suspect,[15] in this case, the Commission's established approach toward designation of business proprietary information is well-grounded in the statute and regulations mandating protection of such information. The Commission is in essence the caretaker of business proprietary information submitted to it in the course of its investigations. Pursuant to its statutory and regulatory obligations, the Commission has assured questionnaire respondents that their individually-identifiable information, as defined in the listed items at the beginning of Rule 201.6, will be maintained as confidential. And, further, the Commission has been transparent in providing guidelines for how it will access that protection when individual data is aggregated with individual data from other information submitters.  For decades, the trade bar has understood and developed expectations, which they have relayed to their clients, about

---

[15] *See, e.g.*, Tr. at 168-69.

the strict protections that the Commission will afford to such information, consistent with the statutory and regulatory mandates.

## IV.    Court Rules Recognize the Proprietary Nature of Business Proprietary Information in Commission Investigations

The Commission respectfully maintains that the rules of this Court as well as of the Court of Appeals for the Federal Circuit confirm the importance of maintaining and protecting information that was designated as business proprietary during Commission proceedings.

In this regard, we note that Court of International Trade Rule 73.2(c)(1) prescribes that "any document, comment, or information that is accorded confidential or privileged status by the agency whose action is being contested and that is required to be filed with the clerk of the court, must be filed under seal" and that "{f}or the purposes of this rule and Rule 81(h), the term 'confidential information' includes business proprietary information as defined in 19 U.S.C. § 1677f(b)."  CIT R. 73.2(c)(1).  Additionally, Rule 81(h)(3) concerning the filing of confidential papers (*i.e.*, briefs and the like) states:  "Non-Availability to the Public.  The 'confidential' set of pleadings or other papers filed with the court will be available only to persons authorized to receive them and will not be made available to the public."  CIT R. 81(h)(3).  Also, this Court's Administrative Order 02-01 (In re Electronic Filing Procedures and Submission of Confidential Information) (hereinafter "AO-02-01") recognizes generally the importance of maintaining the business proprietary information protections accorded by the Department of Commerce and the Commission.[16]

---

[16] AO 02-01 also clarifies that agency records and remand determinations are an exception to the signature requirements of Rule 11:  "With the exception of agency records filed in accordance with Rules 73.1, 73.2 and 73.3 and federal agency remand determinations, every document filed electronically must be signed for the purposes of Rule 11 of the Rules of the Court by one or more attorneys of record (each "Rule 11 Signatory") pursuant to paragraph 5(a) of this Order." AO 02-01 ¶4(b).

At the March 29, 2024 hearing, this Court noted the importance of paying attention to the rules of the United States Court of Appeals for the Federal Circuit concerning confidential business information.  *See* Tr. at 14 (Mar. 29, 2024) (ECF 176).  We find it noteworthy that Federal Circuit Rule 25.1 extends the normal limitation of 15 bracketed words in most cases to 50 unique confidential words for cases arising under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b) – which includes appeals from ITC determinations.  Fed. Cir. R. 25.1(d)(1)(B).  As such, the Federal Circuit has recognized the unique nature of antidumping/countervailing duty cases and the frequent reliance in such cases on large amounts of confidential information.

Moreover, this limitation explicitly only applies to a "motion, petition, response, reply, or brief," and not to the record of the underlying decision below.  Fed. Cir. R. 25.1(d)(1).  Indeed, that court's Rules further recognize that "{t}he limitations of Federal Circuit Rule 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda to motions, petitions, responses, replies, or briefs," and any sections of the record in any hypothetical action before the Federal Circuit would be included as "appendices; attachments; exhibits" and thus would not be subject to the confidentiality word limits of 25.1(d)(1).  Fed. Cir. R. 25(d)(1)(D).  Additionally, Federal Circuit Rule 25.1(d)(2) provides that "{m}aterial that is covered by a protective order or *that has confidentiality imposed on it by a statute, rule, or regulation* may be marked confidential in any filing other than those subject to Federal Circuit Rule 25.1(d)(1) without any limitation on the number of markings.  Material that has lost its protective coverage under Federal Circuit Rule 25.1(c) may not be marked confidential."  Fed. Cir. R. 25.1(d)(2) (emphasis added).  Because the statute and regulations, as detailed above, require that confidential business proprietary information be kept confidential, and the record is not a "motion, petition, response, reply, or brief" covered by Federal Circuit Rule 25.1(d)(1), the record "may be marked confidential."

Federal Circuit Rule 25.1(c)(1) provides that

> In general, any portion of the record that was subject to a protective order in the trial court or agency must remain subject to that order on appeal or review. Material will lose its status as subject to a protective order, however, if and when it has been removed from protected status under subsection (2) below or has appeared in a filing without being marked confidential. This court, sua sponte, may direct the parties to show cause why a protective order should not be modified.

Fed. Cir. R. 25.1(c)(1).  Even then, Rule 25.1(c)(2)(B) contains an exception for appeals from Commerce or Commission antidumping and countervailing duty determinations:  the "requirement {for parties to review whether information still needs to be protected by a protective order} does not apply to cases arising under 19 U.S.C. § 1516a or to third-party information marked confidential."  Fed. Cir. R. 25.1(c)(2)(B).

Therefore, both this Court's and the Federal Circuit's rules recognize and accommodate the ongoing need during litigation to keep confidential information confidential.  To assure that we have addressed each of the Court's concerns, in Exhibit C, we provide direct answers to each of the questions posed by the Court in its Order of February 29, 2024.

## **CONCLUSION**

As detailed above, Congress has established a statutory scheme that balances the Commission's investigatory needs and necessity of keeping business proprietary information confidential with the parties' need to access information to effectively participate in investigations before the Commission.  The Commission's rules and practices regarding business proprietary information effectuate this statutory scheme.  Moreover, this Court's and the Federal Circuit's rules acknowledge and accommodate the importance of keeping business proprietary information obtained in Commission investigations confidential.  As discussed at the hearing, in section III, and in Exhibit B, these considerations apply to the business proprietary information at

27

issue in this case.   Therefore, consistent with the Commission's statute, rules, and practices, as well as the expectations of those submitting the information, the confidentiality of this information should be maintained.

<div style="margin-left: 50%">

Respectfully submitted,

*/s/ Dominic L. Bianchi*
Dominic L. Bianchi
General Counsel

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation

*/s/ Courtney S. McNamara*
Courtney S. McNamara
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3095
Facsimile: (202) 205-3111
courtney.mcnamara@usitc.gov

</div>

Dated: May 8, 2024