# UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| OCP S.A., | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| EUROCHEM NORTH AMERICA CORPORATION, | ) |
| Consolidated Plaintiff, | ) |
| | ) |
| and | ) Consol. Court No. 21-00219 |
| | ) |
| PHOSAGRO PJSC, INTERNATIONAL RAW MATERIALS LTD., and KOCH FERTILIZER, LLC, | ) **NON-CONFIDENTIAL VERSION** |
| Plaintiff-Intervenors | ) **Business Proprietary Information Removed from Pages 12-15, and 17**. |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| THE MOSAIC COMPANY and THE J. R. SIMPLOT COMPANY, | ) |
| Defendant-Intervenors. | ) |

## DEFENDANT-INTERVENOR THE J. R. SIMPLOT COMPANY'S SUPPLEMENTAL BRIEF ON CONFIDENTIALITY

Jamieson L. Greer
Stephen P. Vaughn
Neal J. Reynolds
Patrick J. McLain
King & Spalding LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
(202) 737-0500

May 22, 2024

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...........................................................................................1

II.   THE LEGAL AND REGULATORY FRAMEWORK FOR PROPRIETARY
      INFORMATION IN TRADE REMEDY PROCEEDINGS STRONGLY
      SUPPORTS PROTECTING THE BUSINESS PROPRIETARY INFORMATION
      AT ISSUE AGAINST DISCLOSURE...............................................................1

III.  CONGRESS'S REGIME FOR PROTECTING PROPRIETARY
      INFORMATION IN TRADE REMEDY PROCEEDINGS LIMITS THE
      APPLICABILITY OF PRECEDENTS ADDRESSING JUDICIALLY-
      CREATED PROTECTIVE ORDERS...............................................................6

IV.   THE CONFIDENTIALITY REGIME IN TRADE REMEDY PROCEEDINGS
      DIFFERS SIGNIFICANTLY FROM THE SEC DISCLOSURE REGIME.......................9

V.    SIMPLOT'S COMMENTS ON SPECIFIC INFORMATION IDENTIFIED BY
      THE COURT ...............................................................................................11

VI.   CONCLUSION.............................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Elec. Power Co. v. Connecticut*,
    564 U.S. 410 (2011)...........................................................................................7

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988).........................................................................................10

*Binh Hoa Le v. Exeter Fin. Corp.*,
    990 F.3d 410 (5th Cir. 2021) ............................................................................6

*City of Hartford v. Chase*,
    942 F.2d 130 (2d Cir. 1991).............................................................................8

*Ctr. for Nat'l Sec. Studies v. United States DOJ*,
    331 F.3d 918 (D.C. Cir. 2003) .........................................................................7

*CVB, Inc. v. United States*,
    681 F. Supp. 3d 1314 (CIT 2024)...................................................................15

*MetLife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) .........................................................................7

*Milwaukee v. Ill.*,
    451 U.S. 304 (1981)...........................................................................................7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)................................................................................... 10-11

*Pansy v. Borough of Stroudsburg*,
    23 F.3d 772 (3rd Cir. 1994) .............................................................................8

*SEC v. Van Waeyenberghe*,
    990 F.2d 845 (5th Cir. 1993) ............................................................................6

*United States v. Holy Land Found. for Relief & Dev.*,
    624 F.3d 685 (5th Cir. 2010) ............................................................................6

*United States v. Texas*,
    507 U.S. 529, 113 S. Ct. 1631, 123 L. Ed. 2d 245 (1993)..............................7

**Statutes**

19 U.S.C. § 1516a(b)(1)(B) ......................................................................................3

19 U.S.C. § 1516a(b)(2)(B) ..................................................................................2, 4, 8

19 U.S.C. §§ 1516a(b)(2)(B), 1677f(b)(1)(A), 1677f(c)(1)(B) ...............................2

19 U.S.C. § 1677f ...................................................................................2, 9, 10, 11

19 U.S.C. § 1677f(a)(4)(A) .....................................................................................1

19 U.S.C. § 1677f(b) ............................................................................................4, 5

19 U.S.C. § 1677f(b)(1) ..........................................................................................2

19 U.S.C. § 1677f(b)(1)(A) .....................................................................................1

19 U.S.C. § 1677f(b)(1)(B) .....................................................................................3

19 U.S.C. § 1677f(b)(2) .......................................................................................1, 3

19 U.S.C. § 1677f(c)(1)(A)-(B) ..............................................................................2

## Regulations

19 C.F.R. § 201.6 ..................................................................................................17

19 C.F.R. § 201.6(a) .....................................................................................4, 5, 16

19 C.F.R. § 201.6(a)(1) ........................................................................................2, 5

## Agency Materials

*Amendments to Rules of Practice and Procedure,*
      49 Fed. Reg. 32,569 (Int'l Trade Comm'n Aug. 15, 1984) .................................5, 16

