Slip Op. No. 25-32

# UNITED STATES COURT OF INTERNATIONAL TRADE

OCP S.A.,

     *Plaintiff,*

EUROCHEM NORTH AMERICA
CORPORATION,

     *Consolidated Plaintiff,*

*and*

PHOSAGRO PJSC, INTERNATIONAL
RAW MATERIALS LTD., and KOCH
FERTILIZER LLC,

     *Plaintiff-Intervenors,*
v.

UNITED STATES,

     *Defendant,*

*and*

THE MOSAIC COMPANY and J.R.
SIMPLOT COMPANY,

     *Defendant-Intervenors.*

Before: Stephen Alexander Vaden,
Judge

Consol. Court No. 1:21-cv-00219

## <u>OPINION</u>

[Ordering the United States International Trade Commission to comply with the law
and its own regulations regarding confidential treatment of information.]

Dated: March 27, 2025

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 2 of 48

Consol. Court No. 1:21-cv-00219                                    Page 2

*Shara L. Aranoff*, Covington & Burling LLP, of Washington, DC, for Plaintiff OCP
S.A. With her on the brief are *James M. Smith*, *Victor D. Ban*, *Sooan (Vivian) Choi*,
*Caroline L. Garth*, and *Kwan Woo (Kwan) Kim*.

*Jeremy W. Dutra*, Squire Patton Boggs LLP, of Washington, DC, for Consolidated
Plaintiff and Plaintiff-Intervenor EuroChem North America Corporation. With him
on the brief is *Peter Koenig*.

*Michael G. Jacobson*, Hogan Lovells US LLP, of Washington, DC, for Plaintiff-
Intervenor PhosAgro PJSC. With him on the brief are *H. Deen Kaplan*, *Jared R.
Wessel*, and *Cayla D. Ebert*.

*Melissa M. Brewer*, Kelley Drye & Warren LLP, of Washington, DC, for Plaintiff-
Intervenor International Raw Materials Ltd. With her on the brief is *Paul C.
Rosenthal*.

*Ken G. Weigel*, Alston & Bird LLP, of Washington, DC, for Plaintiff-Intervenor Koch
Fertilizer LLC. With him on the brief is *Chunlian Yang*.

*Dominic L. Bianchi*, General Counsel, and *Courtney S. McNamara*, Attorney-Advisor,
Office of the General Counsel, International Trade Commission, of Washington, DC,
for the Defendant United States. With them on the brief is *Andrea C. Casson*,
Assistant General Counsel for Litigation.

*Jeffrey I. Kessler*, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC,
for Defendant-Intervenor the Mosaic Company. With him on the brief are *Stephanie
E. Hartmann*, *Patrick J. McLain*, Alexandra *Maurer*, and *David J. Ross*.

*Jamieson L. Greer*, King & Spalding LLP, of Washington, DC, for Defendant-
Intervenor the J. R. Simplot Company. With him on the brief are *Stephen P. Vaughn*
and *Clinton R. Long*.

**Vaden, Judge:** The United States International Trade Commission (the

Commission) takes a startling position in this litigation. Imagine a company receives

a questionnaire from the Commission and, as part of its response, quotes verbatim

an article from the front page of a major newspaper. According to the Commission,

that publicly available quote is automatically confidential simply because it appeared

in a questionnaire response. If anyone involved in the proceeding uses the quote

publicly, they could be sanctioned, disbarred from practicing before the Commission, and even referred to the United States Attorney for criminal prosecution. Furthermore, once the Commission closes its record, no court — not this Court, the Federal Circuit, nor even the Supreme Court — can permit the quote's public use during litigation. The Commission believes the Federal Circuit's rules to the contrary are illegal.

The Commission has a practice of automatically treating all information in questionnaire responses as confidential. That practice is inconsistent with statute, regulation, precedent, and common sense. In defending its practice, the Commission claims it is the sole arbiter of what is and is not confidential and that its determination binds even the federal courts that review its determinations. The Commission's decisions have profound effects on the lives of everyday citizens, but the Commission believes it can make those decisions in complete secrecy. That is not the law, and the Commission is not a law unto itself. The Commission's practice led it to improperly redact information in the public Remand Results and the public administrative record it filed with this Court. The Commission must not afford the improperly redacted information confidential treatment.

## BACKGROUND

The underlying dispute in this case involves a challenge to the Commission's affirmative injury determination in its investigation of phosphate fertilizers from Morocco and Russia. *OCP S.A. v. United States* (*OCP I*), 47 CIT __, 658 F. Supp. 3d 1297, 1300–01 (2023). The Court received extensive briefing and heard oral

argument. *See id.* at 1303–1311 (recounting the proceedings). It remanded the case to the Commission after finding substantial evidence did not support the Commission's determination. *Id.* at 1324. Concerns surrounding confidentiality first appeared during this initial phase of the case. Before holding oral argument, the Court held a conference call with the parties. Audio Recording, Conf. Call Regarding Oral Arg. (Conf. Call) (June 7, 2022), ECF No. 144. During this call, counsel for the Commission urged the Court to hold the entire oral argument in closed session.[1] *Id.* at 24:33–50. The Court declined to do so and instead decided to hold a public oral argument with a confidential session at the end if necessary. *See generally* Oral Arg. Tr., ECF No. 129. The vast majority of the oral argument was held in open court, and the Court's eventual opinion was entirely public. *See id.*; *OCP I*, 47 CIT __, 658 F. Supp. 3d at 1297.

After the Court's opinion in *OCP I* but before the Commission filed its Remand Results, the Court decided another challenge to an injury determination by the Commission. In *CVB, Inc. v. United States*, 47 CIT __, 675 F. Supp. 3d 1324, 1347 (2023), the Court upheld the Commission's determination under the harmless error standard. Shortly thereafter, the Commission filed a motion asking the Court to retract its opinion in *CVB* because it believed the opinion contained business confidential information. *CVB, Inc. v. United States* (*CVB II*), 48 CIT __, 681 F. Supp. 3d 1314, 1315 (2024). The Court denied that motion on January 8, 2024, in a written opinion. *Id.* at 1323. First, the Court found that the Commission's wholesale failure

---

[1] A closed session would bar not only the public and the media but also the corporate officers of the parties to the case from attending.

to comply with USCIT Rule 5(g)'s procedure for identifying confidential information meant that the Commission forfeited any confidentiality claim. *Id.* at 1317–19. Second, the Court found that much of the supposedly confidential information was not entitled to confidential treatment because substantially identical information was publicly available. *Id.* at 1320. This information was publicly available not only in the popular press but also from the Commission's own public hearing. *Id.*

The Commission filed its Remand Results in this case on January 17, 2024, and the administrative record for the remand proceedings on January 31, 2024. ECF Nos. 145–46, 149–50. Alerted by reports that the Remand Results contained heavy redactions, the Court reviewed the record. Order Regarding Confidentiality (Order) at 2–3, ECF No. 158; *see* Jennifer Doherty, *Trade Commission Reaffirms Fertilizer Import Injury*, LAW 360 (Jan. 18, 2024), http://bit.ly/3WbM74R (describing the Remand Results as "heavily redacted"). The Court found "numerous redactions" in both the public Remand Results and public administrative record "that appear to violate the principles elucidated in [*CVB II*]." Order at 2–3, ECF No. 158. The redacted information included broad statements about industry conditions, market prices, and information that is substantially identical to information available on domestic producers' own websites and in mandatory securities filings. *See* Order Ex. 1 at 1–12, ECF No. 159.

The Court ordered the parties to appear at an evidentiary hearing to explain and justify the redactions. Order at 5–7, ECF No. 158. The hearing took place on March 29, 2024. ECF No. 174. The parties had the opportunity to present witnesses

and exhibits to explain the redactions and what harm would occur if the redacted information was not afforded confidential treatment.  Order at 7, ECF No. 158.  All parties waived this opportunity and declined to present witnesses or exhibits.  Hr'g Tr. at 9:23–10:8, ECF No. 193.

The hearing began with the Commission explaining how it determines what information to treat as confidential.  Counsel for the Commission explained that the Commission has a longstanding practice of automatically treating questionnaire responses as confidential in their entirety.  *Id.* at 20:16–22.  This practice, the Commission's counsel explained, is not grounded in any statute or regulation, *id.* at 20:23–21:3, but "has been long-established and relied upon by the parties."  *Id.* at 35:17–18; *see also id.* at 20:16–19 (Mr. Bianchi:  "Information that is submitted through questionnaires has been for decades treated differently by the Commission, as our standard practice of doing so."); *id.* at 140:13–17 (Mosaic's counsel agreeing that the Commission has a practice of treating information in questionnaires as confidential).  The Commission admitted it automatically treats all information in questionnaire responses as confidential, even if the information is obviously publicly available.  *Id.* at 47:12–13 (Commission's treatment of questionnaire responses is "automatic."); *id.* at 43:13–46:13 (noting the Commission would treat cited quotes from a newspaper article as confidential).

