Slip Op. No. 25-51

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| OCP S.A.,<br><br>    *Plaintiff,*<br><br>EUROCHEM NORTH AMERICA CORPORATION,<br><br>    *Consolidated Plaintiff,*<br><br>  *and*<br><br>PHOSAGRO PJSC, INTERNATIONAL RAW MATERIALS LTD., and KOCH FERTILIZER, LLC,<br><br>    *Plaintiff-Intervenors,*<br>v.<br><br>UNITED STATES,<br><br>    *Defendant,*<br><br>  *and*<br><br>THE MOSAIC COMPANY and J.R. SIMPLOT COMPANY,<br><br>    *Defendant-Intervenors.* | Before: Stephen Alexander Vaden, Judge<br><br>Consol. Court No. 1:21-cv-00219 (SAV) |

## <u>OPINION</u>

[The Determination of the United States International Trade Commission is remanded in conformity with this opinion.]

Dated: April 22, 2025

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 2 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                Page 2

*Shara L. Aranoff*, Covington & Burling LLP, of Washington, DC, for Plaintiff OCP S.A. With her on the brief are *James M. Smith*, *Sooan (Vivian) Choi*, *Paula O. Cardona*, *John J. Catalfamo*, and *Julia Shults*.

*Jeremy W. Dutra*, Squire Patton Boggs LLP, of Washington, DC, for Consolidated Plaintiff EuroChem North America Corporation. With him on the brief is *Peter Koenig*.

*Paul C. Rosenthal*, Kelley Drye & Warren LLP, of Washington, DC, for Plaintiff-Intervenor International Raw Material Ltd. With him on the brief is *Melissa M. Brewer*.

*Jared R. Wessel*, Hogan Lovells US LLP, of Washington, DC, for Plaintiff-Intervenor Phosagro PJSC. With him on the brief are *H. Deen Kaplan*, *Michael G. Jacobson*, and *Cayla D. Ebert*.

*Kenneth G. Weigel*, Alston & Bird LLP, of Washington, DC, for Plaintiff-Intervenor Koch Fertilizer LLC. With him on the brief is *Lian Yang*.

*Courtney S. McNamara*, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for the Defendant United States. With her on the brief are *Dominic L. Bianchi*, General Counsel, and *Andrea C. Casson*, Assistant General Counsel for Litigation of the International Trade Commission.

*Jeffrey I. Kessler*, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, for Defendant-Intervenor Mosaic Company. With him on the brief are *David J. Ross*, *Stephanie E. Hartmann*, and *Alexandra Maurer*.

*Jamieson L. Greer*, King & Spalding LLP, of Washington, DC, for Defendant-Intervenor the J. R. Simplot Company. With him on the brief are *Stephen P. Vaughn*, *Neal J. Reynolds*, and *Patrick J. McLain*.

**Vaden, Judge:** For almost a century, the federal courts have reviewed the Government's efforts to regulate unfair phosphate imports. *See, e.g.*, *J.H. Cottman & Co. v. United States*, 20 C.C.P.A. (Customs) 344 (1932) (reviewing an antidumping duty imposed on rock phosphate from French Morocco). The tradition continues. OCP S.A. (OCP) — a Moroccan fertilizer producer — challenges the remand determination the United States International Trade Commission (Commission) filed

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 3 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 3

in its investigation of phosphate fertilizer imports from Morocco and Russia. The Commission made that determination pursuant to the Court's opinion in *OCP S.A. v. United States* (*OCP I*), 47 CIT __, 658 F. Supp. 3d 1297 (2023). In *OCP I*, the Court ordered the Commission to further explain its determination that "[phosphate] fertilizer could be reshipped from one destination to another to meet existing demand[.]" *Id.* at 1324. On remand, the Commission conducted a supplemental investigation to support its original findings on reshipment and material injury. For the following reasons, the Commission's determination is **REMANDED**.

## BACKGROUND

The Court presumes familiarity with this case's facts as described in its previous opinion. *See OCP I*, 47 CIT __, 658 F. Supp. 3d at 1301–12. This opinion will only recount those facts relevant to the Court's review of the Remand Results.

## I.    The Statutory Framework

Countervailing duties exist to protect American producers and workers from subsidized foreign goods sold into the American market. *See* 19 U.S.C. § 1671. To receive a countervailing duty, domestic producers must show that imports (1) benefit from "a countervailable subsidy," and (2) either materially injure or threaten to materially injure the U.S. industry. *Id.* Responsibility for the two inquiries is assigned to two different agencies. The Department of Commerce assesses if imports benefit from a countervailable subsidy. *See id.* § 1671(a)(1). The Commission determines if those imports cause or threaten to cause "material injury." *Id.* § 1671(a)(2).

"Material injury" is "harm which is not inconsequential, immaterial, or unimportant." 19 U.S.C. § 1677(7)(A). The Commission must consider three factors when making a material injury determination:  (1) the volume, (2) price effects, and (3) impact of subject imports. *See* 19 U.S.C. § 1677(7)(B)(i). It also must establish a "causal – not merely temporal – connection between the goods and the material injury" it finds. *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997); *see also* 19 U.S.C. § 1671d(b)(1) (requiring material injury to be by reason of subject imports).

The Commission "does not analyze the statutory factors in a vacuum." *OCP I,* 47 CIT __, 658 F. Supp. 3d at 1312. It also must consider the general "conditions of competition" within the affected industry, 19 U.S.C. § 1677(7)(C)(iii) (flush language), and apply its "conditions of competition" findings to its analysis of the three statutory factors. *See Altx, Inc. v. United States*, 26 CIT 709, 719 (2002); *see also Nucor Corp. v. United States*, 28 CIT 188, 207 (2004) ("The material injury statute directs the [Commission] to evaluate all relevant economic factors (i.e. volume, price effects, and impact) within the context of the business cycle and conditions of competition that are distinctive to the affected industry.") (internal quotation marks omitted), *aff'd*, 414 F.3d 1331 (Fed. Cir. 2005). Importantly, the Commission must base any assessment of the "conditions of competition" on "actual industry practices" rather than "speculation about industry conditions." *OCP I*, 47 CIT __, 658 F. Supp. 3d at 1313 (citing *Catfish Farmers of Am. v. United States*, 37 CIT 717, 733 (2013)).

## II.    The Court's Opinion in *OCP I*

On June 26, 2020, domestic producers of phosphate fertilizer, led by the Mosaic Company (Mosaic), submitted a petition asserting that subsidized imports of phosphate fertilizer from Morocco and Russia materially injured U.S. producers.  *See* Views of the Commission (Views) at 3, J.A. at 99,573, ECF No. 107.  The Commission investigated, held a hearing with interested parties, and accepted written case briefs on the matter.  *See OCP I*, 47 CIT __, 658 F. Supp. 3d at 1304.  On April 5, 2021, the Commission determined by majority vote that imports materially injured the domestic phosphate fertilizer industry.  *See id.*

The Commission found material injury occurred because it believed that "significant volumes [of imports] created oversupply conditions in [the] declining [phosphate fertilizer] market and low prices[.]"  Views at 44, J.A. at 99,614, ECF No. 107.  During the period of investigation, U.S. consumption of phosphate fertilizer declined because abnormally high levels of rainfall resulted in "massive flooding and prolonged river closures along the Mississippi River system that stranded fertilizer barges and resulted in delayed, destroyed, or abandoned plantings, especially in the Midwest and Great Plains regions."  *Id.* at 40, J.A. at 99,610.  The Commission found that, despite this declining demand, imports of subject merchandise underwent a significant increase in both absolute terms and relative to consumption in the United States.  *Id.* at 33–35, J.A. at 99,603–05.  Meanwhile, the Commission found that domestic producers had enough supply to meet consumer demand through two fertilizer sources:  (1) newly produced phosphate fertilizer and (2) existing phosphate

fertilizer inventories that had already been delivered to flooded, low demand regions. The Commission assumed these inventories could be reshipped as needed to meet demand. *See id.* at 56 n.217, J.A. at 99,626. An influx of imports — despite declining demand and adequate domestic supply — depressed phosphate fertilizer prices, harming domestic producers. *See id.* at 44, J.A. at 99,614; *see also id.* at 52–53, J.A. at 99,622–23 ("Due to the downward pricing pressure exerted by the oversupply of subject imports on U.S. prices, the domestic industry was forced to reduce prices, which in turn, caused its revenues to be lower than they would have been otherwise.").

OCP — a Moroccan fertilizer producer — challenged the Commission's determination on May 6, 2021, bringing the present suit. *See* Summons, ECF No. 1; Compl. ¶ 15, ECF No. 10. Consolidated Plaintiff EuroChem North America Corporation (EuroChem) and Plaintiff-Intervenors PhosAgro PJSC (PhosAgro), International Raw Materials Ltd. (International Raw Materials), and Koch Fertilizer, LLC (Koch) joined. *See OCP I*, 47 CIT ___, 658 F. Supp. 3d at 1301. These lawsuits argued that the Commission's "findings of significant volume, price effects, impact, and injury causation were unsupported by substantial evidence." *Id.* at 1309. The challengers' briefs also argued that the Commission's assumption that "inventories anywhere in the U.S. should be available to supply other regions, such that imports were not needed, is unsupported by substantial evidence." *Id.*

On September 19, 2023, the Court issued its decision granting in-part OCP's Motion for Judgment on the Agency Record. *Id.* at 1324. The Court remanded the

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 7 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 7

matter to the Commission to explain why it assumed that "[phosphate] fertilizer [inventories] could be reshipped from one destination to another to meet existing demand[.]" *Id.* The Court's decision was limited to the issue of domestic reshipment and held that "consideration of other issues will come after the Commission's redetermination on remand should they remain relevant." *Id.* at 1301.