## Rules

CIT R. 11 ..............................................................................................................17

CIT R. 11(b) ..........................................................................................................17

## Legislative History Materials

S. Rep. No. 96-249 (1979) ................................................................................2, 4, 8

S. Rep. No. 100-71 (1987) .............................................................................2, 5, 10

## I.    INTRODUCTION

On behalf of Defendant-Intervenor The J. R. Simplot Company ("Simplot"), we respectfully submit this supplemental brief on confidentiality issues raised by the Court.  *See* Order (Mar. 29, 2024), ECF No. 175; Rev'd Hearing Tr. (Mar. 29, 2024) at 167-169, ECF No. 193; Order (Feb. 29, 2024), ECF No. 158.  Simplot agrees with the United States International Trade Commission that the confidentiality of the business proprietary information at issue in this case should be maintained.  *See* Def. United States Int'l Trade Comm'n Supp. Br. On Confidentiality (May 8, 2024), ECF No. 191 ("Commission Supp. Br.").  Below, Simplot elaborates on the relevant laws and regulations concerning the confidential treatment of information in this case.  Simplot also addresses the information identified by the Court that is particularly relevant to Simplot and which the Commission treated as business proprietary information.

## II.    THE LEGAL AND REGULATORY FRAMEWORK FOR PROPRIETARY INFORMATION IN TRADE REMEDY PROCEEDINGS STRONGLY SUPPORTS PROTECTING THE BUSINESS PROPRIETARY INFORMATION AT ISSUE AGAINST DISCLOSURE

Congress has established a comprehensive statutory scheme governing the Commission's collection and protection of the information necessary for its functions.  *See* Commission Supp. Br. at 3-13.  This scheme:

- prioritizes the protection of the proprietary information of particular persons, *see* 19 U.S.C. § 1677f(a)(4)(A) (requiring the disclosure of proprietary information received in the course of a proceeding "if it is disclosed in a form which cannot be associated with, or otherwise be used to identify, operations of a particular person");

- generally forbids the disclosure of information that a person has designated as proprietary without that person's consent, 19 U.S.C. § 1677f(b)(1)(A);

- requires the Commission, if it determines that a person's designation of information as proprietary is unwarranted, to return the information to the submitter, as opposed to publicly disclosing the information, 19 U.S.C. § 1677f(b)(2);

- balances the need for protecting proprietary information with the due process rights of parties by providing for limited disclosure of proprietary information under protective order and requiring the Commission to provide by regulation appropriate sanctions

for persons who violate the protective order's requirements, 19 U.S.C. § 1677f(c)(1)(A)-(B); Commission Supp. Br. at 7;

- does not authorize the public disclosure of proprietary information based upon the passage of time, *see* 19 U.S.C. § 1677f; Commission Supp. Br. at 10-11; and

- requires the Court to preserve the confidential status of information designated as proprietary before the Commission while permitting the Court to "disclose such material under such terms and conditions as it may order," 19 U.S.C. § 1516a(b)(2)(B), *i.e.*, "the terms and conditions" of a protective order, *see* S. Rep. No. 96-249 at 248 (1979).

This scheme reflects Congress's solution to the challenge of ensuring that the Commission, which is "under the tight time limits for investigation provided by statute," can obtain the information it needs from a variety of sources, including firms that may be reluctant to provide sensitive information as well as entities that are not parties to the proceeding. *See* S. Rep. No. 100-71 at 112-114 (1987); *id.* at 112 ("in an injury investigation conducted by the ITC pertinent information is derived from a variety of sources, many of whom are not parties to the proceeding"); *id.* at 113 ("In adopting this section, the Committee has taken into account the ITC's legitimate concern that the availability under protective order of domestic firms' closely guarded financial information may have a 'chilling effect' on the willingness of some firms to supply information voluntarily.").