This practice differs from how the Commission treats other information sources.  In other submissions, parties must specify the information for which they request confidential treatment and submit a certification affirming that

Case 1:21-cv-00219-SAV     Document 220     Filed 03/27/25     Page 7 of 48

Consol. Court No. 1:21-cv-00219                                          Page 7

"substantially identical information is not available to the public[.]"  *Id.* at 19:20–20:2; *id.* at 20:16–19 (explaining that questionnaires are "treated differently by the Commission"); *see also* 19 C.F.R. § 201.6(b) (describing the procedure for submitting confidential business information to the Commission).

After discussing the Commission's practices surrounding confidentiality, the hearing turned to discussing specific information identified by the Court as publicly available. *See* Hr'g Tr. at 63:10–131:17, ECF No. 193; Order Ex. 1, ECF No. 159. The Commission responded with largely "technical argument[s]" regarding the scope of the Commission's investigation and how the narrow scope means that the information redacted in the Remand Results is more specific than the publicly available information. *See* Hr'g Tr. at 33:21–34:1, ECF No. 193. Even in cases where the redacted information in the Remand Results is publicly available verbatim, the Commission refused to agree to release the information. *See, e.g.*, *id.* at 103:11–104:21. *Compare* Remand Results at 24, ECF No. 145 (treating Mosaic's general distribution information as confidential), *with* The Mosaic Co., Annual Report (Mosaic 2022 Form 10-K) at 15 (Feb. 23, 2022), https://bit.ly/4gmB3cl (publicly describing the company's general distribution network). Two domestic producers, the Mosaic Company (Mosaic) and the J.R. Simplot Company (Simplot), also had the opportunity to present their arguments to the Court. Mosaic indicated that it did not believe some of the redacted items merit confidential treatment and would elaborate further in its supplemental briefing. Hr'g Tr. at 149:14–152:24, ECF No. 193.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 8 of 48

Consol. Court No. 1:21-cv-00219                                              Page 8

The Commission, Simplot, and Mosaic all filed post-hearing supplemental briefs addressing confidentiality. The Commission — in contrast to its repeated statements at the hearing — now argues that its practice of automatically treating questionnaire responses as confidential is consistent with the statutory and regulatory scheme governing confidentiality. Def.'s Suppl. Br. at 14, ECF No. 191. The Commission also argues that, once it closes the administrative record, neither it nor any court can publicly disclose information the Commission treated as confidential. *See id.* at 6–13. To do so, the Commission says, violates the Commission's rules and could result in "disbarment from practice before the Commission, referral to the United States Attorney," or other disciplinary measures. *Id.* at 9; *see also* Hr'g Tr. at 56:6–7, ECF No. 193 (Mr. Bianchi: "I would be subject to … criminal sanctions…."); *id.* at 161:23–24 (Mr. Greer: "I can't do that. I'll be sanctioned."); *id.* at 162:6 (Mr. Greer: "I would get sanctioned ….").

Simplot's arguments largely echo the Commission's arguments that automatically designating questionnaire responses as confidential is consistent with the statutory and regulatory scheme and that the Court lacks the power to question the Commission's designation of information as confidential. *See* Simplot's Suppl. Br. at 1–11, ECF No. 197. In addition to its legal arguments, Simplot addressed the confidentiality of specific pieces of information identified by the Court. *See id.* at 11–17. Simplot "request[s] that the Court maintain the confidentiality" of all the information related to Simplot identified as potentially publicly available or otherwise not entitled to confidential treatment. *Id.* at 17.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 9 of 48

Consol. Court No. 1:21-cv-00219                                    Page 9

In its brief, Mosaic addressed each piece of information related to Mosaic that the Court identified as potentially publicly available. *See generally* Mosaic's Suppl. Br., ECF No. 195. Mosaic stated that, consistent with statements made by its counsel at the hearing, it "does not claim confidential treatment" for most of the information pertaining to Mosaic that the Court identified as publicly available. *Id.* at 1; *see also* Attach. to Mosaic's Suppl. Br. at 1, ECF No. 195. For example, the Commission redacted information on Mosaic's distribution network that Mosaic "considers … substantially equivalent to [information] that [is] publicly available." Mosaic's Suppl. Br. at 3, ECF No. 195. Of the eight pieces of information pertaining to Mosaic identified by the Court as possibly public information, Mosaic claims that only three warrant confidential treatment — and one of those only in part. *Id.* at 1. Mosaic explains the information for which it requests confidential treatment is not publicly available and specifies how it would suffer competitive harm if that information were released. *See id.* at 2–4. Having given the parties the opportunity to submit arguments both in writing and at an evidentiary hearing, the Court will clarify the law.

## STANDARD OF REVIEW

The interpretation of statutes and agency regulations are questions of law, which this Court reviews *de novo*. *See Welshans v. United States Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008). "In determining the meaning of a statutory provision," this Court "look[s] first to its language, giving the words used their ordinary meaning." *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018) (citation and

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 10 of 48

Consol. Court No. 1:21-cv-00219                                      Page 10

quotation marks omitted).  The Court must stop its inquiry there if a careful examination of the ordinary meaning "yields a clear answer." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).  It will not read legislative history to "'muddy' the meaning of 'clear statutory language.'"  *Id.* (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 572 (2011)).  These same interpretive rules apply when construing agency regulations.  *See Lengerich v. DOI*, 454 F.3d 1367, 1370 (Fed. Cir. 2006) (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414–15 (1945)).  Furthermore, *Chevron* is dead; and courts no longer defer to agencies' interpretations of their governing statutes.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("*Chevron* is overruled.").  Nor have the parties here claimed such deference is owed.  *See generally* Def.'s Suppl. Br., ECF No. 191; Simplot's Suppl. Br., ECF No. 197; Mosaic's Suppl. Br., ECF No. 195.

## DISCUSSION

Congress created the International Trade Commission.  Congress also passed laws governing the Commission's treatment of information, including laws limiting what information the Commission can treat as confidential and setting certain procedures for designating information as confidential.  The Commission imposed further constraints on itself by promulgating regulations.  The Commission's practice of automatically treating questionnaire responses as confidential violates both the laws and the regulations governing access to information from proceedings before the Commission.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 11 of 48

Consol. Court No. 1:21-cv-00219                                    Page 11

When the Commission appears in federal court, a new set of rules apply. The federal courts belong to the people and are presumptively open to the public. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021) ("The Judicial Branch belongs to the American people."). Unnecessary claims of confidentiality erode public trust in the judiciary by limiting public access. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980) (Brennan, J., concurring) ("Closed trials breed suspicion of prejudice and arbitrariness, which in turn spawns disrespect for law."); *cf. TikTok Inc. v. Garland*, 145 S. Ct. 57, 74 (2025) (Gorsuch, J., concurring) ("Efforts to inject secret evidence into judicial proceedings present obvious constitutional concerns."). They also hinder judicial efficiency and slow the administration of justice. *See In re Violation of Rule 28(d)*, 635 F.3d 1352, 1360 (Fed. Cir. 2011). To prevent these harms and manage their own dockets, federal courts — including this Court — have the power to release information that parties have inappropriately designated as confidential. *See, e.g.*, 19 U.S.C. § 1516a(b)(2)(B).

The Commission improperly redacted the public Remand Results and public administrative record that it filed with the Court, as both contain information that was erroneously designated as confidential. This information is not entitled to confidential treatment because it meets neither the statutory nor the regulatory standards. It cannot be redacted.

## I.

Agencies must follow the law and their own regulations. *See Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 12 of 48

Consol. Court No. 1:21-cv-00219                                    Page 12

rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.") (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Several statutes and regulations govern access to information from Commission proceedings.

The Tariff Act of 1930 governs access to information in proceedings before the Commission. It provides that "information submitted to … the Commission which is designated as proprietary by the person submitting the information" shall generally be treated as confidential. 19 U.S.C. § 1677f(b)(1)(A). However, it also provides a mechanism to address "unwarranted designation." *Id.* § 1677f(b)(2). The Commission may determine "that designation of any information as proprietary is unwarranted" based on "the nature and extent of the information or *its availability from public sources ….*" *Id.* (emphasis added). The Commission must then notify the person submitting the information. *Id.* Unless the person submitting the information persuades the Commission that the information has been appropriately designated as proprietary, the Commission returns the information to the submitter. *Id.*

19 U.S.C. § 1516a governs judicial review of the Commission's injury determinations in antidumping and countervailing duty cases. Section 1516a also governs how this Court treats information to which the Commission afforded confidential treatment, saying:

> The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. *Notwithstanding the preceding sentence, the court may examine, in camera, the*

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 13 of 48

Consol. Court No. 1:21-cv-00219                                    Page 13

> confidential or privileged material, and may disclose such
> material under such terms and conditions as it may order.

*Id.* § 1516a(b)(2)(B) (emphasis added).