The Court focused on domestic inventory reshipment because the Commission's unsupported assumptions undergirded its material injury finding. *See id.* at 1318–19. As the Court explained, the Commission's findings on "[i]ndustry conditions must dwell in the realm of reality and not merely in the realm of the possible." *Id.* at 1313–14 (citing *Altx,* 26 CIT 709). If domestic producers could not — technically or economically — reship existing inventory domestically, these inventories could not contribute to the supply of phosphate fertilizer available to meet new demand. That would undermine the Commission's finding of oversupply conditions, which are "central to [the Commission's] determination[.]" *Id.* at 1318.

The Court held that the Commission's assumption "that fertilizer delivered to one area of the country could be shipped via intermodal delivery to another area of the country to allow its immediate use" was unsupported by substantial evidence. *See id.* at 1317. As the Court noted:

> When asked for record evidence demonstrating that [domestic reshipment] had happened during the period of investigation, no party cited any. Even the most forgiving articulations of the substantial evidence standard do not allow for the Commission to make findings based on evidence not present in the record.

Case 1:21-cv-00219-SAV   Document 234   Filed 07/03/25   Page 8 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 8

*Id.* at 1317–18 (citations omitted). As a result, the Court remanded the Commission's determination for further consideration. *See id.* at 1324. If it wanted to continue to advance its oversupply theory of injury, the Commission needed to "conduct a new analysis of the conditions of competition with respect to domestic reshipment…." *Id.* at 1318. This analysis should show evidence of reshipment or relocation of inventory "that has already reached its intended destination" and not evidence of "[i]ntermodal delivery" of fertilizer. *Id.* at 1317.

## III.   The Remand Results

On remand, the Commission decided to seek new evidence by issuing a questionnaire to U.S. producers and importers. *See* Remand Results at 4, ECF No. 145. Question 2 addressed the issue of inventory reshipment. *See* Blank U.S. Producers' Questionnaire at 4, J.A. at 20,834, ECF No. 205. Subpart 2(a) asked the responding firms to describe their "inventory operations and distribution network," including by "identifying each location where your firm held inventories" during the period of investigation and by "describing the modes of transportation used to distribute shipments." *Id.* Subpart 2(b) asked firms if they had shipped "phosphate fertilizer from one inventory location to another inventory location" during the period of review. *Id.* If a firm answered yes, it was asked to "describe the specific quantities" and the "locations to and from which these inventories were shipped." *Id.* If a firm answered no, it could select either "[n]o" or "[n]o, but has capability." Subpart 2(c) asked if the firm "ever moved phosphate fertilizers from one inventory location in the United States to another inventory location." *Id.* at 5, J.A. at 20,835. If a firm

Case 1:21-cv-00219-SAV   Document 234   Filed 07/03/25   Page 9 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 9

answered yes, it was asked to explain "the circumstances under which this occurred," the "frequency," and "how this was normally accomplished." *Id*.

The questionnaire did not define key terms like "inventory," "distribution network," and "inventory location." *See generally id.* at 1–6, J.A. at 20,831–36. Plaintiff OCP and Plaintiff-Intervenors International Raw Materials and PhosAgro warned the Commission that "the questionnaires, as written, will elicit extraneous and irrelevant information addressing facts beyond the scope of the court-ordered remand." OCP's Request for Action at 2 (Oct. 31, 2023), J.A. at 20,871, ECF No. 205; *see also* PhosAgro's Request for Action at 2 (Nov. 1, 2023), J.A. at 20,887, ECF No. 205; International Raw Materials' Request for Action at 1–2 (Nov. 1, 2023), J.A. at 20,891–92, ECF No. 205.   They requested that the Commission modify its questionnaire so it would better capture if phosphate fertilizer was reshipped once it had reached its intended destination. *See, e.g.*, International Raw Materials' Request for Action at 1–2, J.A. at 20,891–92, ECF No. 205 (requesting that the Commission "revise its questions and clarify its instructions and definitions" in the questionnaire); OCP's Request for Action at 6–7, J.A. at 20,875–76, ECF No. 205.  OCP even offered its own suggestions on how to improve the Commission's remand questionnaire, requesting it ask instead:  "[W]ere any inventories that were delivered to their originally intended destination subsequently re-shipped to another destination in response to local changes in demand?" OCP's Request for Action at 7, J.A. at 20,876, ECF No. 205.  Defendant-Intervenors opposed these modifications. *See generally* Mosaic Company Questionnaire Comments (Nov. 8, 2023), J.A. at 20,915–21, ECF

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 10 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 10

No. 205.  The Commission declined the modification requests and chose not to alter

its questionnaire.  *See* Commission Letter Regarding Comments at 1–2 (Nov. 9, 2023),

J.A. at 20,924–25, ECF No. 205.  In the ensuing month, both U.S. producers and

importers responded to the unaltered remand questionnaire.  *See* Remand Results at

4–5, ECF No. 145.

On January 17, 2024, the Commission filed its Remand Results with the Court.

*See generally id*.  The Commission explained that, based on questionnaire responses,

it had concluded that domestic producers could readily reship product between

inventory locations.  *Id*. at 32.  According to the Commission, this meant "domestic

producers were well-positioned to supply the U.S. market in 2019" and fertilizer was

not "practically unavailable from U.S. sources."  *Id*. at 33 (internal quotation marks

omitted).  The Commission asserted that these findings were "not central to [its]

material injury analysis."  *Id*. at 7.  The Commission separately found that importers

"report less extensive inventory networks" and "less movement of inventories."[1]  *Id*.

at 25.

The Remand Results also reiterate several findings that the Commission made

in its original Views.  The Commission continues to find that the volume of imports

and the increase in that volume were significant enough to contribute to a material

injury to the domestic industry.  *See id*. at 27; *see also* 19 U.S.C. § 1677(7)(C)(i).

Plaintiffs claim this finding was undermined by evidence of domestic companies'

refusal to sell merchandise to domestic trading companies that buy and resell

---

[1] No party before the Court contests this finding.

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 11 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 11

fertilizer, which in turn revealed a need for imports. *See, e.g.*, OCP's Mot. for J. on Agency R. at 13–16, ECF No. 55. The Commission answered by reiterating Mosaic's assertion that the Commission need not account for such evidence because Mosaic had legitimate business reasons for refusing those sales. *See* Remand Results at 68 n.296, ECF No. 145. The Commission's volume analysis also continued to rely on a contested total cumulated imports value, which included phosphate fertilizer imports that were later exported to other nations. *See id.* at 27–29. Plaintiffs claim that the Commission's use of this "inflated" value was improper because fertilizer imported into the United States for later export to other nations did not harm U.S. phosphate fertilizer producers. *See, e.g.*, PhosAgro's Pre-hearing Br. at 15, J.A. at 95,731, ECF No. 107.

The Commission also continued to find that imports had significant price effects on the domestic industry. Remand Results at 33, 43–44, ECF No. 145; *see* 19 U.S.C. § 1677(7)(C)(ii). It recognized that imported fertilizer sold for higher prices than domestic fertilizer in a large majority of instances but found that there were "some instances" where the domestic industry lost sales because imports were priced lower than the domestic like product. Remand Results at 37, ECF No. 145. The Commission also found that an oversupply of low-priced imports caused depressed prices during the period of investigation. *Id.* at 43–44.

## IV.  The Present Dispute

The parties filed comments with the Court addressing the Remand Results. *See generally* Pl.'s Comments in Opp'n to the Int'l Trade Comm'n's Final Remand

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 12 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 12

Determination (OCP's Comments), ECF No. 156; Cons. Pl. EuroChem North America
Corp.'s Comments in Opp'n to Remand Determination (EuroChem's Comments), ECF
No. 154; Pl.-Int PhosAgro PJSC Comments on the U.S. Int'l Trade Comm'n Remand
Determination (PhosAgro's Comments), ECF No. 160; Pl.-Int. Koch Fertilizer LLC's
Comments in Opp'n to the Int'l Trade Comm'n's Final Remand Determination (Koch's
Comments), ECF No. 163; Pl.-Int. Int'l Raw Material Ltd.'s Comments in Opp'n to
Remand Determination (IRM's Comments), ECF No. 166; Def. United States Int'l
Trade Comm'n's Corrected Comments on Remand Determination (Commission's
Comments), ECF No. 182; Def.-Int. the J.R. Simplot Co.'s Comments on the U.S. Int'l
Trade Comm'n's Remand Determination (Simplot's Comments), ECF No. 186; Def.-
Int. the Mosaic Co.'s Comments on the U.S. Int'l Trade Comm'n's Remand
Determination (Mosaic's Comments), ECF No. 188; Pl.'s Reply to Def.'s and Def.-Ints.'
Comments on Remand Determination (OCP's Reply), ECF No. 200.  In those filings,
the challengers raise a variety of arguments against the Remand Results and urge
another remand.