To elaborate on the summary above, the statute establishes the legal framework whereby parties can claim and obtain confidential treatment for business proprietary information. 19 U.S.C. § 1677f(b)(1). The statute also obliges the Commission and Court to maintain the confidential treatment of such information. 19 U.S.C. §§ 1516a(b)(2)(B), 1677f(b)(1)(A), 1677f(c)(1)(B). The language of the statute is not ambiguous on these points. Where the Commission elects to challenge a claim of confidential treatment, it refers to its regulatory definition of confidential business information (including proprietary information) for its assessment. *See* 19 C.F.R. § 201.6(a)(1); *see also* Commission Supp. Br. at 18. The legal framework is straightforward, and it affords submitting parties the opportunity in the first

2

instance to designate information as proprietary, 19 U.S.C. § 1677f(b)(1)(B), and the right to
have submitted information returned (rather than disclosed to the public) if the agency denies the
request for proprietary treatment. *See* 19 U.S.C. § 1516a(b)(1)(B); *see also* Commission Supp.
Br. at 6.

Following the submission of information designated as proprietary, the statute
contemplates that the proprietary designation may be challenged, but it does not expressly
mandate that the Commission assess whether a submitting party has reasonably designated
submitted information as proprietary. *See* 19 U.S.C. § 1677f(b)(2) ("*If* the administering
authority of the Commission determines, on the basis of the nature and extent of the information
or its availability from public sources, that designation of any information as proprietary is
unwarranted, then it shall notify the person who submitted it and ask for an explanation of the
reasons for the designation.") (emphasis added). If the Commission decides to assess the
designation of proprietary information and determines that such a designation is unwarranted, it
must follow the procedure set out in the statute for dealing with the unwarranted designation. In
such a case, the Commission "shall notify the person who submitted it and ask for an explanation
of the reasons for the designation. Unless that person persuades the administering authority or
the Commission that the designation is warranted, or withdraws the designation, the
administering authority or the Commission, as the case may be, shall return it to the party
submitting it." 19 U.S.C. § 1677f(b)(2).

With respect to the Court, the statute is also explicit about its role with respect to
information designated as proprietary by the submitting party and not rejected as such by the
Commission. In the statutory provisions governing the Commission's investigations and the
Court's review of those investigations, Congress did not include a provision stating that there is a
general policy expressed in the statute that warrants the disclosure of information designated by

interested parties as confidential, nor did it articulate a policy tending toward disclosure.  Rather, the reverse is true.  Specifically, the statute directs that in proceedings before the Court,

> The confidential or privileged status accorded to any documents, comments, or other information *shall be preserved* in any action under this section.  Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

19 U.S.C. §1516a(b)(2)(B) (emphasis added).  Thus, the statute mandates that the Court treat as confidential information on appeal all information that was treated as confidential in the proceeding below, providing that such information may be shared under appropriate terms and conditions, *i.e.*, an administrative protection order.  S. Rep. No. 96-249 at 248 ("Special provision would be made in (b) (2) (B) for preserving the confidential or privileged status of any materials contained in the record, including, where the court determines it would be appropriate, the disclosure of privileged or confidential material *only under the terms of a protective order*.  However, the lack of a determination during the administrative proceedings concerning confidentiality or privileged with respect to documents, comments, or information will not preclude a party from seeking protection for such material from the court.") (emphasis added); *see also* Commission Supp. Br. at 9.

    Within this statutory framework, the Commission has promulgated and applied 19 C.F.R. § 201.6(a), which defines "confidential business information," including "proprietary information" within the meaning of 19 U.S.C. § 1677f(b):

> Confidential business information is information which concerns or relates to the trade secrets, processes, operations, style of works, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, or amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, or other information of commercial value, the disclosure of which is likely to have the effect of either impairing the Commission's ability to obtain such information as is necessary to perform its statutory functions, or causing substantial harm to the competitive position of the person, firm, partnership, corporation,

or other organization from which the information was obtained, unless the Commission is required by law to disclose such information. The term "confidential business information" includes "proprietary information" within the meaning of section 777(b) of the Tariff Act of 1930 (19 U.S.C. 1677f(b)). Nonnumerical characterizations of numerical confidential business information (e.g., discussion of trends) will be treated as confidential business information only at the request of the submitter for good cause shown.