In addition to the statutes, the Commission has promulgated regulations governing its treatment of confidential information. Chief among these is 19 C.F.R. § 201.6. Section 201.6 defines confidential business information as:

> information which concerns or relates to the trade secrets,
> processes, operations, style of works, or apparatus, or to
> the production, sales, shipments, purchases, transfers,
> identification of customers, inventories, or amount or
> source of any income, profits, losses, or expenditures of any
> person, firm, partnership, corporation, or other
> organization, or other information of commercial value, the
> disclosure of which is likely to have the effect of either
> impairing the Commission's ability to obtain such
> information as is necessary to perform its statutory
> functions, or causing substantial harm to the competitive
> position of the person, firm, partnership, corporation, or
> other organization from which the information was
> obtained, unless the Commission is required by law to
> disclose such information.

19 C.F.R. § 201.6(a)(1).

Section 201.6 further states that confidential business information "includes 'proprietary information' within the meaning of [19 U.S.C. § 1677f]" and that "[n]onnumerical characterizations of numerical confidential business information (e.g., discussion of trends) will be treated as confidential business information only at the request of the submitter for good cause shown." *Id.* (quoting 19 U.S.C. § 1677f).

This Court previously held that publicly available information is not entitled to confidential treatment. *See CVB II*, 48 CIT __, 681 F. Supp. 3d at 1319. Further, agreement among the parties to treat information as confidential does not make

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 14 of 48

Consol. Court No. 1:21-cv-00219                                           Page 14

information confidential.  *See id.* at 1316–17.  When parties improperly redact information, this Court declines to afford that information confidential treatment and instead treats it as public.  *See, e.g., Giorgio Foods, Inc. v. United States*, No. 1:23-cv-00133, 48 CIT __, 2024 Ct. Intl. Trade LEXIS 84, at \*5 n.6, \*6 n.7 (July 17, 2024) (Baker, J.); *Jiangsu Alcha Aluminum Co. v. United States*, 48 CIT __, 712 F. Supp. 3d 1376, 1381 n.3 (2024); *Officine Tecnosider Srl v. United States*, No. 1:23-cv-00001, 48 CIT __, 2024 Ct. Intl. Trade LEXIS 103, at \*28 n.5 (Sept. 17, 2024).

The Federal Circuit limits the use of confidential information in briefs and requires parties to justify their claims of confidentiality.  In antidumping and countervailing duty cases arising under 19 U.S.C. § 1516a, parties may only designate up to fifty words as confidential in their briefs.  Fed. Cir. R. 25.1(d)(1)(B). The parties cannot choose to designate anything they wish as confidential.  Instead, they can only designate information as confidential if it: "(1) is treated as confidential pursuant to a judicial or administrative protective order and (2) such marking is authorized by statute, administrative regulation, or court rule[.]"  Fed. Cir. R. 25.1(d)(1).  The parties "must be prepared to justify at oral argument any claims of confidentiality" because "[u]nnecessarily designating material in the briefs and appendix as confidential abrogates the right of public access and may hinder the court's preparation and issuance of opinions."  Practice Notes to Fed. Cir. R. 25.1; *see also* Practice Notes to Fed. Cir. R. 34; *In re Violation of Rule 28(d)*, 635 F.3d at 1360 (Improper redaction "hampers [the Court's] consideration and opinion writing.").

## II.

At the evidentiary hearing, the Court repeatedly asked the Commission's General Counsel if the Commission's automatic treatment of all questionnaire responses as confidential is grounded in statute or the Commission's regulations. Each time, Mr. Bianchi answered no.[2]  In its briefs, the Commission backtracks.  It now claims its practice of treating all questionnaire responses as confidential is consistent with the governing statute and regulation.  Def.'s Suppl. Br. at 14, ECF No. 191.  The Commission had it right the first time.

The Commission's practice is inconsistent with the relevant statute and the Commission's own regulation for at least three reasons.  First, the Commission's practice results in treating publicly available information as confidential.  Second, the Commission's practice results in inconsistent treatment of the same information based solely on how the Commission obtained it.  Third, the statute and regulation do not permit the Commission to unilaterally designate information as confidential.

---

[2] Hr'g Tr. at 20:25–21:3, ECF No. 193 (The Court: "Is that practice based on the text of a statute or regulation ...?" Mr. Bianchi: "No, sir."); *id.* at 35:7–12 (The Court: "Does that statute contain an exception or does the regulation contain an exception that says none of the things that we have just listed apply to questionnaires issued by the Commission?" Mr. Bianchi: "Your Honor ... no.  It does not."); *id.* at 38:1–13 (The Court: "And I want to ask once again .... can you cite to me a statute or a regulation which says the normal rules regarding confidential information which are laid out in your own regulation and are laid out in the statute and are laid out in caselaw somehow don't apply to questionnaires?" Mr. Bianchi: "[W]e have procedures ... of going back to the submitter to ask the submitter whether or not they can justify it."); *see also id.* at 42:11–18 (The Court: "I'm going to ask you if you can cite to me one [case] where the Federal Circuit, the Supreme Court, [the Court of International Trade], or any other relevant legal authority ... has held that something is automatically confidential ... because it's placed in a questionnaire?" Mr. Bianchi: "No, sir. I cannot cite a case.").

## A.

Publicly available information is not entitled to confidential treatment under either the Commission's own regulation or the relevant statute. Any practice that results in treating public information as confidential is therefore inherently at odds with the statutory and regulatory scheme.

Beginning with the law, 19 U.S.C. § 1677f governs access to information in injury investigations before the Commission. Section 1677f provides for the protection of "proprietary information." *See* 19 U.S.C. § 1677f(b). Because publicly available information is not proprietary, Section 1677f provides no protection for publicly available information. Section 1677f recognizes this and provides a mechanism to address unwarranted designation of information as confidential. *Id.* § 1677f(b)(2). The statute explicitly provides that "availability from public sources" is one basis for finding information was improperly classified as proprietary. *Id.*

Proprietary information is information that is owned and privately held by a company. *See Proprietary*, CAMBRIDGE DICTIONARY, https://bit.ly/3XhgdVz (last visited Mar. 27, 2025) (defining proprietary as "owned and legally controlled by a particular company."); *Proprietary,* BLACK'S LAW DICTIONARY 1414 (10th ed. 2014) (defining proprietary as "[o]f, relating to, or involving a proprietor" or "[o]f, relating to, or holding as property[.]"). But the courts recognize that publicly available information belongs to the public. For example, in *June Medical Servs., LLC v. Phillips*, the Fifth Circuit considered a challenge to a district court's sealing order. 22 F.4th 512, 515–16 (5th Cir. 2022). The information sealed by the district court

included publicly available documents such as a "transcript of proceedings in open court," documents from government websites, and articles in the popular press. *Id.* at 516. As the Fifth Circuit explained, sealing publicly available documents is inappropriate because those documents "belong to the people." *Id.* at 520. Because publicly available information belongs to the public, it cannot be "proprietary" under Section 1677f. The Federal Circuit's rules recognize that publicly available information cannot be confidential; information that "has appeared in a filing without being marked confidential" loses its "status as subject to a protective order." Fed. Cir. R. 25.1(c)(1). In other words, public disclosure renders information non-confidential under the Federal Circuit's rules.

Turning to the Commission's own regulations, publicly available information will never meet the regulatory standard for confidential treatment. 19 C.F.R. § 201.6(a)(1) defines "confidential business information" as "information … the disclosure of which is likely to" either: (1) "impair[] the Commission's ability to obtain" information, or (2) cause "substantial harm to the competitive position" of the party that provided the information. By definition, public information cannot be confidential. It fails to meet either prong of the test. Publicly referencing material that is already publicly available cannot impede the Commission's ability to collect information or cause competitive harm.

19 C.F.R. § 201.6(b) provides a "[p]rocedure for submitting business information in confidence." It requires that the submitter "provide … [a] certification in writing under oath that substantially identical information is not available to the

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 18 of 48

Consol. Court No. 1:21-cv-00219                                    Page 18

public ….."  *Id.* § 201.6(b)(3), (b)(3)(iii).  The Commission cites this portion of the
regulation in its brief.  Def.'s Suppl. Br. at 17–18, ECF No. 191.  However, it fails to
reckon with the language's import, instead asserting that this language somehow
does not apply to questionnaire responses.  *See id.*  This interpretation is
unreasonable; nothing in the regulation's text provides for such an exception.  *See* 19
C.F.R. § 201.6(b).  Despite the Commission's practice to the contrary, the
questionnaires themselves state that the information responding companies submit
"will be treated as confidential by the Commission *to the extent that such data are not
otherwise available to the public* …."  Blank U.S. Producers' Questionnaire at 3, J.A.
at 20,833, ECF No. 205 (emphasis added).  The Commission's practice is thus at odds
with its own regulation and questionnaire — both of which recognize that publicly
available information is not confidential.