First, Plaintiff OCP, Consolidated Plaintiff EuroChem, and Plaintiff-
Intervenors PhosAgro, Koch, and International Raw Materials (collectively the
Plaintiffs) argue that the Remand Results fail to remedy the error that prompted the
remand.  *See* OCP's Comments at 1–7, ECF No. 156; PhosAgro's Comments at 1, 6,
ECF No. 160; Koch's Comments at 1, ECF No. 163; EuroChem's Comments at 2, ECF
No. 154; IRM's Comments at 2–4, ECF No. 166.  They assert the Commission's
determination on the prevalence and feasibility of reshipment remains unsupported

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 13 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 13

by substantial evidence because the Commission's questionnaires on the topic were "not worded to elicit information responsive to the Court's directive." OCP's Comments at 1, ECF No. 156; *see also* PhosAgro's Comments at 14, ECF No. 160. The Plaintiffs also argue that, setting aside the questionnaire design, the actual answers the Commission's questionnaires generated "confirm that the distribution of phosphate fertilizer in the United States is unidirectional[.]" OCP's Comments at 3, ECF No. 156; *see also* PhosAgro's Comments at 14, ECF No. 160.

Defendant and Defendant-Intervenors (collectively, the Defendants) dispute this characterization of the Remand Results, insisting there are no legal problems with the Commission's findings on domestic reshipment. They argue that the Commission's questionnaires "were directly targeted to gather complete data regarding the conditions of competition with respect to inventory and distribution operations, including reshipment of fertilizers." Commission's Comments at 7, ECF No. 182; *see also* Mosaic's Comments at 1–2, ECF No. 188. They also contend that the remand questionnaire responses "demonstrate[d] the breadth and superiority of U.S. producers' distribution network," which enabled them to move fertilizer as needed. Commission's Comments at 4–5, ECF No. 182 (internal quotation marks omitted); *see also* Mosaic's Comments at 2, ECF No. 188.

Second, Plaintiffs repeat their arguments about the Commission's volume and price effects analyses. Regarding volume, Plaintiffs argue that the Commission's finding is not supported by substantial evidence because the agency failed to account for domestic producers' refusing to sell product to U.S. trading companies. *See* OCP's

Case 1:21-cv-00219-SAV     Document 234     Filed 07/03/25     Page 14 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                      Page 14

Comments at 10–11, ECF No. 155; Koch's Comments at 3, ECF No. 163; PhosAgro's Comments at 10, ECF No. 160; IRM's Comments at 7–8, ECF No. 166.  Plaintiffs further claim the Commission relied on a cumulated subject imports value that improperly includes fertilizer that was later exported to Canada.  *See* OCP's Comments at 13–14, ECF No. 155; EuroChem's Comments at 2, ECF No. 154; PhosAgro's Comments at 11, ECF No. 160.  Additionally, Plaintiffs argue that the Commission ignored contrary evidence in the record when making its price effects analysis.  They point to imports' generally higher sales prices, Mosaic's role as a price leader in the U.S., and a potentially inaccurate questionnaire response the Commission relied on to determine domestic producers' lost sales.  OCP's Comments at 22–27, ECF No. 155; EuroChem's Comments at 2, ECF No. 154; PhosAgro's Comments at 17–27, ECF No. 160; Koch's Comments at 7, ECF No. 163; OCP's Reply at 6–9, ECF No. 200.

Defendants ask the Court to sustain the Commission's volume and price effects analyses.  They claim the Commission sufficiently addressed the Plaintiffs' refusal-to-sell argument in the Remand Results.  Commission's Comment at 41, ECF No. 182; Mosaic's Comments at 7, 10, ECF No. 188; Simplot's Comment at 7, ECF No. 186.  In response to Plaintiffs' claims about re-exported product, the Commission notes that the contested value came from the importers' questionnaire responses so that any inaccuracy is the fault of the importers.  Commission's Comments at 12–13, ECF No. 182.  Finally, regarding the price effects analysis, Defendants argue that the Commission is presumed to have considered all the evidence on the record; and its

Case 1:21-cv-00219-SAV     Document 234     Filed 07/03/25     Page 15 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 15

findings are owed great deference.  Commission's Comments at 19–36, ECF No. 182;

Mosaic's Comments at 10–23, ECF No. 188; Simplot's Comments at 8–11, 15–21, ECF

No. 186.

**JURISDICTION AND STANDARD OF REVIEW**

As in *OCP I*, the Court has jurisdiction over this action pursuant to 28 U.S.C.

§ 1581(c).  The Court must assess the factual and legal findings underpinning the

Commission's determinations and "hold unlawful any determination, finding or

conclusion . . . unsupported by substantial evidence on the record, or otherwise not in

accordance with law[.]"  19 USC § 1516a(b)(1)(B)(i).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).  It

must be "more than a scintilla, and must do more than create a suspicion of the

existence of the fact to be established." *N.L.R.B. v. Columbian Enameling &*

*Stamping Co.*, 306 U.S. 292, 300 (1939).  However, "the possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence." *Matsushita Elec.*

*Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).  The Court additionally

"reviews remand results for compliance with the remand order." *DAK Am. LLC v.*

*United States*, 45 CIT __, 517 F. Supp. 3d 1349, 1355 (2021) (citing *Xinjiamei*

*Furniture (Zhangzhou) Co. v. United States*, 38 CIT 189, 190 (2014)).

This Court's review of the Commission's determination is limited to the

administrative record that was before the agency.  19 U.S.C. § 1516a(b)(2)(A).  To

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 16 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 16

determine if substantial evidence exists, the Court considers "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). The Court assesses whether the Commission succeeded in putting forward a reasoned explanation by "mak[ing] the necessary findings and hav[ing] an adequate evidentiary basis for its findings." *In re NuVasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016) (internal citations omitted). To meet this threshold, the Commission must not only "examine the relevant data and articulate a satisfactory explanation for its action[,]" but also provide "a rational connection between the facts found and the choice made." *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## DISCUSSION

In *OCP I*, the Court remanded on the narrow issue of whether adequate record evidence supported the Commission's conclusion that phosphate fertilizer inventories could be reshipped from their original final destinations. *See OCP I,* 47 CIT __, 658 F. Supp. 3d at 1324. The Commission reopened the record, issued new questionnaires, and continued to conclude that domestic reshipment was possible. *See* Remand Results at 4, 32–33, ECF No. 145. Plaintiffs maintain that the Commission's reshipment determination is flawed and renew challenges to portions of the Commission's price effects and volume analyses.[2] The Court holds that the

---

[2] The Commission's actions on remand may moot some of the Plaintiffs' additional claims so that the Court declines to address them at this time. *See OCP I*, 47 CIT __, 658 F. Supp. 3d

Commission's determination on reshipment remains unsupported by substantial evidence. The Court further finds that the Commission has not adequately supported certain findings regarding its volume and price effects analyses. Accordingly, the Court is once again remanding this matter to the Commission for further explanation and — if the Commission deems it necessary — additional investigation.

## I.    The Commission's Compliance with the Remand Order

The Tariff Act requires the Commission to ground its material injury determination "within the context of the business cycle and [the] conditions of competition that are distinctive to the affected injury." 19 U.S.C. § 1677(7)(C)(iii) (flush language). "Although the statute does not define the term 'conditions of competition,' the Commission's practice is to perform this analysis by making findings about U.S. market characteristics, U.S. purchasers, the supply chain, geographic distribution, demand trends, substitutability, purchasing patterns, elasticity, and other aspects of the market for the subject merchandise." *OCP I*, 47 CIT __, 658 F. Supp. 3d at 1312. The Commission found as a condition of competition that domestic phosphate fertilizer inventories could be reshipped when needed. Remand Results at 32, ECF No. 145. The parties dispute whether this finding complied with the Court's remand order and is supported by substantial evidence. The record contains only limited examples of inventory reshipment. For that reason, the Court holds that

---

at 1319 n.7 ("Because the Commission's reconsideration of domestic reshipment may alter these findings, the Court will reserve any review of them until after remand."); *Celanese Chemicals, Ltd. v. United States*, 31 CIT 279, 311 (2007) ("Because each of these findings may be subject to change on remand, judicial review of the Commission's volume and price effects findings would be inappropriate at this time.").

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 18 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                Page 18

substantial evidence does not demonstrate domestic producers could move inventories when needed. *Id.* Because that finding continues to underpin the Commission's material injury determination, the remand results must be remanded for a second time to cure the Commission's legal errors.

## A.

By requiring the Commission to consider the conditions of competition that shape the domestic market, the Tariff Act "prevents the [Commission] from attributing to subject imports an injury whose cause lies elsewhere." *Hynix Semiconductor, Inc. v. United States*, 30 CIT 1208, 1222 (2006). The Commission's findings regarding competition and market conditions must "dwell in the realm of reality and not merely in the realm of the possible." *OCP I*, 47 CIT __, 658 F. Supp. 3d at 1313–1314 (citing *Altx*, 26 CIT 709). They also must be supported by substantial evidence in the record. *See United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union v. United States*, 42 CIT __, 348 F. Supp. 3d 1328, 1333 (2018).

In its original determination, the Commission made a "key finding regarding a condition of competition" in the U.S. phosphate fertilizer market. *OCP I*, 47 CIT __, 658 F. Supp. 3d at 1314. It found that it was possible to supply phosphate fertilizer to high demand regions of the country by reshipping fertilizer that had already been delivered to flooded, low demand regions so that additional foreign imports were not necessary. *See* Views at 56 n.217, J.A. at 99,626, ECF No. 107; *see also OCP I*, 47 CIT __, 658 F. Supp. 3d at 1314–18. In other words, pre-existing

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 19 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 19

phosphate fertilizer inventories could be reshipped to meet market demand
throughout the country.