19 C.F.R. § 201.6(a)(1).

Under this definition, information such as that which "concerns or relates to" a company's "operations" is generally entitled to business proprietary treatment if disclosure of that information would have the effect of either (i) impairing the Commission's ability to obtain the information it needs to perform its statutory functions, or (ii) causing substantial harm to the competitive position of the company providing the information. *Id.* The first of these two standards accords with the legislative history showing that Congress took into account the Commission's "legitimate concern" that its functions would be impaired if domestic firms refused to provide, or resisted providing, their confidential information because of uneasiness about the disclosure of such information. *See* S. Rep. No. 100-71 at 113.

The Commission's definition of confidential business information also encompasses information sourced from paid subscription services, which was a topic discussed at the Court's hearing. *See* Tr. at 119-123 (the Court and Ms. McNamara), ECF No. 193. Specifically, after public notice and comment, the Commission amended 19 C.F.R. § 201.6(a) in 1984 to include "other information of commercial value" within the definition of confidential business information. In doing so, the Commission explained that the term "'other information of commercial value' may include copyrighted material or other material of commercial value prepared or purchased at considerable expense by the submitter but which is not otherwise covered by the definition." *Amendments to Rules of Practice and Procedure*, 49 Fed. Reg. 32,569, 32,570 (Int'l Trade Comm'n Aug. 15, 1984); *see also id.* at 32,549 ("the Commission

seeks to protect only a limited class of material: (1) Which is of commercial value, such as copyrighted material analyzing an industry sector which is sold commercially in the marketplace (e.g., Dunn and Bradstreet reports), and (2) which is deemed necessary to the Commission's investigation and which the Commission might otherwise have to purchase.  The Commission is seeking to distinguish between material prepared by or for a party to be used in support of or in conjunction with their case, which would not be protectable on commercial value grounds, and material prepared for commercial sale to subscribers.  In most cases, the Commission will be seeking to protect the preparer of the material rather than the submitter . . . .").

    With this overview of the legal and regulatory framework in mind, we address in the next two sections particular issues that are relevant to the confidentiality issues the Court has raised.

III.    **CONGRESS'S REGIME FOR PROTECTING PROPRIETARY INFORMATION IN TRADE REMEDY PROCEEDINGS LIMITS THE APPLICABILITY OF PRECEDENTS ADDRESSING JUDICIALLY-CREATED PROTECTIVE ORDERS**

    Simplot respectfully submits that the trade remedy context differs significantly from the Federal Courts' application of the common law right of public access to judicial records in cases that do not involve a federal statute that specifically addresses the protection of proprietary information in agency and judicial proceedings.  In the general litigation context, courts weigh the interests favoring nondisclosure against the common law interest of the public in access to judicial proceedings.  *See United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 689-691 (5th Cir. 2010); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993).  For example, in *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410 (5th Cir. 2021), *cited in* Order (Feb. 29, 2024) at 2, ECF No. 158, the Fifth Circuit criticized a district court's permissive approach to sealing discovery and judicial records, where the district court decision to seal was based on the stipulations of the parties and failed to properly account for the public's interest in access to judicial records.  990 F.3d at 417-418.

However, Congress may displace the common law right of public access, and it has done so here.  "Statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident."  *United States v. Texas*, 507 U.S. 529, 534, 113 S. Ct. 1631, 123 L. Ed. 2d 245 (1993) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783, 72 S. Ct. 1011, 96 L. Ed. 1294 (1952)); *see also Am. Elec. Power Co. v. Connecticut,* 564 U.S. 410, 423 (2011) ("Legislative displacement of federal common law does not require the 'same sort of evidence of a clear and manifest {congressional} purpose' demanded for preemption of state law.") (quoting *Milwaukee v. Ill.*, 451 U.S. 304, 317 (1981)); *Milwaukee*, 451 U.S. at 314 ("Federal common law is a 'necessary expedient,' and when Congress addresses a question previously governed by a decision rested on federal common law the need for such an unusual exercise of lawmaking by federal courts disappears") (citation omitted).  As the D.C. Circuit stated in a case involving the Freedom of Information Act ("FOIA"),

> It would make no sense for Congress to have enacted the balanced scheme of disclosure and exemption, and for the court to carefully apply that statutory scheme, and then to turn and determine that the statute had no effect on a preexisting common law right of access.  *Congress has provided a carefully calibrated statutory scheme, balancing the benefits and harms of disclosure. That scheme preempts any preexisting common law right*.