Confidential business information is, as the name dictates, confidential.  The
Supreme Court has explained that the word confidential means something that is
"secret" or "private."  *Food Mktg. Inst.*, 588 U.S. at 434 (citing WEBSTER'S SEVENTH
NEW COLLEGIATE DICTIONARY 174 (1963)).  Once information is available publicly,
such as on a company's website or in a public regulatory filing, it is no longer
confidential because it is neither secret nor private.[3]  The language "information …

---

[3] The Commission's position that any information placed in a questionnaire gains automatic
protection leads to an absurd conclusion:  Certain disclosures which are required by one
agency's regulations could — though identical — violate another agency's regulations.
*Compare* 17 C.F.R. §§ 229.101, 229.102, 229.303 (requiring an SEC registrant to disclose
information about its business to the public), *with* Def.'s Suppl. Br. at 14, ECF No. 191 ("In
line with … the first clause of 19 C.F.R. § 201.6(a), the Commission automatically treats as
business proprietary information all information provided in questionnaires ….").

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 19 of 48

Consol. Court No. 1:21-cv-00219                                              Page 19

the disclosure of which" in the Section 201.6(a)(1) definition further confirms that the regulation does not protect publicly available information. The word disclose means "to make something known publicly." *Disclose*, CAMBRIDGE DICTIONARY, https://bit.ly/46ZqmJz (last visited Mar. 27, 2025). If something is already public, it cannot be disclosed. Accordingly, public information is not "information … the disclosure of which" is likely to impair the Commission's ability to collect information or cause competitive harm. 19 C.F.R. § 201.6(a)(1).

Public information will also never meet the remainder of the two-prong regulatory test in 19 C.F.R. § 201.6(a). Section 201.6(a) makes information confidential only if its disclosure would harm the Commission's ability to collect information or cause competitive harm. Information is either public or not public. If information is public, nothing the Commission does can make it more or less public. Accordingly, there is no risk of harm — either to the Commission or to the party submitting the information — from how the Commission treats public information. Treating publicly available information as confidential is like trying to put the genie back in the bottle; it is an exercise in futility.

The Commission's practice of automatically treating all information in questionnaire responses as confidential violates the law and the Commission's regulations by treating publicly available information as confidential. The Commission repeatedly admits that it treats all information in questionnaire responses as confidential. *See, e.g.*, Def.'s Suppl. Br. at 14, ECF No. 191 ("[T]he Commission automatically treats as business proprietary information all information

provided in questionnaires …."); Hr'g Tr. at 47:12–13, ECF No. 193 (Commission's treatment of questionnaire responses is "automatic."). This is true even if the information is obviously publicly available. *See, e.g.*, Hr'g Tr. at 35:19–36:21, ECF No. 193 (Commission would treat a company's business address as confidential even if it were on the company's public website); *id.* at 43:13–46:13 (Commission would treat cited quotes from a newspaper article as confidential).

The Commission knows its practice results in its treating as confidential information that does not meet the statutory or regulatory standard. The Court engaged in a lengthy exchange with the Commission's General Counsel at the evidentiary hearing about what information in a questionnaire would meet the 19 C.F.R. § 201.6(a) standard for confidentiality. *See id.* at 48:15–49:22, ECF No. 193. The Court gave numerous examples that the Commission conceded would not meet the regulatory standard if anyone questioned them. *See, e.g.*, *id.* at 48:20 (Mr. Bianchi: "It would not [meet the regulatory standard] if it were questioned."); *id.* at 48:25 (Mr. Bianchi: "If questioned, no."); *id.* at 49:11 (Mr. Bianchi: "If it was questioned, no."); *id.* at 49:17 (Mr. Bianchi: "If questioned, no."); *id.* at 49:21–22 (Mr. Bianchi: "[O]n its face, if questioned, no."). Yet, the Commission would treat that information as automatically confidential simply because it appeared in a questionnaire response; and the information "will remain confidential" unless questioned during the agency proceeding.[4] *Id.* at 47:20–21, ECF No. 193. This is in violation of the law's plain text.

---

[4] Although the Commission represented to the Court that its processes for challenging confidentiality claims has been used in the past, the Commission admits "this rarely occurs."

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 21 of 48

Consol. Court No. 1:21-cv-00219                                              Page 21

**B.**

The Commission's practice of automatically treating questionnaire responses as confidential results in inconsistent treatment of the same information. Because the relevant statute and regulation apply to information, not specific documents, this approach is improper. Public information is public regardless of the document in which it appears.

Both the statute and regulation refer to confidential "information." 19 U.S.C. § 1677f(b); 19 C.F.R. § 201.6(a)(1). Neither give any indication that information's confidential status varies depending on the document in which it appears. The statute refers to "proprietary information." 19 U.S.C. § 1677f(b). Whether information is proprietary — that is, whether it is owned by a company and kept from the public — does not depend on whether the Commission receives the information through a questionnaire, a brief, orally at a hearing, or through some other source. The regulation sets out a two-part test for confidentiality, allowing confidential treatment only if necessary to avoid harm to the submitter or to the Commission's ability to perform its duties. 19 C.F.R. § 201.6(a)(1). Whether releasing information to the public would harm the submitter or the Commission does not depend on how the Commission obtained the information. Instead, it depends on the information itself. Releasing truly confidential information would harm the submitter and the Commission's ability to perform its duties regardless of the source from which the Commission obtained that information.

---

Def.'s Suppl. Br. at 15 n.11, ECF No. 191; Hr'g Tr. at 25:6–22, ECF No. 193. It could not provide any examples of such proceedings.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 22 of 48

Consol. Court No. 1:21-cv-00219                                        Page 22

The statute and regulation make plain that the Commission must determine what "information" is entitled to confidential treatment, not which documents. That is why this Court requires parties submitting confidential information to enclose the confidential information in brackets. USCIT R. 5(g). "Parties cannot protect information *en masse* by stamping a label atop every page" and instead "must excise only that information which is truly confidential, allowing the public to view everything else." *CVB II*, 48 CIT __, 681 F. Supp. 3d at 1316; *see also* Second Notice of Deficiency at 1–2, *PAO TMK v. United States*, No. 21-cv-00532 (CIT July 23, 2024), ECF No. 115 (Baker, J.) (explaining that redacting "entire pages … because of the presence of some partial bracketing or a header referring to business proprietary information" is "improper"); *accord* USCIT R. 5(g).

The Freedom of Information Act (FOIA) and national security classification regimes provide useful analogues. Both require segregating confidential information at a line-by-line or word-by-word level, making public any information not entitled to confidential treatment. In the FOIA context, agencies have a duty to segregate any non-confidential portion of requested records and withhold only the confidential portion. *See, e.g.*, 5 U.S.C. § 552(b) (flush language) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."); 45 C.F.R. § 5.2(a) ("We also will consider whether partial disclosure of information is possible whenever we determine that a full disclosure of a requested record is not possible. This includes taking reasonable steps to segregate and release nonexempt information."); *Mead*

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 23 of 48

Consol. Court No. 1:21-cv-00219                                    Page 23

*Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977) ("The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."). Even in the national security context, classification of entire documents is disfavored. Instead, the originating agency should "indicate which portions are classified … and which portions are unclassified." Exec. Order No. 13,526, 75 Fed. Reg. 707, 710 (Dec. 29, 2009). When only "a small portion of an otherwise unclassified document" is classified, the "classification authority shall, whenever practicable, use a classified addendum" to allow the rest of the document to remain unclassified. *Id.*

As the FOIA and national security regimes show — and the statutory and regulatory schemes dictate — the question is not whether a document is confidential. It is whether *information* is confidential. Confidential information is confidential no matter where it appears. Public information is public no matter where it appears. Information is not afforded confidential status merely because it appears in a specific document, such as a questionnaire response. Only when the information itself meets the requisite test is the information afforded confidential treatment.

In multiple instances in the Commission's Remand Results, the Commission treated information from a questionnaire response as confidential even though the same information is public elsewhere in the Remand Results. One instance involves a description of domestic producers' distribution networks. In the Remand Results, the Commission majority notes that "the domestic industry's … extensive inventory locations [and] expansive multi-modal distribution network" demonstrate that the

domestic industry was "well-positioned to supply the U.S. market in 2019." Remand Results at 33, ECF No. 145. This type of anodyne and nonspecific information does not qualify for confidential treatment, and the Commission appropriately treated it as public in this instance. But in two other locations, the Commission treats substantially identical information as confidential because it is derived from questionnaire responses. *See id.* at 5, 32 (redacting information substantially identical to the public information); Hr'g Tr. at 114:19–116:6, ECF No. 193. Later in the Remand Results, the Commission treats the same information as public and confidential in the same sentence. *See* Remand Results at 67 n.295, ECF No. 145 ("Nutrien [      ] its US production between 2018 and 2019 and this increase was more than sufficient to cover its increase in exports …."); Hr'g Tr. at 89:16–92:19, ECF No. 193. Although the Commission acknowledged that this "may have been [an] over bracket," it has refused to concede that the Court can release the withheld information. Hr'g Tr. at 89:16–92:19, ECF No. 193; *cf.* Blank U.S. Producers' Questionnaire at 3, J.A. at 20,833, ECF No. 205 ("[G]eneral characterizations of numerical business proprietary information (such as discussion of trends) will be treated as confidential information only at the request of the submitter for good cause shown."); 19 C.F.R. § 201.6(a)(1) (same).