This "key finding … ground[ed] the Commission's determination[]" that
domestic producers were materially injured by subject imports. *OCP I*, 47 CIT __,
658 F. Supp. 3d at 1314. If phosphate fertilizer inventories could be reshipped, that
meant those inventories were part of the U.S. phosphate fertilizer supply. Based on
that belief, the Commission found that subject imports "caus[ed] an *oversupply* in the
U.S. market and significantly depress[ed] U.S. prices." *Compare* Views at 52–53, J.A.
at 99,622–23, ECF No. 107 (emphasis added), *with OCP I*, 47 CIT __, 658 F. Supp. 3d
at 1315 ("Plaintiffs' point was that additional imports that arrived in 2019 were not
a part of an 'oversupply.' Rather, they filled demand that could not be filled by
domestic inventories because those inventories could not feasibly be reshipped[.]").

The Commission did not support its finding with substantial evidence. Record
evidence gathered during the Commission's original investigation only contained
instances of "[i]ntermodal delivery" where phosphate fertilizer was shipped through
"multiple methods [or modes] of transportation" from its source to its original
intended destination. *See OCP I*, 47 CIT __, 658 F. Supp. 3d at 1317. These
shipments were unidirectional. They were "distinct from *reshipment* of fertilizer that
has already reached its intended destination." *Id.* (emphasis added). Such
reshipment would inherently be multidirectional: Fertilizer would first be shipped
to its original intended destination; then it would be reshipped from that destination
to another location to meet new market demand. Although "[i]ntermodal delivery"

systems could facilitate multidirectional shipment, the record contained no evidence that these systems operated in multiple directions or facilitated inventory reshipment. *Id.* at 1317–18. Instead, the evidence on inventory reshipment before the Commission only indicated that "it is cost-prohibitive to reship fertilizer[.]" *Id.* at 1315. The Court remanded the Commission's material injury determination because of its unsupported inventory reshipment finding. It directed, "On remand, the Commission should conduct a new analysis of the conditions of competition with respect to domestic reshipment and make new findings that are supported by substantial evidence." *Id.* at 1318.

In response, the Commission reopened the record and conducted a new investigation into inventory reshipment by issuing questionnaires. Domestic producers provided information to the Commission about their storage and distribution facilities, including ████████████████████████████ ████ warehouses. Remand Results at 23–24, ECF No. 145. They detailed various port terminals, barge fleeting locations, and other transportation hubs they use to move phosphate fertilizer. *Id.* at 23–24. Domestic producers also reported instances where they ████████████████████████████████ ████████████████████████ and where they moved fertilizer "between [their] forward distribution warehouses." *Id.* at 24. Importers, by contrast, reported "that their distribution networks were unidirectional and that once delivered to an inventory or customer location, product was not subsequently relocated but rather remained at that location." *Id.* at 25 (internal quotation marks omitted).

Based on this evidence, the Commission again concluded that domestic producers' ability to reship phosphate fertilizer inventories was a condition of competition in the U.S. phosphate fertilizer market. *See id.* at 22–24. It found that domestic producers had a broad "ability to move and relocate product where it was needed[.]" *Id.* at 33. Domestic producers could reship product from inventory locations based on market "need[]" regardless of the quantity of inventory required to be reshipped. *Id.*

Plaintiffs argue that the Commission's new inventory reshipment finding does not comply with the remand order because it remains unsupported by substantial evidence.[3] They assert that the Commission received responses "confirm[ing] that the distribution of phosphate fertilizer in the United States is unidirectional" so that inventories could not be reshipped. OCP's Comments at 3, ECF No. 156; *see also* PhosAgro's Comments at 14, ECF No. 160 ("[E]ven despite the Commission's faulty [questionnaire design] process, the questionnaire responses overwhelmingly demonstrated that the phosphate supply chain was almost universally unidirectional."); Koch's Comments at 6, ECF No. 163 ("[I]t is now a fact that import inventories at their final destination are not moved to other locations[.]") (emphasis removed); IRM's Comments at 3–4, ECF No. 166. The Commission and Defendant-Intervenors contend that the remand questionnaire responses "demonstrate[d] the

---

[3] Plaintiffs also argue that the Commission did not write its questions to "elicit information responsive to the Court's directive" and thus failed to comply with the Court's remand order. OCP's Comments at 1, ECF No. 156; *see also DAK Americas*, 45 CIT __, 517 F. Supp. 3d at 1355 (noting that the Court "reviews remand results for compliance with the remand order"). Because the Commission's inventory reshipment finding is unsupported by substantial evidence, the Court does not reach this argument.

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 22 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 22

breadth and superiority of U.S. producers' distribution network," which enabled them to move fertilizer as needed. Commission's Comments at 4–5, ECF No. 182 (internal quotation marks omitted); *see also* Mosaic's Comments at 2, ECF No. 188.

## B.

The question is whether the Commission obtained record evidence sufficient for a "reasonable mind" to conclude that domestic inventories actually could be reshipped as needed throughout the country. *Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240, 249 (Fed. Cir. 2022) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (noting that the substantial evidence standard requires the agency to "articulate [a] rational connection between the facts found and the choice made"). It did not.

Much of the evidence in the record cited by the Commission to support its inventory reshipment finding is evidence of domestic producers' general distribution capabilities. The Commission's comments on the Remand Results claim that "the breadth and superiority of U.S. producers' distribution networks … enabl[e] domestic producers to move inventory between locations[.]" Commission's Comments at 8, ECF No. 182 (internal quotation marks omitted). To support this proposition, it cites to portions of the Remand Results that detail domestic producers' warehousing networks and multiple methods of distribution. *See* Remand Results at 23–25, ECF No. 145. Mosaic similarly defends the Commission's reshipment finding by citing to

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 23 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                    Page 23

details about its "extensive distribution network" and "storage capacity." Mosaic's Comments at 2–3, ECF No. 188.

This kind of evidence only shows that domestic producers had robust "distribution networks." Remand Results at 23, ECF No. 145. It sheds no light on whether the distribution networks are unidirectional, as Plaintiffs claim, or multidirectional, as Defendants claim. In *OCP I*, the Court noted that general information about transportation systems was "distinct from reshipment of phosphate fertilizer that has already reached its intended destination." 47 CIT __, 658 F. Supp. 3d at 1317. In theory, a robust intermodal distribution network could be multidirectional; but "the Commission may not ground its determinations in 'theoretical possibilities.'" *Id.* (quoting *Altx*, 26 CIT at 718). Instead, the Commission's inventory reshipment finding must be grounded in evidence of actual inventory reshipment by domestic producers. *See id.* at 1317–18; *see also* Commission's Comments at 9, ECF No. 182 (recognizing that "the Court informed [the Commission] that evidence of inter-modal transportation alone does not demonstrate reshipment to be a normal condition of competition").

The Remand Results and Defendants' Comments only cite to a limited pool of record evidence that demonstrates actual inventory reshipment. Domestic producers replied to the Commission's questionnaire by providing specific volumes of phosphate fertilizer they reshipped from inventory locations to meet new market demand. *See* Remand Results at 23–24, ECF No. 145. The Commission never compared the volume of reported reshipped inventory with domestic producers' overall shipment

Case 1:21-cv-00219-SAV   Document 234   Filed 07/03/25   Page 24 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                   Page 24

volumes.  Such a comparison reveals that the reported reshipped inventory volumes are commercially insignificant.  Indeed, ███████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ during the period of investigation.[4]  *Compare id.* at 24, *with* Domestic Producer's Questionnaire Resp. at 18, J.A. at 87,812, ECF No. 202.

This evidence suggests reshipment was a rare practice.  Perhaps the evidence would be sufficient to support a conclusion that domestic producers could reship small quantities of inventories to meet some new demand.  But that is not what the Commission found.  Instead, based on this evidence, the Commission went further and concluded that domestic producers "demonstrated [an] ability to move and relocate product [from inventories to] where it was needed."  Remand Results at 33, ECF No. 145.

The record evidence cannot "rational[ly] connect[]" to that conclusion. *Burlington Truck Lines*, 371 U.S. at 168.  No reasonable observer would conclude that isolated examples of small-volume inventory reshipment — standing by themselves — prove the existence of a broad capacity to reship inventories as needed.  Remand Results at 32, ECF No. 145.  Such a conclusion would require additional evidence to show that domestic producers could scale up their typically meager inventory

---

[4] The Court only provides a "general characterizations of … [the confidential] information." *See OCP S.A. v. United* States, Consol. Court No. 1:21-cv-00219, 49 CIT ___, 2025 Ct. Intl. Trade LEXIS 32, at *50 (Mar. 27, 2025) (citing 19 C.F.R. § 201.6(a)(1)).  The Commission's own standards recognize that these kinds of generalizations are non-confidential.  *See* 19 C.F.R. § 201.6(a)(1) ("Nonnumerical characterizations of numerical confidential business information (e.g., discussion of trends)" are generally not entitled to confidential treatment).

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 25 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 25

reshipment capabilities to meet the new market conditions created by "'Black Swan' level rainfall" during the period of review. *Id.* at 38. No such evidence exists on this record.