*Ctr. for Nat'l Sec. Studies v. United States DOJ*, 331 F.3d 918, 937 (D.C. Cir. 2003) (emphasis added).

A subsequent D.C. Circuit case is illuminating because it found no preemption of the common law right where the statute at issue, the Dodd-Frank Act, imposed a confidentiality obligation on agencies but not on the courts.  *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 669 (D.C. Cir. 2017) ("But even assuming that all of the sealed materials constitute confidential 'data, information, and reports' that were submitted to FSOC – a fact that

Better Markets disputes – subsection (A) requires only that '{t}he Council, the Office of Financial Research, and the other member agencies' keep those materials confidential. It imposes no such obligation on – and does not even mention – the courts. There is no reason to read the statute atextually to include such an obligation.") (footnote omitted).

Here, by contrast, a statutory purpose contrary to the common-law right of public access to judicial records is plainly evident in the statutory provision governing judicial review in this action. That provision requires that "{t}he confidential or privileged status accorded to any documents, comments, or information *shall be preserved in any action under this section*," 19 U.S.C. §1516a(b)(2)(B) (emphasis added), and makes an exception only for disclosure under "terms and conditions" that the legislative history associates with those of a protective order (rather than publication). *See id.*; S. Rep. No. 96-249 at 248.

Moreover, to the extent that general principles regarding the common law right apply here, Simplot would emphasize that the Federal courts of appeal have consistently recognized that parties' reliance on an already-existing confidentiality order is a relevant factor in determining whether to modify that order. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 789 (3rd Cir. 1994) ("In determining whether to *modify* an already-existing confidentiality order, the parties' reliance on the order is a relevant factor."); *City of Hartford v. Chase*, 942 F.2d 130, 135-136 (2d Cir. 1991). Here, Simplot submitted information to the Commission in questionnaires under the reasonable expectation that its internal confidential information would be protected as business proprietary information, given the statutory framework for proprietary information, *see* Section II, *supra*; the questionnaires' guidance regarding the confidential treatment of questionnaire responses, *see* APPX0021317; the questionnaires' "Business Proprietary" header on each page requesting data or narrative responses, *see* APPX0021312-0021377; and the Commission's long-standing practice of protecting individual companies'

questionnaire information against disclosure.[1]  *See* Commission Supp. Br. at 14-16 (discussing the Commission's long-standing practice with respect to questionnaire responses).  Simplot and other entities that provide information to the Commission have a statutory right to trust that neither the Commission nor the Court will disclose their proprietary information publicly in an investigative process or on appeal, and that information will be returned (rather than disclosed) if the Commission rejects a request for proprietary treatment.  If it were otherwise, companies – including domestic producers deciding whether to petition for relief from unfair trade and non-parties that do not wish to litigate an injury investigation – would face strong disincentives to submitting their proprietary information to the Commission.

## IV.    THE CONFIDENTIALITY REGIME IN TRADE REMEDY PROCEEDINGS DIFFERS SIGNIFICANTLY FROM THE SEC DISCLOSURE REGIME

Policies evident in other statutory disclosure regimes do not trump the confidentiality framework established by Congress for trade remedy proceedings.  Given the statutes, regulations, and legislative history discussed above, the regime for protecting business proprietary information in the trade remedy context differs fundamentally from the disclosure rules of the U.S. securities laws and the U.S. Securities and Exchange Commission ("SEC").  *See also* Tr. at 168, ECF No. 193 (the Court expressing interest in comparisons between SEC requirements and the circumstances here.)

As the Commission has correctly observed, 19 U.S.C. § 1677f seeks "to balance the public interest of government transparency with the private interest of protection of confidential information," Commission Supp. Br. at 16 n.12, and often involves relatively granular, product-specific data.  *Id.* at 15-16.  In contrast, the SEC regime is focused on the public disclosure of material information, rather than proprietary information, for the purpose of investor protection.

---

[1] Simplot also submitted other information with claims for proprietary treatment in confidential declarations and elsewhere with essentially the same expectation.