Information that is public anywhere ought to be public everywhere. The Commission must determine whether information is confidential based on the information itself, not based on the type of document in which it appears. The Commission's practice of automatically treating questionnaire responses as

confidential causes this problem.  As the Commission acknowledged, it treats the same information differently when it appears in a questionnaire response instead of another source.  Hr'g Tr. at 20:16–18, ECF No. 193 ("Information that is submitted through questionnaires" is "treated differently by the Commission.").  This is illegal.

## C.

The Commission's practice of automatically treating questionnaire responses as confidential bypasses the procedural requirements imposed by Congress and the Commission's own regulations.  The statute and regulation each provide procedures for submitting confidential information.  Both dictate that the party submitting the information — not the Commission — is responsible for designating information as confidential.

19 U.S.C. § 1677f governs access to information in proceedings before the Commission.  Section 1677f requires the person submitting information, not the Commission, to designate information as confidential.  For example, Section 1677f mandates that "the Commission shall disclose … any information … which is not designated as proprietary *by the person submitting it*."  19 U.S.C. § 1677f(a)(4)(B) (emphasis added); *see also id.* § 1677f(b)(1)(A) (The Commission "shall not disclose[]" information "which is designated as proprietary *by the person submitting the information*[.]") (emphasis added).  Section 1677f also provides a mechanism for the Commission to address improper designation.  *See id.* § 1677f(b)(2).  This mechanism allows the Commission to request an explanation from "the person who submitted" the information and return the information to that person "[u]nless that person

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 26 of 48

Consol. Court No. 1:21-cv-00219                                    Page 26

persuades … the Commission that the designation is warranted[.]" *Id.* No language in Section 1677f allows the Commission to, on its own initiative, designate information as confidential when the submitting party has not requested confidential treatment. *See generally id.* § 1677f.

Section 1677f also imposes procedural restraints on the submitting party. "[T]he Commission shall require" that a party requesting proprietary treatment for information include two things with the submission of such information. *Id.* § 1677f(b)(1)(B). First, the party must include either a nonconfidential summary of the allegedly confidential information or a statement explaining why a nonconfidential summary is impossible. *Id.* § 1677f(b)(1)(B)(i). Second, the party must include a statement either allowing or not allowing the Commission to release the confidential information under a protective order. *Id.* § 1677f(b)(1)(B)(ii). The Commission's regulation provides a similar "[p]rocedure for submitting business information in confidence." 19 C.F.R. § 201.6(b). The regulation requires the party submitting the information to include a nonconfidential "written description of the … information," a "justification for the request for its confidential treatment," and a "certification … that substantially identical information is not available to the public." *Id.* § 201.6(b)(3)(i)–(iii). The Commission's practice of automatically treating information as confidential bypasses all these procedures.

The Commission makes much of concerns that companies will not cooperate with the Commission unless promised complete secrecy for all questionnaire responses. *See, e.g.*, Def.'s Suppl. Br. at 15–16, ECF No. 191. It strains credulity to

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 27 of 48

Consol. Court No. 1:21-cv-00219                                         Page 27

believe that companies would stop cooperating with the Commission if the Commission began following its own rules. Those rules, after all, allow companies to designate as confidential the information they believe qualifies for confidential treatment. *See* 19 U.S.C. § 1677f; 19 C.F.R. § 201.6(b). If the Commission believes its own rules do not afford adequate protection for confidential information, the Commission is free to promulgate new rules through the appropriate processes. The Commission is not, however, free to disregard its own regulations or the laws passed by Congress. *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990) ("It is a familiar rule of administrative law that an agency must abide by its own regulations."); *United States v. UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1382 (Fed. Cir. 2009) ("An agency must follow its own regulations."). And under the current statutory scheme, those laws indicate that a confidential designation is unwarranted for information "availab[le] from public sources." 19 U.S.C. § 1677f(b)(2),

## III.

The Commission takes the position that it is the sole arbiter of what qualifies as confidential. This position leaves federal courts powerless to manage their own dockets by deciding what information parties may file under seal. The plain text of the statute the Commission cites for this proposition indicates just the opposite. The relevant context, including the common law right of access to judicial records, federal courts' inherent power to manage their own dockets, and the Federal Circuit's rules on confidentiality, all further disprove the Commission's contention.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 28 of 48

Consol. Court No. 1:21-cv-00219                                    Page 28

19 U.S.C. § 1516a(b)(2)(B) says the following:

> The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. *Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.*

19 U.S.C. § 1516a(b)(2)(B) (emphasis added).

The statutory text states that the Court "may disclose such material under such terms and conditions as it may order." *Id.* On its face, this language allows the Court to disclose information and gives the Court discretion over what terms and conditions, if any, to impose. Section 1516a allows the Court to disclose information under "such terms and conditions as it *may* order." 19 U.S.C. § 1516a(b)(2)(B) (emphasis added). Use of the word "may" is noteworthy because it "customarily connotes discretion." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 346 (2005); *see also* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (Scalia & Garner) 112 (2012) (explaining that may "is permissive"). That is particularly true when "may" is used alongside "shall," as it is in Section 1516a. *See Jama*, 543 U.S. at 346 (The word may's connotation as discretionary is "particularly apt where, as here, 'may' is used in contraposition to the word 'shall.'"). Elsewhere in Section 1516a, Congress speaks in mandatory terms. For example, "The court *shall* hold unlawful any determination, finding, or conclusion found" not to satisfy the appropriate standard of review. 19 U.S.C. § 1516a(b)(1) (emphasis added). In sum, the statute on its face allows the Court to release information it finds is not entitled to confidential treatment. The relevant context further supports this interpretation.

When Congress passes legislation regarding public access to information in the federal courts, it does so against the background of the longstanding common law right of public access to judicial proceedings. The tradition of public access to judicial proceedings predates the English common law, dating back to Ancient Rome. *Binh Hoa Le*, 990 F.3d at 418 ("The principle traces back to Roman law, where trials were *res publica* — public affairs."). Courts must have the power to enforce the right of public access because the parties have no incentive to maintain transparency. *See id.* at 417. For example, in proceedings before the Commission — as the parties explained — litigants defer to each other's confidentiality designations, even if the information designated as confidential is available from a public source. *See, e.g.*, Hr'g Tr. at 161:10–162:5, ECF No. 193. Simplot's counsel went so far as to say that, if a public *Wall Street Journal* article "refers to information that OCP has bracketed, I'm not going to put *The Wall Street Journal* on rebutting this thing and saying this is public, this is what's in their bracketed information[.]" *Id.* at 161:20–23; *see Binh Hoa Le*, 990 F.3d at 419 (quoting *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211 (5th Cir. 2019)). The right of public access is all the more important when the case involves a "public entity or official" like the Commission. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *see also Smith v. U.S. Dist. Ct. for S. Dist. of Illinois*, 956 F.2d 647, 650 (7th Cir. 1992) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party ….") (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 30 of 48

Consol. Court No. 1:21-cv-00219                                    Page 30

Courts apply a presumption against reading statutes to abrogate the common law. *See United States v. Texas*, 507 U.S. 529, 534 (1993); Scalia & Garner at 318–19. "Statutes will not be interpreted as changing the common law unless they effect the change with clarity." Scalia & Garner at 318; *see also Texas*, 507 U.S. at 534. Section 1516a does not do so. The statute's plain text grants courts discretion to release information. The Court will not impose an atextual reading onto the statute, especially when the presumption against change in the common law disfavors such a reading.

Congress also drafted Section 1516a(b)(2)(B) against the background of federal courts' inherent power to control their own dockets. The Court of International Trade has the same inherent powers as any federal district court. *See, e.g.*, *United States v. Hanover Ins. Co.*, 82 F.3d 1052, 1054 (Fed. Cir. 1996) (recognizing the CIT's inherent power); *Heartland By-Prod., Inc. v. United States*, 424 F.3d 1244, 1251–52 (Fed. Cir. 2005) (same); *see also* 28 U.S.C. § 1585 ("The Court of International Trade shall possess all the powers in law and equity of … a district court of the United States."). That power includes the ability to seal and unseal information filed with the Court. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978) (noting that "[e]very court has supervisory power over its own records and files" and exercise of this power is "best left to the sound discretion of the trial court"); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140–41 (2d Cir. 2004) (applying *Nixon*). This Court has previously recognized its own power to, *sua sponte*, release information that is not legally entitled to confidential treatment. *See, e.g.*, *Jiangsu Alcha*, 48 CIT __, 712 F. Supp.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 31 of 48

Consol. Court No. 1:21-cv-00219                                    Page 31

3d at 1381 n.3 (declining to treat information as confidential after determining the parties forfeited any claim of confidentiality); *Giorgio Foods*, 48 CIT __, 2024 Ct. Intl. Trade LEXIS 84, at \*5 n.6 (declining to treat information as confidential after determining the parties forfeited any claim of confidentiality); *id.* at \*6 n.7 (declining to treat information as confidential after determining it is not entitled to confidential treatment); *Officine*, 48 CIT __, 2024 Ct. Intl. Trade LEXIS 103, at \*28 n.5. When interpreting a statute, courts should not "'lightly assume that Congress has ... depart[ed] from established principles' such as the scope of a court's inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)). The unambiguous statutory text here is consistent with established principles about the scope of federal courts' inherent powers so that there is no reason to depart from it.