Further tainting the Commission's determination, the Remand Results fail to account for "whatever in the record fairly detracts from" its conclusion, including "contradictory evidence or evidence from which conflicting inferences could be drawn." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–88 (1951)). After asking domestic producers for evidence of inventory reshipment, the Commission received limited evidence of it. The Commission seized on this evidence to justify its conclusion about inventory reshipment. *See* Remand Results at 23–24, ECF No. 145. The Commission never considered if these minor instances of reshipment instead demonstrated that domestic producers lacked inventory reshipment capability. Yet, this is an obvious "conflicting inference" that could be drawn from the record evidence which "fairly detracts from" the Commission's conclusion. *Suramerica*, 44 F.3d at 985. Indeed, when reviewing *importers'* data showing limited "movement of inventories" during the period of investigation, the Commission concluded that importers did *not* move "substantial quantities of inventory between locations...." Remand Results at 25, ECF No. 145. At the very least, the Commission needs to explain why the same is not true for domestic producers that similarly reported limited instances of inventory reshipment. *Compare id.* at 23–24 (noting the low volumes of reshipped inventory reported by

domestic producers), *and id.* at 33 (finding domestic producers had an "ability to move and relocate product to where it was needed"), *with id.* at 25 (noting importers' data showed limited "movement of inventories" and concluding importers' "distribution networks were unidirectional").

Defendant-Intervenors' make errors that mirror those in the Remand Results. For example, Mosaic argues "the record demonstrates that Mosaic routinely moves inventories," but then only cites to evidence demonstrating different forms of unidirectional shipment.  Mosaic's Comments at 3, ECF No. 188.  It cites to the diversion of "tons in transit" to meet "more acute need" as evidence of inventory reshipment. *Id.* at 4.  Yet, "tons in transit" are tons that are not yet in inventory. *Id.* If the tons had reached their original destination, they would not be in transit. Mosaic does identify instances of actual inventory reshipment at a low volume. *See id.* at 3.  But, as explained above, instances of low volume reshipment alone cannot rationally connect to the Commission's broad reshipment finding. *Cf.* Remand Results at 25, ECF No. 145 (finding with regard to importers that similar low volume shipments were not "substantial").

## C.

Legal errors with the Commission's inventory reshipment finding continue to infect the Commission's larger determination that domestic producers were materially injured by subject imports.  The Commission insists that its findings on domestic reshipment are "not central to [its] material injury analysis…."  Remand Results at 7, ECF No. 145.   The Court disagrees.

If domestic producers could not reship their inventories, the Commission's oversupply-based material injury finding collapses like a house of cards. Domestic producers' purported ability to reship inventories drove the Commission to conclude those producers were "well-positioned to supply the U.S. market…." *Id.* at 33. This finding led the Commission to conclude that additional imports into the United States created oversupply conditions that "significantly depressed U.S. prices[,]" injuring domestic producers. *See id.* at 44. However, if domestic producers could not reship their inventories, they would be poorly positioned to supply the U.S. market so that imports would not have created oversupply conditions.

The Commission's material injury determination may not rest on a critical finding that is unsupported by substantial evidence. *See OCP I*, 47 CIT __, 658 F. Supp. 3d at 1318 (first citing *Am. Spring Wire Corp v. United States*, 8 CIT 20, 23 (1984); and then citing *Nucor Corp.*, 28 CIT at 207). The Remand Results hinge on an unsupported inventory reshipment finding; therefore, the Commission's determination must be remanded for a second time. If the Commission wishes to continue finding that domestic inventory reshipment was part of the conditions of competition in the phosphate fertilizer industry, it must use record evidence to explain why — despite low volumes of inventory reshipment — domestic producers nonetheless had the capability to place their large inventories back into supply in the domestic phosphate fertilizer market. In the process, it must address "whatever in the record fairly detracts" from its conclusion. *Suramerica*, 44 F.3d at 985.

## II.    Volume, Price, and Impact

The Commission is required by law to conduct an analysis of volume, price effects, and impact on the domestic industry.  *See* 19 U.S.C. § 1677(7)(B)(i).  To be sustained, it must support its analysis with substantial evidence.  Here, the Commission's volume analysis fails that standard because it does not explain its treatment of detracting evidence.  Likewise, the Commission's price effects analysis fails to address important evidence in the record.  The Commission also failed to adequately consider potential flaws in a questionnaire response that it relied on to determine its lost sales figure for its price effects analysis.  These errors, independent of the Commission's domestic reshipment errors, render the Remand Results unsupported by substantial evidence.

When the Commission makes a material injury determination, it must consider:

(I)    the volume of imports of the subject merchandise,

(II)   the effect of imports of that merchandise on prices in the United States for domestic like products, and

(III)  the impact of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States[.]

19 U.S.C. § 1677(7)(B)(i).  The Commission must "explain its analysis of each factor[.]" *Id.* § 1677(7)(B); *see also Angus Chem. Co. v. United States*, 140 F.3d 1478, 1486 (Fed. Cir. 1998) (finding that the Commission complied with the statute because it considered the three factors and "explain[ed] its analysis of each factor"); *Altx, Inc. v. United States*, 25 CIT 1100, 1101 (2001) ("Only after the consideration and

explanation of all three factors may the Commission arrive at a final determination.").

## A. Volume

First, the Commission fails to support its volume analysis with substantial evidence because it ignores important, detracting information in the record and fails to connect the facts found to the choices made. In conducting its volume analysis, the Commission must "consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant." 19 U.S.C. § 1677(7)(C)(i). Here, the Commission found that both the volume and the increase in that volume were significant. Remand Results at 27, ECF No 145. Plaintiffs complain that the Commission erred by failing to address two categories of record evidence — (1) instances where Mosaic refused to sell to domestic trading companies and (2) instances where subject merchandise was re-exported. For the reasons explained below, the Court agrees with Plaintiffs that it is not clear from the Commission's original Views or the Remand Results that the Commission considered either category of evidence.

### i.    Refusal to Supply the Domestic Market

Several domestic trading companies reported they were unable to buy subject merchandise from Mosaic during the period of investigation. These reports describe instances where the U.S. customers asked to purchase fertilizer and Mosaic declined to make the sale because of supply constraints. *See, e.g.*, Hr'g Tr. at 205:22–25, J.A.

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 30 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 30

at 15,701, ECF No. 115 (Mr. Coppess, Retired Executive Vice President of Heartland
Co-op: "In May of 2020, Mosaic refused to offer us product or even allow us to prepay
pricing … telling us that they were 'out of the market at the present time.'").  For
example, Koch, a domestic fertilizer trading company, reported that it needed to
purchase imports to satisfy domestic demand because Mosaic refused to sell it
requested amounts of fertilizer.[5]   Koch's Comments at 3, ECF No. 164; Koch
Questionnaire Resp. at 13, J.A. at 88,781, ECF No. 202.  Another trading company
reported that Mosaic refused to sell it *any* fertilizer during the period of investigation.
Staff Report at II-9, J.A. at 98,405, ECF No 107; H'rg Tr. at 288:15–20; J.A. at 15,784,
ECF No. 115.  The record also contains testimony from executives of Koch and
Gavilon Fertilizer LLC (Gavilon) — both major U.S. purchasers — that Mosaic has
generally declined their sales inquiries.  Sworn Testimony of Koch's Executive Vice
President Scott McGinn, J.A. at 15,692–93, ECF No. 115; Sworn Testimony of
Gavilon's President Brian Harlander, J.A. at 3,676, ECF No. 109.

These brokers and traders do not produce fertilizer themselves, and Mosaic
argues that it has "legitimate business reasons" for refusing to sell to them.  Mosaic's
Comments at 8, ECF No. 188.  The companies "act as middlemen" that "compete with
Mosaic for sales to the same downstream retailers."  Mosaic's Comments at 8, ECF
No. 188; *see also* Mosaic's Post-Hearing Resps. to Commissioner Questions at 87, J.A.
at 97,253, ECF No. 107.  Thus, Mosaic claims to "prioritize sales to loyal customers

---

[5] This information is publicly disclosed in Koch's comments on the Remand Results.  *See*
Koch's Comments at 3, ECF No. 164.

Case 1:21-cv-00219-SAV     Document 234     Filed 07/03/25     Page 31 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 31

over trading companies...." Mosaic's Comments at 8, ECF No. 188; *see also* Mosaic's

Post-Hearing Resps. to Commissioner Questions at 87, J.A. at 97,253, ECF No. 107.

Plaintiffs argue that Mosaic's refusal to sell undermines the Commission's

volume analysis by showing that there was not enough domestic supply to meet

demand.  OCP's Comments at 10–11, ECF No. 155; Koch's Comments at 3, ECF No.

163; PhosAgro's Comments at 10, ECF No. 160; IRM's Comments at 7–8, ECF No.

166.  They claim the Commission "ignore[d]" and "brushed aside" reports that Mosaic

refused sales and failed to account for this fact in its volume analysis.  OCP's

Comments at 10–11, ECF No. 155.  Conversely, Defendants say "the Commission

fully considered — and reasonably rejected — Plaintiffs['] arguments" in the original

Views and Remand Results.  Mosaic's Comments at 7, 10, ECF No. 188; *see also*

Commission's Comments at 7, 41, ECF No. 182; Simplot's Comments at 7, ECF No.

186.

The Court agrees that the Commission failed to account for this detracting

evidence.  In its original Views, the Commission acknowledged Plaintiffs' arguments

generally but did not address Mosaic's categorical refusal to sell to fertilizer trading

companies.  Views at 56, J.A. at 99,626, ECF No. 107.  The closest the Commission

comes to discussing the issue is in a footnote in the Remand Results where it lists

Mosaic's counterarguments.  Remand Results at 68 n.296, ECF No 145.  There, it

recites: "Mosaic also contends that some of the supply issues identified by respondent

parties are with broker/traders such as ADM and Koch that compete with the

domestic industry for sales and rely on a small margin, high volume business model."

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 32 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 32

*Id.* This recitation is not analysis. *See NuVasive*, 842 F.3d at 1382 (quoting *State Farm*, 463 U.S. at 43) (explaining that an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made"). It does not explain whether the agency found that Mosaic's arguments were convincing or accorded with other evidence in the record.