*Id.* at 16 n.12.  In relation to the securities laws, the Supreme Court has taken care "not to set too low a standard of materiality; it was concerned that a minimal standard might bring an overabundance of information within its reach, and lead management 'simply to bury the shareholders in an avalanche of trivial information -- a result that is hardly conducive to informed decisionmaking.'" *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 448-449 (1976)).  Consequently, the securities disclosures of publicly listed companies tend to be at a higher level of generality than the product- and industry-specific information required by the Commission.  *See* Commission Supp. Br. at 16; Tr. at 70 (Ms. McNamara), ECF No. 193.  Conversely, disclosure of a company's product-specific information that might be immaterial to an investor could nonetheless provide valuable intelligence to a competitor or impair the Commission's statutory functions by deterring other companies from promptly complying with requests for information.

In addition, the incentives of actors in these two spheres differ.  In the trade remedy context, the Commission must obtain information – under tight statutory deadlines – from a variety of entities, including entities that are not parties to the proceeding and entities that do not have an incentive to provide information absent a subpoena or other compulsion.  *See* S. Rep. No. 100-71 at 112-114.  If the recipient of a Commission questionnaire lacked the assurance currently provided by the Commission that the company-specific information in its questionnaire response will be kept confidential, then the Commission's information-gathering challenges will increase and the purpose of 19 U.S.C. § 1677f  would be undermined.  In contrast, SEC disclosure rules apply to an issuer of securities that willfully seeks access to the public securities markets for investment funds.  In this context, the securities issuer voluntarily subjects itself to U.S. securities disclosure rules in order to obtain the benefits of offering its securities to the public.  *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,* 575 U.S.

175, 178 (2015) ("The Securities Act of 1933 . . . protects investors by ensuring that companies issuing securities (known as 'issuers') make a 'full and fair disclosure of information' relevant to a public offering. The linchpin of the Act is its registration requirement. With limited exceptions not relevant here, *an issuer may offer securities to the public only after filing a registration statement*. That statement must contain specified information about both the company itself and the security for sale. Beyond those required disclosures, the issuer may include additional representations of either fact or opinion.") (citations omitted; emphasis added).

Given the different incentives in these two contexts, it would be incorrect to posit that the trade remedy regime would function as Congress intended if company-specific information provided to the Commission were subject to disclosure obligations akin to those imposed by the SEC regime. Such an approach would also be contrary to the conditions that 19 U.S.C. § 1677f imposes on the disclosure of proprietary information submitted to the Commission.

## V.    SIMPLOT'S COMMENTS ON SPECIFIC INFORMATION IDENTIFIED BY THE COURT

As explained above, a submitter of information is responsible in the first instance for claiming business proprietary treatment for any materials it claims should be treated as business proprietary. The Court has identified a number of pieces of information that the Commission treated as business proprietary in its remand determination, including some particularly relevant to Simplot. *See* Order (Feb. 29, 2024) at Exhibits 1 and 2, ECF Nos. 158-1, 158-2. For these latter instances, we describe below Simplot's bases for its underlying claim of proprietary treatment. Disclosure of this information submitted by Simplot would impair the Commission's ability to obtain information from Simplot and/or cause substantial harm to Simplot's competitive position. In this regard, Simplot emphasizes that it is particularly vulnerable to competitive harm from disclosure because it is a privately-held company.

As an initial matter, and as described in the Commission's comments on confidentiality, the Commission is bound to treat as proprietary materials submitted as such during the investigation unless the Commission has previously determined that they are not entitled to be treated as proprietary.  Commission Supp. Br. at 5-9.  Thus, the Commission redacted its remand determination to avoid disclosing business proprietary information submitted by Simplot in the original investigation and the remand proceeding.

Noting that the Commission's remand determination was not submitted to the Court by Simplot, the company nevertheless provides the explanations below to assist the Court in understanding the underlying claims for proprietary treatment.  The items in Figure 1 below, which the Court identified and are relevant to Simplot, were designated as proprietary based on the statute and the Commission's regulations and practice.  Following Figure 1, we provide Simplot's rationale for each item redacted by the Commission.