The Federal Circuit's rules recognize federal courts' power to control their own dockets, including by limiting what parties may file under seal. Unnecessary redactions not only "ignore[] the requirements of public access," but also "hamper[] [the Court's] consideration and opinion writing." *In re Violation of Rule 28(d)*, 635 F.3d at 1360. Accordingly, the Federal Circuit's rules limit what parties may file under seal. In most appeals from the Court of International Trade, a party may only redact up to fifty words from its brief. Fed. Cir. R. 25.1(d)(1)(B). The parties do not have free rein to redact anything they wish. Redactions are limited to situations where information: "(1) is treated as confidential pursuant to a judicial or administrative protective order and (2) such marking is authorized by statute,

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 32 of 48

Consol. Court No. 1:21-cv-00219                                            Page 32

administrative regulation, or court rule." *Id.* R. 25.1(d)(1). The second prong of this rule demonstrates that an agency's unilateral decision to treat information as confidential does not bind the courts. If an agency's treatment of information as confidential is not "authorized by statute, administrative regulation, or court rule," the information cannot be treated as confidential before the Federal Circuit. *Id.* The parties must be prepared to justify any redactions, indicating that the court — not the Commission — has the final say on what is and is not confidential. *See* Practice Notes to Fed. Cir. R. 25.1; Practice Notes to Fed. Cir. R. 34.

Finally, following the Commission's reading to its logical conclusion only further supports reading Section 1516a in accordance with its plain meaning. The Commission's reading has broad practical consequences. The Commission's claims mean it could afford confidential treatment to the whole administrative record, and this Court would be forced to conduct its work of reviewing the Commission's determinations entirely in secret. So too for the Federal Circuit and even the Supreme Court. This is not the first time the Commission has declared that it is a law unto itself. *See Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933, 937–41 (Fed. Cir. 1990) (rejecting the Commission's claim that it could not be ordered to make a redetermination by the CIT). If the federal courts cannot impose procedural restraints on executive branch agencies beyond those required by statute, the reverse is also true: Agencies cannot dictate to the courts how to conduct the judiciary's work. *Cf. Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524–25 (1978).

The Commission asks the Court to interpret Section 1516a(b)(2)(B) in a manner that is contrary to the plain text, at odds with the common law background against which Congress legislated, inconsistent with historical understandings of federal courts' inherent powers, would render the Federal Circuit's rules unlawful, and would allow the Commission to unilaterally cloak judicial review of its work in secrecy. The Commission rests its argument on a single sentence in a Senate report that is more than five hundred pages long.[5] *See* S. Rep. No. 96-249 at 248 (1979); Def.'s Suppl. Br. at 9, ECF No. 191 (citing S. Rep. No. 96-249 at 248). But courts must examine "the ordinary meaning and structure of the law itself." *Food Mktg. Inst.*, 588 U.S. at 436. When the text "yields a clear answer, judges must stop." *Id.* Legislative history should "never … be used to muddy the meaning of clear statutory language." *Id.* (quoting *Milner*, 562 U.S. at 572 (internal quotation marks omitted)). The ordinary meaning of Section 1516a(b)(2)(B) maintains the Court's discretion to release information that the Commission treated as confidential — an ability consistent with historical understandings of both the courts' inherent authority and the common law right of access to judicial proceedings. Because Congress says what it means and means what it says, that is the end of the inquiry. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992).

---

[5] The Senate Report states: "Special provision would be made in [19 U.S.C. § 1516a(b)(2)(B)] for preserving the confidential or privileged status of any materials contained in this record, including, where the court determines it would be appropriate, the disclosure of the privileged or confidential material only under the terms of a protective order." This sentence does nothing more than explain how a court may employ a protective order. Rather than strengthening the Commission's argument, this sentence further emphasizes that it is the Court, and not the Commission, that determines the treatment of confidential information.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 34 of 48

Consol. Court No. 1:21-cv-00219                                              Page 34

## IV.

The Court now turns to the specific information identified in Exhibit 1, appended to its Order. *See generally* Order Ex. 1, ECF No. 159.[6]  The parties were afforded an opportunity both at the hearing and in written briefing to justify their claims to confidential treatment. *See* Order at 7, ECF No. 158; Minute Order, ECF No. 175 (setting briefing schedule).  This included the opportunity to present witnesses and exhibits, which the parties declined.  Order at 7, ECF No. 158; Hr'g Tr. at 9:23–10:8, ECF No. 193.  The Court finds that all but one piece of the information identified in Exhibit 1 is not entitled to confidential treatment.  The information in the chart fits into four categories:  (1) publicly available information, (2) general characterizations, (3) stale information, and (4) information that the Court finds may retain its confidential status.

## A.

Publicly available information is not entitled to confidential treatment.  But in numerous instances, the Commission's Remand Results treat publicly available information as confidential.

Information about domestic producers' expansive distribution and storage networks is publicly available. *See* Order Ex. 1 at 1–3, ECF No. 159; Remand Results at 5, 32–33, ECF No. 145.  The Remand Results leave substantially identical information public when drawing from sources other than questionnaire responses.

---

[6] The Court addresses only the information in Exhibit 1.  Having clarified the law, the Court expects the Commission to apply the correct analysis for the pieces of information in Exhibit 2.

*See* Remand Results at 33, ECF No. 145 (The domestic industry has "extensive inventory locations [and an] expansive multi-modal distribution network[.]"). Furthermore, domestic producers publicly disclose information about their distribution networks on their websites and in annual securities filings. *See, e.g.*, Mosaic 2022 Form 10-K at 14–16 (Feb. 23, 2022), https://bit.ly/4gmB3cl (describing the company's distribution network); Nutrien, 2019 Annual Report at 12 (Feb. 19, 2020), https://bit.ly/4dQ4GBK (same). Because this information is publicly available, it is not entitled to confidential treatment. Furthermore, the anodyne and general description of domestic producers' distribution and storage networks does not risk any harm to the Commission's ability to collect information or to the competitive position of the domestic industry. *See infra* Section IV.B.

Information about Mosaic's distribution network that the company releases in securities filings and on its own website is not confidential, but the Commission treated it as such. *See* Remand Results at 22–23, ECF No. 145. Some of the information in the description is publicly available. This includes the location of Mosaic-owned warehouses and that Mosaic uses port terminals to ship fertilizer. Mosaic discloses the location of its warehouses in annual securities filings, documents that publicly traded companies are legally obligated to file and are available to the public. Mosaic 2022 Form 10-K at 14–16, https://bit.ly/4gmB3cl; *see also* 17 C.F.R. § 229.101(c) (generally requiring a registrant to describe and to disclose "revenue-generating activities, products and/or services", "resources material to a registrant's business" such as "sources and availability of raw materials" or "human capital

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 36 of 48

Consol. Court No. 1:21-cv-00219                                    Page 36

resources ….” ); *id.* § 229.102 (requiring registrant to “[s]tate briefly” the “location and general character of the registrant's principal physical properties.”).  Mosaic also releases information about its Tampa, Florida port terminal on its website, including its address, storage capacity, annual shipment quantities, and the modes of transportation it accommodates.  *Tampa Marine Terminal*, Mosaic Co. (May 2022), https://bit.ly/3XhKoeY.  Because Mosaic discloses this information — both voluntarily and under legal obligation — the information is not confidential.  Indeed, Mosaic concedes that these portions of the redacted material are not confidential.  Mosaic's Suppl. Br. at 1, ECF No. 195; *cf.* 19 U.S.C. § 1677f(b) (requiring “the person submitting the information” to designate it as confidential).  Mosaic's request that other information about its distribution network remain confidential is addressed later in this opinion.  *See infra* Sections IV.C, D.

The number of retail locations Simplot operates is also not confidential, but the Commission redacted this information in its Remand Results.  *See* Remand Results at 24, ECF No. 145; Order Ex. 1 at 2, ECF No. 159.  On its website, Simplot proclaims that it delivers “top-notch service … through over 240 locations across North America.”  *Locations*, Simplot Grower Solutions, https://bit.ly/4dzXASa (Apr. 21, 2024).[7]  Simplot's website also contains a map of every retail location in the United States.  *Id.*  In its supplemental brief, Simplot states that it “defer[s] to the Commission's judgment” that this information is confidential.  Simplot's Suppl. Br.

---

[7] Simplot's website has since been updated and now indicates the company has “over 260 locations across North America.”  *Locations*, SIMPLOT GROWER SOLUTIONS, https://bit.ly/4g0zykX (last visited Mar. 27, 2025).