The Commission also fails to explain how the domestic industry could be harmed by sales that it refused to make. Mosaic is the largest domestic producer and the U.S. price leader. Staff Report at I-3, Table III-1, J.A. at 98,383, 98,429, ECF No. 107; *id.* at V-8–V-9, J.A. at 98,470–71 (majority of purchasers reporting Mosaic as the U.S. price leader). It is not obliged to take every sale opportunity presented, but it cannot cry foul over opportunities it intentionally rejected. A reasonable observer would not consider a sale "lost" to importers — much less evidencing harm to the domestic companies — if that sale was first offered to and rejected by Mosaic. Mosaic can operate according to whatever business strategy it pleases. In fact, the record indicates that part of Mosaic's strategy during the period of review was to decrease business in the United States and increase business in Brazil. *See* H'rg Tr. at 270–71, J.A. at 15,766–67, ECF No. 115 (Mr. Wessel: "[A]fter Plant City closed, [Mosaic] did cut our supply by 100,000 tons …."); Ex. 1A (Transcript from Mosaic's 2019 Analyst Day), Gavilon Prehearing Br., J.A. at 90,470–71, ECF No. 202 (O'Rourke, Mosaic's President and CEO: "[W]hen we … idled Plant City, that opened up a hole for some imports to increase …. We went from 55%, 60% market share to a more sustainable 50-ish percent market share. So we gave up 1 million tonnes of market

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 33 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 33

here in the U.S. intentionally."); Ex. 2 (2016 news article describing Mosaic's acquisition of Brazilian fertilizer business), Koch's Prehearing Br., J.A. at 9,881–82, ECF No. 110 ("'I am excited at the prospect of leading Mosaic's vastly expanding business in Brazil,' said Mr. McLellan. 'This will be an ideal time for us to grow in the region ….'").  Mosaic cannot have its cake and eat it too by complaining about opportunities it abandoned.

The Commission is free to find that other evidence in the record overcomes the weight of reports that Mosaic refused sales. The Commission is also free to explain why the reports are not credible, if it so finds.  What the Commission cannot do is ignore evidence in the record that detracts from its injury determination without explanation. *Suramerica*, 44 F.3d at 985 (quoting *Universal Camera Corp.*, 340 U.S. at 487–88).  It must explain how the domestic industry suffered material injury because of "the volume of imports of the subject merchandise" in light of reports that Mosaic chose to leave domestic demand unsatisfied.  19 U.S.C. § 1677(7)(B)(i).  Listing a party's counterarguments is not analysis.  Instead, the Commission must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines*, 371 U.S. at 168).  Thus, the Court remands for the Commission to either make a new finding or to provide a rational explanation of how it weighs the contrary evidence.

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 34 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 34

ii.    Re-Exports

The parties also dispute whether the Commission's volume analysis accounted for imports that were re-exported to Canada. The Commission pulled data about the total amount of subject imports that entered the United States during the period of investigation directly from importers' questionnaire responses. *See* Views at 33 n.133, J.A. at 99,603, ECF No. 107 (citing Staff Report at IV-3, Table IV-2); Staff Report at IV-3–IV-4, Table IV-2, J.A. at 98,445–46, ECF No. 107 (noting that the table was "[c]ompiled from data submitted in response to Commission questionnaires"). It then relied on this data to find that the volume of imports and the increase in that volume was significant. *See* Views at 33–35, J.A. at 99,603–05, ECF No. 107; Remand Results at 27–29, ECF No. 145. Throughout the proceedings, Plaintiffs argued this was error because the data includes product that was destined for Canada and therefore did not injure U.S. industry. The Commission's failure to address Plaintiffs' concerns was improper.

"The [Commission's] use of importer questionnaire data to calculate subject import volumes is a well-established and accepted practice." *Celanese Chemicals Ltd. v. United States*, 31 CIT 279, 288 (2007). Courts will not typically disturb the Commission's choice. *Id.* ("[T]here is no presumption favoring the use of official government import statistics such as Census data, or – for that matter – any other set of data."). But the Court will consider whether the data chosen is an accurate basis on which to rely. "A decision based on inaccurate data provides a sound reason for a court to order reconsideration to correct a determination based on those data,

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 35 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 35

whether the Commission knows of the incorrect data or not." *Borlem S.A. v. United States*, 913 F.2d 933, 941 (Fed. Cir. 1990). This is especially true when the Commission has reason to know that other data would be more accurate. *Celanese*, 31 CIT at 291 (ordering the Commission to "explain why the questionnaire responses remained the best information available" where it had been provided other, corrected data "at the time of its decision").

Here, the Plaintiffs raised their concern that the Commission was relying on an inflated value of import entries early in the proceedings. *See, e.g.*, PhosAgro's Pre-hearing Br. at 15, J.A. at 95,731, ECF No. 107; OCP's Responses to Q&A at 19–20, J.A. at 97,707–08, ECF No. 202; Declaration of Michael R. Rahm 7–8, 10, J.A. at 16,606–07, 16,609, ECF No. 116. They claim that approximately 400,000 short tons of fertilizer initially brought into the United States and reported as imports by the domestic industry were later re-exported to Canada. OCP's Br. at 11–12, ECF No. 56; IRM's Br. at 5 n.2, ECF No. 76; Koch's Br. at 4 n.4, ECF No. 75; OCP's Reply Br. at 5 n.1, ECF No. 105; OCP's Comments at 13–14, ECF No. 156; Eurochem's Comments at 2, ECF No. 154; PhosAgro's Comments at 11, ECF No. 160. Plaintiffs argue it is inappropriate to count the Canada-bound fertilizer as part of the total volume of imports impacting the U.S. market because those Canada-bound imports "do not compete with U.S.-made phosphate fertilizer in the U.S. market[.]" PhosAgro's Comments at 11, ECF No. 160 ("The large quantities of subject imports that are destined for Canada do not compete with U.S.-made phosphate fertilizer in the U.S. market at this time and, therefore, cannot serve as a basis for injury."). The

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 36 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                      Page 36

Commission's material injury analysis must be limited to the economic impact of imports in the U.S. market. *Compare* 19 U.S.C. § 1671(a)(2) (flush language) (requiring injury to be "by reason of imports"), *with* 19 U.S.C. § 1677k (establishing a separate remedial scheme to address any injury suffered by U.S. producers from lost sales in foreign markets). The Commission — Plaintiffs assert — has therefore artificially inflated the volume of imports in the U.S. during the period of investigation. OCP's Comments at 13–14, ECF No. 156.

The Commission responds that Plaintiffs cannot now be heard to complain about the use of their own data. It notes that the questionnaire it sent to importers defines "imports" as "[t]hose products identified for Customs purposes as imports for consumption for which your firm was the importer of record (i.e., was responsible for paying any import duty)." Importers' Blank Questionnaire, J.A. at 8,704, ECF No. 110. The Commission argues the importers should have understood from the definition that any reported number should exclude fertilizer later exported to Canada. Commission's Br. at 11–12, ECF No. 102; Commission's Comments at 12–13, ECF No. 182. The Commission does not deny that the volume number it cited includes re-exported product. It instead claims that the importers should have known better when answering the agency's questions, and any blame for error lies at the importers' feet. Commission's Br. at 11–12, ECF No. 102; Commission's Comments at 13, ECF No. 182 ("The Commission reasonably relied on importers properly reporting imports in accordance with the Commission's explicit instructions.").

Regardless of whether the importers were correct to report product destined for re-export to Canada, the Commission used inaccurate data. The Plaintiffs raised their concern months before the Commission issued its final determination so that the agency had time to look into whether the cumulated import volumes were accurate. *Compare* PhosAgro's Prehearing Br., J.A. at 95,721, ECF No. 107 (raising the concern as early as Feb. 3, 2021), *with Phosphate Fertilizers from Morocco and Russia*, 86 Fed. Reg. 17,642 (ITC Apr. 5, 2021) (publishing the Commission's final determination sixty-one days later). Instead, the Commission ignored the Plaintiffs' concerns and issued its Views without any mention or explanation of the issue. Did the Commission consider the Plaintiffs' concerns disingenuous? Did it think product passing through the United States on its way to Canada was injurious? The Court has no way of knowing. *See Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019) ("[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record.").

That the Plaintiffs could have been more fastidious when reviewing the Commission's instructions does not moot the issue — particularly when parties draw the flawed data to the Commission's attention before the record closes. *See Chemours Co. v. United States*, 43 CIT __, 393 F. Supp. 3d 1186, 1194 (2019) (suggesting all relevant factual information can be submitted by parties until the record closes). When the Commission becomes aware of a possible flaw in a timely manner, it has a duty to investigate. *Cf. Borlem*, 913 F.2d at 941 (explaining that a court may remand when the Commission relies on inaccurate data "whether the Commission knows of

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 38 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 38

the incorrect data or not").  Its failure to do so and address Plaintiffs' legitimate objections demands a remand.