**Figure 1**

| Item | ITC Remand Determ. Page No. | Passage | Court Statement from ECF Nos. 158-1 or 158-2 (Feb. 29, 2024) |
|------|------|---------|------|
| **(A)** | 23 n. 112 | "Simplot explains that it has supply chain operations and warehouses [              ]" | This information is available on Simplot's website. |
| **(B)** | 24 | "Simplot reports that [                ]." | This information is available on Simplot's website. |
| **(C)** | 26 | "[           ]" | This information is available on the companies' websites and press releases. |
| **(D)** | 32 | "the supplementary questionnaire information obtained in these remand proceedings indicates that domestic | Domestic producers like Mosaic and Nutrien describe their |

| | | producers maintain these inventories [                            ]. We observe that the record both in the original investigations and as supplemented on remand show that domestic producers rely upon [                            ]" | distribution networks in required securities filings and annual reports. Similar information is available on domestic producers' websites. |
|---|---|---|---|
| **(E)** | 49 n. 220 | "Other publications, including [                            ], discussed the [                            ]. Simplot Posthearing Br. at Exhibits 6 ([                    ] reporting [                            ]), 18 ([                            ]), 19 [          ] reporting [                            ])." | This information is available to anyone with a subscription to the trade publications. |
| **(F)** | 24 n. 119 | "Simplot further explains that [                            ]." | This information concerns Simplot's individual operations, but public disclosure would not cause competitive injury. |

**Item (A).**  This information originated from two confidential declarations by Simplot executives, Chris Shelden and Douglas Stone, appended to the company's post-hearing brief

before the Commission in the underlying investigation.  APPX0095935-0095968; APPX0096099-0096104.  Mr. Stone's declaration provided specific numbers for specific types of facilities in response to specific claims about the company's operations in the Midwest. APPX0096099-0096104.  Further, Mr. Stone's confidential declaration on this point cross-referenced to a separate confidential declaration by Ms. Shelden, who addressed specific facilities in specific locations relative to a particular potential transaction to rebut certain allegations about Simplot's operations.  APPX0095935-0095968.

To be sure, there is public information available about Simplot facilities in various locations for a given moment in time, primarily for general marketing purposes.  However, the information provided in these confidential declarations was operational in nature and referred to potential commercial transactions and the specific types of facilities and numbers of facilities that were available at those times.  Further, the marketing information cited by the Court is [                              ] information set out in the confidential declarations, which refer to specific numbers and types of facilities.  *Compare* ECF No. 159, *with* APPX0095935-0095968; APPX0096099-0096104.  Thus, Simplot requested confidential treatment for this information because, if disclosed in the context of the investigation and the specific issues raised therein, the company believed disclosure would have caused it competitive harm.  Moreover, Simplot was willing to provide such detailed information because it understood that the Commission would treat it with appropriate confidentiality.

**Item (B).**  The Commission obtained this information from Simplot's remand questionnaire response.  *See* APPX0021370-0021378, APPX0099750-0099761.  In its remand questionnaires, the Commission represented to parties that confidential information in questionnaire responses would be treated as confidential, *see, e.g.*, APPX0021317, and the Commission has in fact granted such treatment in implementing the statute (including in this

case). *See* Commission Supp. Br. at 14. In submitting its responses to the questionnaire, Simplot retained the "Business Confidential" markings on the document, consistent with the Commission's representation and the company's expectations. *See* APPX0021370-0021378. This practice by the Commission enhances the agency's ability to obtain the information it needs from Simplot and other companies to conduct its investigations. In this instance, we defer to the Commission's judgment on whether it should have deviated from its practice regarding the confidentiality of questionnaire responses and devoted resources to researching a public source for this information. We also note that Simplot submitted its remand questionnaire response to the Commission on November 13, 2023, *see* APPX0021367-0021368, prior to the Court's opinion in *CVB, Inc. v. United States*, 681 F. Supp. 3d 1314 (CIT 2024).

Item (C). We understand that the Commission bracketed this information [

] information that "Mosaic produces and purchases ammonia." APPX0021156; APPX0099971. Failing to redact this otherwise unremarkable information in this context [                                    ] would reveal that [

] a commercial insight available from confidential questionnaire responses that, [                              ], is not a publicized matter. Thus, disclosing such information could cause competitive harm to Simplot, and treating such information as public information could prevent the Commission from obtaining this type of data for its investigations.

Item (D). In this passage, the Commission is characterizing information included in Simplot's remand questionnaire response. *See* APPX0021370-0021378, APPX0099750-0099761. As explained above, the Commission represented to parties that confidential information in questionnaire responses would be treated as confidential, and Simplot submitted the information in its questionnaire response with that expectation. In this instance, we defer to

the Commission's judgment on whether this general characterization in the remand determination was necessary to protect confidential information of the parties involved.  In our experience, such a decision is often based in part on the strong sanctions available for failure by Commission staff or the parties to protect confidential information.