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 37 of 48

Consol. Court No. 1:21-cv-00219                                    Page 37

at 14–15, ECF No. 197. Simplot does not suggest that it would suffer competitive harm from releasing this information, nor could it reasonably do so. *See id.* It defies common sense to believe that information on how many retail locations a company has could be confidential. Customers, after all, can only purchase from stores if they know where those stores are. Simplot's retail locations are not speakeasies; they are open to the public and their location is broadcast for all to see. Because Simplot intentionally provides this information to the public, it cannot be confidential.

The information identified in Exhibit 1 regarding domestic producers' phosphate rock, ammonia, and sulfur production and purchasing is similarly not confidential. *See* Remand Results at 26, ECF No. 145; Order Ex. 1 at 2, ECF No. 159. For each such piece of information identified in Exhibit 1, substantially identical information is publicly available from the domestic producers themselves. *See* The Mosaic Co., Annual Report (Mosaic 2017 10-K) at 6 (Feb. 21, 2018), https://bit.ly/40DsX9d; Nutrien, 2019 Annual Report at 43, 126 (Feb. 19, 2020), https://bit.ly/4dQ4GBK; *Nutrien Announces Intention to Build World's Largest Clean Ammonia Production Facility*, NUTRIEN (May 18, 2022) https://bit.ly/3Z395ND; *Mining & Manufacturing*, SIMPLOT, https://bit.ly/3yZFn1w (last visited Mar. 27, 2025) (listing mine and plant locations throughout the western United States). Mosaic concedes that the portion of this information pertaining to Mosaic is not confidential. Attach. to Mosaic's Suppl. Br. at 4–5, ECF No. 195. Simplot and the Commission argue that this publicly available information must be redacted to prevent readers from inferring nearby confidential information. *See* Simplot's Suppl.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 38 of 48

Consol. Court No. 1:21-cv-00219                                    Page 38

Br. at 15, ECF No. 197; Hr'g Tr. at 110:6–9, ECF No. 193.  This argument is unconvincing.  The Commission could easily structure its discussion of domestic producers' phosphate rock, ammonia, and sulfur production and purchasing in a manner that protects any confidential information on this topic without redacting public information.  Because it can do so, the Commission must do so.  *See supra* Section II.B.

That Nutrien increased production in certain years is similarly not confidential.  On pages 16 and 67 of the Remand Results, the Commission redacted information indicating — without providing any specific figures — that Nutrien increased its production in certain years.  The first piece of information on page 67, a single word describing the trend in Nutrien's U.S. production between 2018 and 2019, is revealed publicly in the same sentence.  *See* Remand Results at 67 n.295, ECF No. 145; Order Ex. 1 at 4, ECF No. 159.  This trend is also publicly discussed elsewhere in the Remand Results.  *See, e.g.*, Remand Results at 12, ECF No. 145 ("From 2017 to 2018, Nutrien increased its capacity and production at its Aurora, North Carolina and White Springs, Florida phosphate facilities."); *id.* at 17 ("[B]etween 2018 and 2019, Nutrien increased its U.S. production ….").  Nutrien also provides detailed information on phosphate production in its annual reports to shareholders.  Nutrien, 2018 Annual Report at 55 (Feb. 20, 2019), https://bit.ly/4bYhh6g.  This includes providing shareholders with a breakdown of annual production capacity and actual production on a facility-by-facility basis.  *Id.*  Because the challenged information is publicly available and descriptive of general business trends, it is not entitled to

confidential treatment. *See* 19 C.F.R. § 201.6(a)(1) ("Nonnumerical characterizations of numerical confidential business information (e.g., discussion of trends) will be treated as confidential business information only at the request of the submitter for good cause shown.").

The Commission also improperly redacted another piece of information in footnote 295 on page 67. *See* Remand Results at 67 n.295, ECF No. 145; Order Ex. 1 at 4, ECF No. 159. The second piece of information describes what caused Nutrien's 400,000-ton capacity increase between 2017 and 2018. Remand Results at 67 n.295, ECF No. 145. This information was also redacted in footnote 46 on page 12, which is not noted in Exhibit 1. *See id.* at 12 n.46. Nutrien revealed the capacity increase in its 2018 annual report, where Nutrien explained that it restarted a "second MAP train" at its White Springs, Florida phosphate production facility that added ".4 million tonnes of annual capacity." Nutrien, 2018 Annual Report at 55 n.4 (Feb, 20, 2019), https://bit.ly/4bYhh6g.[8] Because this information is publicly available, it is not entitled to confidential treatment.

Finally, market prices are not confidential. The Commission redacted various information about market prices for phosphate fertilizer products, including what the Commission itself described as "public prices." *See* Remand Results at 51 n.228, ECF No. 145; Order Ex. 1 at 3–4, ECF No. 159. The Commission attributes the redacted information to Figure V-5 in its Staff Report. Remand Results at 51 n.228, ECF No. 145. Figure V-5 is unredacted in the Commission's public staff report, which alone

---

[8] MAP stands for monoammonium phosphate and is one of several phosphate fertilizer products. *See* Remand Results at 34 n.160, ECF No. 145.

makes this information public. Public Staff Report at V-19, J.A. at 18,718, ECF No. 205. Furthermore, Figure V-5 is merely a reproduction of a figure in the February 2020 Market Update published on Nutrien's website, reinforcing that Figure V-5 is public information. *Id.* The Commission also cites Figure V-6 from its Staff Report. Remand Results at 51 n.228, ECF No. 145.[9] Although the Commission claims Figure V-6 is confidential and redacted a parenthetical description of Figure V-6, the information in Figure V-6 is not confidential; and the description should not have been redacted. *See* Confidential Staff Report at V-20, J.A. at 98,482, ECF No. 202. As the Remand Results state, Figure V-6 shows "public prices." Remand Results at 51 n.228, ECF No. 145. The Commission argues that it can redact this information because it was compiled from multiple copyright-protected subscription publications. *See* Hr'g Tr. at 119:12–14, ECF No. 193 ("The Commission … treats as proprietary information that's received through paid subscriptions …."); Confidential Staff Report at V-20, J.A. at 98,482, ECF No. 202 (attributing the information in Figure V-6 to various trade publications). Even assuming this is a valid reason to afford confidential treatment to things like direct quotations, that *public market prices* appear in subscription publications does not transform the public information into confidential information. *Cf. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991) ("[F]acts are not copyrightable…."); Fed. Cir. R. 25.1(c)(1) (information that appears in a public filing loses its status as confidential). Because the redacted

---

[9] The second citation follows a "see also" introductory signal, indicating that this second figure is an "additional source" and that the public figure cited is a sufficient source for the cited proposition. Remand Results at 51 n.228, ECF No. 145; THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION R. 1.2(a), at 63 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020).

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 41 of 48

Consol. Court No. 1:21-cv-00219                                    Page 41

information about market prices is publicly available, it is not entitled to confidential treatment.

## B.

The second category of information is general characterizations. Even when the underlying information may be entitled to confidential treatment, general characterizations of that information are not entitled to confidential treatment. *See* 19 C.F.R § 201.6(a)(1) ("Nonnumerical characterizations of numerical confidential business information (e.g., discussion of trends)" are generally not entitled to confidential treatment.); Blank U.S. Producers' Questionnaire at 3, J.A. at 20,833, ECF No. 205 (explaining that "general characterizations … such as discussion of trends" are typically not entitled to confidential treatment). This is true because general characterizations do not reveal the specific operations of any one company, or, to the extent they do, are sufficiently anodyne to pose no risk of competitive harm. *See* 19 U.S.C. § 1677f(b)(2); 19 C.F.R. § 201.6(a)(1).

In addition to being publicly available, the information on pages 5 and 32 of the Remand Results is too general to qualify for confidential treatment. Remand Results at 5, 32, ECF No. 145. This information discusses in a broad sense domestic producers' distribution and storage networks. *See id.* The anodyne description does not reveal the individual operations of any company or provide an edge to a competing business. Mosaic "does not consider this information to be confidential[.]" Attach. to Mosaic's Suppl. Br. at 1, 4, ECF No. 195; *see* 19 U.S.C. § 1677f(b) (requiring party designation for information to be confidential). Simplot "defer[s] to the Commission's

judgment on whether this *general characterization*" must remain confidential but offers no suggestion that Simplot risks competitive harm if the statement is made public. *See* Simplot's Suppl. Br. at 15–16, ECF No. 197 (emphasis added). The parties were given ample opportunity to demonstrate that this information is entitled to confidential treatment and have failed to do so.

Nonnumerical characterizations of market prices are also not confidential. The Commission treated as confidential multiple nonnumeric characterizations of phosphate fertilizer market prices. *See* Order Ex. 1 at 3–4, ECF No. 159; Remand Results at 50–51, ECF No. 145. The first instance, on page 50 of the Remand Results, is a nonnumeric description of trends in the domestic industry's sales prices. Remand Results at 50, ECF No. 145. Although Mosaic maintains that the underlying information is confidential, it concedes that the nonnumerical summary of the information in the Remand Results is sufficiently broad so as not to be confidential. Attach. to Mosaic's Suppl. Br. at 6–7, ECF No. 195. No other domestic producer claims it would suffer harm from the release of this information. *See generally* Simplot's Suppl. Br. at 11–17, ECF No. 197 (addressing other information but not the pricing information from page 50 of the Remand Results). The two redacted statements identified on page 51 of the Remand Results and found to be publicly available in the above section present a similar story. *See supra* Section IV.A, at 39–40; Remand Results at 51, ECF No. 145. Both instances involve broad, nonnumeric discussions of price trends. *See* Remand Results at 51, ECF No. 145. These

nonnumeric summaries do not reveal any confidential information and are not entitled to confidential treatment.