The Court is unpersuaded by the Commission's argument that its volume analysis also cited other data sources that "do[] not include any product that was reshipped out of the United States."  Commission's Comments at 13, ECF No. 182. The parties agree that portions of the Commission's volume analysis relied on "U.S. shipments data," which do not include re-exported product.  Commission's Comments at 12–13, ECF No. 182; *see also* OCP's Br. at 11–12, ECF No. 56.  The Commission's citations to this U.S. shipments data, however, are interwoven with its citations to the potentially inaccurate questionnaire data.  *See generally* Remand Results at 27– 29, ECF No. 145; *see, e.g.*, *id.* at 28 ("Although the *volume of cumulated imports* of subject phosphate fertilizers decreased … the *volume of U.S. shipments* of subject imports increased ….") (emphases added).  These blended citations make it impossible for the Court to discern if the Commission's volume findings can be sustained based solely on references to uncontested "U.S. shipments data."  *Compare* Commission's Comments at 13, ECF No. 182, *with NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009) ("[W]hile [the agency's] explanations do not have to be perfect, the path of [their] decision must be reasonably discernable to a reviewing court.") (citing *State Farm*, 436 U.S. at 43).  Remand is required.

## B. Price

Section 771 of the Tariff Act also requires the Commission to consider "the effect of imports of [subject] merchandise on prices in the United States for domestic

like products[.]" 19 U.S.C. § 1677(7)(B)(i)(II). The Commission found that low-priced subject imports caused price depression during the period of investigation. Views at 44, J.A. at 99,614, ECF No. 107; Remand Results at 56, ECF No. 145. In doing so, it ignored contradictory evidence in the record. First, it overlooked data that reveals domestic producers consistently oversold subject merchandise compared to importers. Second, the Commission failed to reckon with the fact that Mosaic is an undisputed price leader in the market. And third, the Commission relied on a lost sales figure that is undermined by questionnaire data. For these three reasons, the Court finds the price effects analysis is not supported by substantial evidence.

### i.    Overselling

In both the original Views and the Remand Results, the Commission found that an oversupply of low-priced imports in the U.S. market depressed prices. *See* Views at 44, J.A. at 99,614, ECF No. 107; Remand Results at 44, ECF No. 145 ("[O]versupply of subject imports and their low prices exerted downward pricing pressure on the domestic like product and significantly depressed U.S. prices in 2019."). Plaintiffs complain that the Commission reached its finding by ignoring evidence of prevalent overselling in the record. OCP's Comments at 23–25, ECF No. 155; EuroChem's Comments at 2, ECF No. 154; PhosAgro's Comments at 18–21; ECF No. 160; Koch's Comments at 7, ECF No. 163; IRM's Comments at 12, ECF No. 166; OCP's Reply at 6–9, ECF No. 200. The Commission responds that it adequately considered all of the evidence on the record. Commission's Comments at 28–29, ECF

No. 182; Simplot's Comments at 15–21, ECF No. 186; Mosaic's Comments at 21–23, ECF No. 188.

The statute provides that:

> ii) In evaluating the effects of imports of such merchandise on prices, the Commission shall consider whether —
>> I) There has been significant price underselling by the imported merchandise as compared with the price of domestic like products of the United States, and
>> II) The effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree.

19 U.S.C. § 1677(7)(C)(ii). In other words, the Commission must answer two distinct questions when conducting a price effects analysis. First, whether the subject imports were sold at lower prices than the domestic like product to a "significant" extent during the period of review. *Id.* § 1677(7)(C)(ii)(I). And second, whether the subject imports caused "significant" price depression or price suppression. *Id.* § 1677(7)(C)(ii)(II). "Price depression occurs when less-than-fair-value imports cause domestic industry to lower its prices." *CP Kelco US, Inc. v. United States*, 38 CIT 1511, 1513 n.4 (2014) (citing 19 U.S.C. § 1677(7)(C)(ii)(II)). In contrast, "Price suppression occurs when the less-than-fair-value imports prevent domestic industry from raising prices when it otherwise would." *Id.*

Here, the Commission found that imports undersold the domestic like product in 34 instances out of 170 total. Views at 37, J.A. at 99,607, ECF No. 107. Imports oversold domestic like product in the remaining 136 instances. *Id.* That means importers were selling subject merchandise at a *higher* price than their domestic counterparts eighty percent of the time. In nearly all instances, the disparity between

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 41 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 41

prices of imported and domestic merchandise was small.  *Id.* (noting that the average underselling margin was 1.7 percent and the average overselling margin was 3.7 percent); *see also* H'rg Tr. at 51:7–10, J.A. at 15,547, ECF No. 115 (Mr. Klett, Capital Trade Economist:  "[P]rices are close, with average over- or underselling margins within [what] one would expect for a commodity industry with transparent pricing."). Furthermore, 20 out of 24 purchasers reported that the domestic product was "comparable" to the product imported from Morrocco — as opposed to higher priced or lower priced.  Table II-9, Staff Report at II-26, J.A. at 98,422, ECF No. 107.  A similar number of purchasers, 20 out of 23, reported the same when comparing domestic product to product from Russia.  *Id.*

The Commission acknowledges that the imports were higher-priced eighty percent of the time but finds that the "low prices" of imports nonetheless depressed U.S. prices.  *See* Views at 39, 44, J.A. at 99,609, 99,614, ECF No. 107; Remand Results at 44, ECF No. 145.  The Commission explains that prices "tracked each other closely" overall and had "small margins of underselling and overselling."  Remand Results at 37, ECF No. 145.  It emphasizes that subject imports were lower priced "in some instances" — referencing the twenty percent — and states that those instances of underselling caused the domestic industry to lose sales.  *Id.*

This analysis is inadequate.  The statute directs the Commission to determine whether there has been "*significant* price underselling," and the Court doubts that a reasonable mind would consider twenty percent "significant."  19 U.S.C. § 1677(7)(C)(ii)(II) (emphasis added).  The agency seems to agree, as it has not found

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 42 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 42

significant underselling in other investigations with even more evidence of undersold imports. *See Tapered Roller Bearings from Korea*, Inv. No. 731-TA-1380, USITC Pub. 4806 (Aug. 2018) (finding no significant underselling where imports undersold domestic like product in 47 of 84 instances, or in 56 percent of instances); *Urea Ammonium Nitrate Solutions from Russia and Trinidad & Tobago*, Inv. No. 701-TA-668, USITC Pub. 5338 (Aug. 2022) (finding no significant underselling where imports undersold domestic like product in 39 of 108 instances, or in 36 percent of instances). The Commission may "reach[] different outcomes in cases with different circumstances." *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 718 (Fed. Cir. 2020). But that flexibility does not allow the Commission to leave out an explanation of how it analyzed a case's particular circumstances and arrived at its chosen outcome. *Burlington Truck Lines*, 371 U.S. at 168 (1962) (noting that the substantial evidence standard requires the agency to "articulate [a] rational connection between the facts found and the choice made").

The Court is not suggesting that the Commission must make a negative price effects finding whenever instances of underselling fail to meet some magic threshold. Such a holding would be contrary to the statute, which directs the Commission to consider both whether there has been significant underselling *and* whether there has been significant price depression or suppression. 19 U.S.C. § 1677(7)(C)(ii). But the Court is directing the Commission to account for its significant underselling finding in the face of contradictory data. A mere acknowledgment that there is contradictory evidence does not suffice. *PAO TMK v. United States*, 47 CIT __, No. 21-00532, 2023

Ct. Int'l Trade LEXIS 158, at *9 (Oct. 12, 2023) (explaining that the Commission "cannot simply avert its gaze from evidence that contradicts its determination"). Thus, the Court remands to the Commission to further explain or reconsider its underselling finding.

### ii. Price Leadership

The evidence of pervasive overselling is not the only contrary evidence the Commission fails to adequately address. The Commission's affirmative injury determination rests heavily on the notion that the domestic industry suffered from low-priced imports that depressed prices, especially imports entering the country through New Orleans. *See* Remand Results at 53–54, ECF No. 145. Evidence that the domestic industry — and Mosaic in particular — sets market prices tends to strongly refute the notion that imports depressed prices or undersold the domestic industry. To satisfy the substantial evidence standard, the Commission must account for this evidence.

The Commission's data suggest that the domestic industry — and in particular Mosaic — sets phosphate fertilizer prices in the United States. Eighteen purchasers reported that Mosaic is the industry price leader, multiple times more than the next most-cited company. Staff Report at V-8–9, J.A. at 98,470–71, ECF No. 202. Mosaic is the largest domestic producer in an increasingly consolidated domestic industry. Remand Results at 11, ECF No. 145. Purchasers indicated that Mosaic sets prices by "issu[ing] price lists that other firms follow" and "setting the barge market prices for Tampa … and New Orleans … by announcing price changes in those regions."

Staff Report at V-9, J.A. at 98,471, ECF No. 202. Mosaic accounts for the large majority of North American phosphate production. Staff Report at I-3, J.A. at 98,383, ECF No. 202. In contrast, only two purchasers listed EuroChem as a price leader; and two listed OCP. *See id.* at V-9, J.A. at 98,471, ECF No. 202.

By failing to account for this evidence, the Commission falls short of the substantial evidence standard. The standard requires an examination of the whole record, including the portions of the record that contradict the Commission's conclusion. *Suramerica*, 44 F.3d at 985 (quoting *Universal Camera Corp.*, 340 U.S. at 487–88). Here, there is detracting evidence — claims by numerous purchasers that Mosaic is a price leader. In fact, purchasers claim Mosaic's position in the market is so strong that other firms follow the prices it sets. *See* Staff Report at V-9, J.A. at 98,471, ECF No. 202. Such claims directly contradict the Commission's finding that low-priced imports depressed U.S. prices. Sellers in the market that are tracking Mosaic's prices cannot simultaneously be lowering their prices to compete with cheaper imports. The agency's failure to consider this important evidence of Mosaic's role as a price leader in the original Views or Remand Results is therefore a legal error requiring remand. On remand, the Commission must consider the evidence, and if it continues to find imports caused price depression, the Commission must provide a satisfactory explanation for its conclusion given the record evidence. *NuVasive*, 842 F.3d at 1382.