Item (E).  These materials were submitted as confidential business information because they are from a paid subscription service.  As explained above, such materials are "other information of commercial value" within the meaning of 19 C.F.R. § 201.6(a).  The materials provided to the Commission and cited in its remand determination are "copyrighted material analyzing an industry sector which is sold commercially in the marketplace," which is exactly the type of information that the Commission intended to cover as part of its rulemaking extending confidential treatment to such materials.  *See Amendments to Rules of Practice and Procedure*, 49 Fed. Reg. 32,569, 32,549 (Int'l Trade Comm'n Aug. 15, 1984).  The Commission relies on such information for its final and remand determinations in this case – as evidenced by its citations throughout those determinations – and the Commission might not otherwise to be able to obtain such information without affording it confidential treatment.

Item (F).  The Commission obtained this information from Simplot's remand questionnaire response.  *See* APPX0021370-0021378, APPX0099750-0099761.  In its remand questionnaires, the Commission represented to parties that confidential information in questionnaire responses would be treated as confidential, *see, e.g.*, APPX0021317, and the Commission has in fact granted such treatment in implementing the statute (including in this case).  *See* Commission Supp. Br. at 14.  In submitting its responses to the questionnaire, Simplot retained the "Business Confidential" markings on the document, consistent with the Commission's representation and the company's expectations.  *See* APPX0021370-0021378.

This practice by the Commission enhances the agency's ability to obtain the information it needs from Simplot and other companies to conduct its investigations.

Moreover, in this instance, disclosure of Simplot's [

] would cause competitive injury to the company.  If this information specific to Simplot were public, its competitors and customers would know [

] For example, this could permit customers to [

].  Competitors could also use this information [                                                                                    ].

This is exactly the type of information the statute is designed to protect, *i.e.*, information that "concerns or relates to the . . . operations, . . . or to the . . . sales, shipments, purchases, transfers, . . . {or} inventories."  19 C.F.R. § 201.6.

## VI.    CONCLUSION

For the foregoing reasons, we respectfully request that the Court maintain the confidentiality of the information in the record that it identified in its Order of February 29, 2024.[2]

---

[2] Simplot agrees with the Commission's argument that sanctions are not warranted under CIT R. 11.  *See* Commission Supp. Br., Exhibit C at 6-8.  To avoid any doubt, Simplot emphasizes that Rule 11 sanctions are not warranted with respect to Simplot or its counsel.  Rule 11 governs "representations" to the Court.  CIT R. 11(b).  Counsel for Simplot have not presented to the Court any pleading, written motion, or other paper in this action that is contrary to the representations enumerated in Rule 11, and we are not aware of any allegation to the contrary.  Simplot and its counsel also claimed confidential treatment on a good faith basis throughout the underlying investigation and in this remand proceeding.  Moreover, in light of the Court's reference to the *CVB* opinion in discussing the confidentiality concerns now at issue, *see* Order (Feb. 29, 2024) at 2, ECF No. 158, Simplot notes that the only substantive papers it has submitted to the Court since the issuance of *CVB* in January 2024, 681 F. Supp. 3d 1314, are its comments on the Commission's remand determination, *see* ECF No. 186, and this supplemental

Respectfully submitted,

*/s/ Jamieson L. Greer*
Jamieson L. Greer
Stephen P. Vaughn
Neal J. Reynolds
Patrick J. McLain

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500
jgreer@kslaw.com

Counsel For Defendant-Intervenor The J. R.
Simplot Company

May 22, 2024

---

brief on confidentiality. Simplot respectfully submits that neither of those submissions contains any material that violates Rule 11, whether with in relation to confidential information or otherwise.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedures 2(B)(1) and (2), I hereby certify that the attached

**DEFENDANT-INTERVENOR THE J. R. SIMPLOT COMPANY'S SUPPLEMENTAL**

**BRIEF ON CONFIDENTIALITY** contains 5,434 words, according to the word-count function

of the word processing system used to prepare this submission (Microsoft Word) and including

headings, footnotes, and quotations, and excluding the cover page, table of contents, table of

authorities, counsel's signature block, and this certificate.

*s/ Jamieson L. Greer*
Jamieson L. Greer
jgreer@kslaw.com

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500
jgreer@kslaw.com

Dated: May 22, 2024