Finally, based on the current record, the Court sees no reason to afford confidential treatment to information obtained from subscription-based trade publications. On page 49 of the Remand Results, the Commission redacts several summarizations and quotes from trade publications characterizing the state of the market in December 2019, including ranges of market prices and market conditions. *Id.* at 49; *id.* at 49 n.220. Like the information described in the preceding paragraphs, these characterizations are too general to cause injury to any specific company. Also, they are public by nature. *See supra* Section IV.A, at 39 (explaining that market prices are not confidential). To the extent the Commission argues that revealing this information would violate parties' user agreements with various subscription-based trade publications, it fails to support that claim with evidence. The Commission could have submitted copies of the user agreements or quoted the relevant terms. It has provided nothing of the kind. *See* Hr'g Tr. at 122:9–23, ECF No. 193; *id.* at 122:18–23 (The Court: "Do you have a copy of the subscription service?" Ms. McNamara: "I do not. No …." The Court: "Is that part of the record?" Ms. McNamara: "No."). Instead, it merely states in its supplemental brief, without record support, that "the Commission's approach to subscription based services … is to bracket information obtained since it is proprietary to the subscription service." Def.'s Suppl. Br. at 17 n.12, ECF No. 191. Without further explanation, the Commission cannot redact public, generalized information from trade publications. *See* Admin. Hr'g Tr. at

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 44 of 48

Consol. Court No. 1:21-cv-00219                                    Page 44

33:10–16, J.A. at 15,529, ECF No. 115 (testimony of Andy Jung, Mosaic's Vice President for Market and Strategic Analysis) ("Pricing is very transparent in this industry. Trade publications report pricing on a weekly or daily basis, so price changes are transmitted throughout the market very quickly."). The Court's finding on this point is limited to the Commission's redaction of summarizations and quotes about publicly available information like market prices and does not apply to any proprietary analysis thereof that a trade publication may have conducted.

## C.

Stale information is not entitled to confidential treatment. *See Cal Steel Indus., Inc. v. United States*, No. 1:21-cv-00015, 48 CIT __, 2024 Ct. Intl. Trade LEXIS 138, at *6 (Dec. 13, 2024) ("Information may lose its confidential nature once it becomes stale.") (quoting *AmerGen Energy Co. ex rel. Exelon Generation Co. v. United States*, 115 Fed. Cl. 132, 141 (2014) (internal quotation marks omitted)). For decades, courts have held that information becomes stale — and thereby not confidential — when public disclosure of that information no longer poses a specific, concrete competitive harm. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 891 (E.D. Pa. 1981) ("An attempt to show that disclosure will indeed work a competitive disadvantage might be undermined if the information sought to be protected were stale."); *AmerGen Energy Co.*, 115 Fed. Cl. at 141 ("[I]t is clear that vague and speculative allegations of injury from the disclosure of years-old information are not sufficient to overcome the strong presumption favoring public access."); *Avtel Servs. v. United States*, 70 Fed. Cl. 173, 191 (2005) ("A claim that

disclosure might result in competitive advantage or disadvantage also is contingent upon whether the information or material sought to be protected is stale."); *United States v. Int'l Bus. Machs. Corp.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975) (five-year old business financial statements are stale and pose no risk of competitive harm). To keep old information confidential, companies must show specific harm beyond "vague and speculative allegations of injury." *AmerGen Energy Co.*, 115 Fed. Cl. at 141.

Mosaic requests that the Court treat as confidential information on pages 22 and 23 of the Remand Results concerning some of its distribution facilities. Mosaic's Suppl. Br. at 2, 4, ECF No. 195. Mosaic believes that public disclosure of this information "would give Mosaic's competitors a roadmap to take away" its business and "would likely also harm Mosaic's ability to enter into certain types of contractual arrangements for distribution facilities[.]" *Id.* at 3. It also argues that publicly available information about its export markets "is not specific to Mosaic's phosphate fertilizer segment and is not substantially equivalent to" the redacted information. *Id.* Mosaic alleges it would be "commercially valuable to competitors to know the complete list of countries to which Mosaic exports phosphate fertilizers" and therefore harmful to it. *Id.* at 4. For both sets of information, Mosaic adds a generic claim that the likelihood of such harm "would impair the Commission's ability to conduct investigations." *Id.* at 3–4. Nutrien has offered no information regarding how disclosure of its old information would harm it.

Here, much of Mosaic's and Nutrien's confidential information noted in Exhibit 1 is stale. The information includes data collected from 2017 to 2022. *See* Order Ex.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 46 of 48

Consol. Court No. 1:21-cv-00219                                    Page 46

1 at 1, ECF No. 159 (citing Remand Results at 11, 12, 17, 22–23, ECF No. 145).

Neither Mosaic nor Nutrien will experience specific competitive harm if the

information above is released; and the Commission's ability to conduct investigations

will also not suffer.  Nutrien's information is six years old.  *See* Order Ex. 1 at 1, ECF

No. 159 (citing Remand Results at 11, 12, 17, ECF No. 145); Nutrien, 2019 Annual

Report (Feb. 19, 2020), https://bit.ly/4dQ4GBK.  Likewise, the data Mosaic requests

to keep confidential is between three and nine years old.  *See* Order Ex. 1 at 1, ECF

No. 159 (citing to Remand Results at 11, 22–23, ECF No. 145); Mosaic 2022 Form 10-

K, https://bit.ly/4gmB3cl; Mosaic 2017 Form 10-K, https://bit.ly/40DsX9d.  It is

difficult to see the competitive harm these companies would suffer if competitors

learn about years-old activities, especially when that same information is publicly

available in their annual reports and Form 10-K filings.  *See supra* Section IV.A.

Mosaic has only claimed generalized "competitive disadvantages" that "could" harm

them if the information were publicly disclosed.  *See* Mosaic's Suppl. Br. at 3–4, ECF

No. 195.  Beyond these generalized, vague harms, Mosaic has not alleged any specific

competitive harm that is likely to result from the release of the information.  *See*

*AmerGen Energy Co.*, 115 Fed. Cl. at 141 (noting "vague and speculative allegations

of injury" do not suffice to keep confidential "years-old information").  Mosaic's claim

that disclosure will "impair" the Commission's ability to conduct investigations is

similarly unsupported.  Mosaic's Suppl. Br. at 4, ECF No. 195.  Because the data is

years old and no party alleges any specific competitive harm, the challenged

information is stale and should not be afforded confidential treatment.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 47 of 48

Consol. Court No. 1:21-cv-00219                                        Page 47

**D.**

Some information identified in Exhibit 1 should remain confidential.  *See generally* Order Ex. 1, ECF No. 159.[10]  The specific numbers that identify how many customer-owned warehouses and other space arrangements Mosaic has with customers will remain confidential.  Remand Results at 22–23, ECF No. 145.  Unlike other information in Exhibit 1, these numbers are not publicly available, general characterizations, stale, or reasonably gleaned from Mosaic's publicly available filings.  Mosaic has not shared this information on its website, and the contractual relationships are current.  Because Mosaic has guarded the types of space arrangements it has with its customers from public view and release of that information would give Mosaic's competitors insight into its private contracts with customers, this information is properly classified as confidential; and the Commission properly treated it as such.

**CONCLUSION**

The Commission's practice of automatically redacting questionnaire responses is unlawful.[11]  This practice is inconsistent with the statutory and regulatory scheme.  The Commission's disregard for the legal rules governing confidentiality abrogates the public's right of access to judicial proceedings and impairs the Court's ability to decide cases and issue opinions in a timely manner.  This cannot continue.

---

[10]  The information the Court allows to remain confidential is the specific numerical information identified in Exhibit 1 from pages 22–23, except for the information Mosaic concedes is not confidential.  *See generally* Order Ex. 1, ECF No. 159.  The remaining information in Exhibit 1 is not entitled to confidential treatment.

[11]  Notwithstanding this finding, the Court imposes no sanctions of any kind on any party or attorney.

Case 1:21-cv-00219-SAV    Document 220    Filed 03/27/25    Page 48 of 48

Consol. Court No. 1:21-cv-00219                                             Page 48

In further proceedings in the underlying case, the Commission is hereby **ORDERED** to:

1) Treat as public the information identified in Section IV of this opinion as not entitled to confidential treatment; and

2) Consistent with this opinion, abide by the statutes and regulations governing confidential treatment of information in filings of any kind with the Court.

Further directives in this case will follow.

**SO ORDERED**.

_____
Stephen Alexander Vaden, Judge

Dated: March 27, 2025
       New York, New York