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 45 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 45

### iii.    Lost Sales

The Commission also fails to support its continued reliance on the lost sales figure used in its original Views with substantial evidence.  In the Remand Results, as in the original Views, the Commission relies on a lost sales figure of 733,895 short tons to support its conclusion that the domestic industry lost sales because of lower-priced imports.  *See* Views at 36, 38–39, J.A. at 99,608, ECF No. 107; Remand Results at 36–37, ECF No. 145.  The Commission draws this number from purchasers' responses to questions about purchasing imports instead of domestic fertilizer.  *See* Remand Results at 36, ECF No. 145 (citing Table V-9, Staff Report at V-24, J.A. at 98,486, ECF No. 107).  The vast majority of the lost sales figure comes from one purchaser's response.  *See* Staff Report at V-24, J.A. at 98,486, ECF No. 202.  In relying on this figure, the Commission ignores evidence that "fairly detracts from" its conclusion.  *Nippon Steel*, 337 F.3d at 1379.  This contrary evidence undermines the lost sales figure such that the Commission lacks an "adequate evidentiary basis" for relying on the figure and fails to "examine the relevant data and articulate a satisfactory explanation for its action."  *NuVasive*, 842 F.3d at 1382.

The responses to the Commission's questions about purchasing subject imports instead of domestically produced fertilizer do not allow a reasonable person to conclude that the domestic industry lost any significant amount of sales because of lower-priced imports.  Twenty-eight firms answered the Commission's questions.  Staff Report at V-24, J.A. at 98,486, ECF No. 202.  Seventeen of those firms indicated that they purchased subject imports instead of the domestic product at some point

during the period of investigation.  *Id.*  Only five indicated that a primary reason for

their purchase was that subject imports were lower priced.  *Id.*  Of those five, ▮▮ are

themselves domestic producers and one did not provide the actual quantity of its

alleged lost sales.  *Id.*

The Commission asked firms that purchased subject imports for non-price

reasons to indicate the non-price reason for their purchase.  *Id.*  Nine firms did, and

their responses were relatively consistent:  At least six indicated in some manner that

domestic product was unavailable.  *Id.*  Thus, more purchasers reported availability

as their primary reason for purchasing subject imports than price.  From responses

where less than one-fifth of firms indicated purchasing subject imports primarily for

price reasons and more firms indicated purchasing subject imports for availability

reasons, the Commission concludes that "the domestic industry lost sales" because of

lower-priced imports.  Remand Results at 37, ECF No. 145. Nowhere in its discussion

does the Commission explain how it draws this conclusion given the small portion of

firms that provided responses supporting this conclusion and the greater portion that

provided contradictory responses.  *Cf. State Farm*, 463 U.S. at 43 ("[T]he agency must

examine the relevant data and articulate a satisfactory explanation for its action

including a 'rational connection between the facts found and the choice made.'")

(quoting *Burlington Truck Lines*, 371 U.S. at 168).

The overwhelming majority of the 733,895 short ton lost sales figure is based

on an outlier response from just one purchaser.  *See* Staff Report at V-24, J.A. at

98,486, ECF No. 202; Remand Results at 36, ECF No. 145.  The outlier purchaser's

Case 1:21-cv-00219-SAV   Document 234   Filed 07/03/25   Page 47 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 47

reported lost sales are more than ▮ times those of any of the other firms that reported a lost sales quantity. *See* Staff Report at V-24, J.A. at 98,486, ECF No. 202. The outlier purchaser is also the only firm to designate all its subject import purchases as lost sales for the domestic industry. *See id.* at V-22, 24, J.A. at 98,484, 86, ECF No. 202. These discrepancies alone are enough to call into question the accuracy of the outlier purchaser's response.

When asked to clarify the reason for its purchases of subject imports, the outlier purchaser gave further cause to believe its response was not accurate. It reported that a majority of its subject import purchases were for price reasons. Remand Results at 36 n.168, ECF No. 145. But it also reported that there is not enough available domestic product to meet its purchasing needs and it sometimes purchases imports at a higher price than the going rate for domestic product when domestic product is unavailable. *Id.* Thus, the outlier purchaser admits that it made some of its import purchases for reasons other than price. In response to objections raised by the Plaintiffs, the Commission found that "the record does not support disregarding" the entirety of the outlier purchaser's reported lost sales. Remand Results at 36, ECF No. 145.

This may be true, but it does not follow that the Commission should rubber stamp the entirety of the outlier purchaser's reported lost sales. If the Commission wishes to credit some portion of the reported lost sales on remand, it must adequately explain this decision, including by addressing detracting evidence. Its failure to do

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 48 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 48

so in the lost sales portion of the Remand Results renders its lost sales determination

unsupported by substantial evidence.

## CONCLUSION

The record before the Commission raises serious questions about whether

domestic producers were able and willing to supply consumers during the period of

review. Questionnaire responses suggest that domestic producers were unable to

relocate their phosphate fertilizer inventories to meet new market demand; and

reports from phosphate fertilizer trading companies indicate that the largest

domestic producer — Mosaic — refused to sell to these companies. If domestic

producers were unable or unwilling to meet the needs of U.S. consumers, that would

create a supply gap. Any imports filling this gap would not materially injure domestic

producers because those imports would be making sales that U.S. producers

otherwise could not, or would not, make.

Rather than address this evidence to arrive at a reasonable conclusion about

the U.S. phosphate fertilizer market, the Commission talked past these issues. First,

it concluded that domestic producers can reship inventories at whatever quantities

are needed. That conclusion rests entirely on small-scale instances of reshipment

that no reasonable observer would believe proves the existence of a reship-at-will

capability. Second, the Commission found that significant volumes of imports

entered the U.S. market. This finding failed to adequately account for how Mosaic's

refusals to sell to domestic customers may have impacted import inflows. It also

failed to consider evidence showing some imports were exported to Canada rather

than sold to U.S. consumers. Third, the Commission concluded that imports

Case 1:21-cv-00219-SAV    Document 234    Filed 07/03/25    Page 49 of 50

Consol. Court No. 1:21-cv-00219 (SAV)                                      Page 49

significantly depressed U.S. prices and took sales from U.S. firms. Those conclusions did not grapple with the fact that imports only undersold domestic product in twenty percent of instances, that Mosaic was the price leader in the market, and that the Commission's evidence of lost sales came from a potentially flawed survey response.

These errors render the Remand Results unsupported by substantial evidence and not in compliance with the Court's remand order in *OCP I*. 47 CIT __, 658 F. Supp. 3d at 1324. It is therefore **ORDERED** that the case is **REMANDED** to the Commission for new action consistent with this opinion.[6] On remand, the Commission may take new evidence, reconsider existing evidence, or take any other action allowed by its procedures to come to a conclusion supported by substantial evidence. The Commission should take care to address each error identified by the Court and remedy each error in a manner supported by substantial evidence.

The Commission is directed to file its remand redetermination within 90 days of the date of this decision. Plaintiff shall have 30 days thereafter to file any

---

[6] Before this opinion could be published, the Commission filed a petition for a writ of mandamus at the Federal Circuit. *See* Notice of Docketing, ECF No. 222. That petition arises out of the Court's prior opinion in this case, which ordered the disclosure of non-confidential information that the Commission erroneously treated as confidential in the public record. *See OCP S.A. v. United* States, Consol. Court No. 1:21-cv-00219, Slip Op. No. 25-32 (CIT March 27, 2025). Unlike an ordinary appeal, a petition for a writ of mandamus does not divest this Court of jurisdiction over the underlying case. *Compare Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (noting that appeals of final orders "divest[] the district court of its control over those aspects of the case involved in the appeal"), *with Nascimento v. Dummer*, 508 F.3d 905, 910 (9th Cir. 2007) ("Petitions for extraordinary writs do not destroy the district court's jurisdiction in the underlying case."), *Clark v. Taylor*, 627 F.2d 284, 288 (D.C. Cir 1980) ("[T]he trial court had not lost its jurisdiction because the appellate court was entertaining an application for writ of mandamus."), *and Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1259 (10th Cir. 2022) ("But the filing of a mandamus petition didn't divest the district court of jurisdiction."). None of the information in this opinion is properly characterized as confidential.

Consol. Court No. 1:21-cv-00219 (SAV)                                    Page 50

comments on the remand redetermination. Plaintiff-Intervenors and the Consolidated Plaintiff shall have 14 days after the filing of Plaintiff's comments to file their own comments. The Commission shall file its comments within 30 days of the filing of Plaintiff-Intervenors' and the Consolidated Plaintiff's comments. Defendant-Intervenors shall file their comments within 14 days of the filing of the Commission's comments. Plaintiff shall have the option of filing a reply to these comments, due 30 days from the filing of Defendant-Intervenors' comments. On remand, unless directed otherwise by the Federal Circuit, the Commission must (1) comply with this Court's previous opinion when determining which information deserves confidential treatment and (2) correct the public version of the record to reveal the wrongfully redacted information. *See OCP S.A. v. United States*, Consol. Court No. 1:21-cv-00219, 49 CIT __, 2025 Ct. Intl. Trade LEXIS 32 (Mar. 27, 2025).

        **SO ORDERED**.


                                                 /s/ Stephen Alexander Vaden
                                                Stephen Alexander Vaden, Judge


Dated:  April 22, 2025
        New York, New York