# United States Court of Appeals
# for the Federal Circuit

---

**IN RE UNITED STATES,**
*Petitioner*

---

2025-127

---

On Petition for Writ of Mandamus to the United States Court of International Trade in No. 1:21-cv-00219-SAV, Judge Stephen A. Vaden.

---

Decided: February 2, 2026

---

COURTNEY SHEEHAN MCNAMARA, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for petitioner United States. Also represented by MARGARET D. MACDONALD, KARL VON SCHRILTZ; ELIZABETH ANNE SPECK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC.

ALEXANDRA H. MOSS, Public Interest Patent Law Institute, La Quinta, CA, argued as amicus curiae counsel.

---

Before DYK, TARANTO, and CHEN, *Circuit Judges*.

DYK, *Circuit Judge*.

In a countervailing duty or antidumping investigation, the International Trade Commission (the "Commission") issues questionnaires to parties and third parties to collect relevant information. The Commission has adopted the practice of automatically designating questionnaire responses as confidential without regard to whether that information is designated confidential by the submitting party and without regard to whether the submitted information would be entitled to confidential treatment under the governing statute. 19 U.S.C. §§ 1516a, 1677f. The Court of International Trade ("CIT") held that section 1516a(2)(b) of the statute (providing that "the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order") does not abrogate the common law right of access to records of judicial proceedings and, in any event, that the Commission's confidentiality practices are not consistent with the statute. The Commission petitions this court for a writ of mandamus primarily to compel the CIT to retain the confidentiality of questionnaire responses and to permit the Commission to continue its practice of automatically designating questionnaire responses as confidential.

We conclude that a writ of mandamus is unavailable but treat the Commission's petition as a notice of appeal and find the appeal proper under the collateral order doctrine. On the merits, we conclude that section 1516a does not abrogate the common law right of access; that the Commission's practice of designating all questionnaire responses as confidential is incompatible with the statute; and that the CIT's order directing the Commission on remand to proceed in accordance with the statute is not contrary to the law. Accordingly, we affirm.

## BACKGROUND

### I

Congress created the Commission as an independent agency in 1916 to conduct investigations in international trade matters.[1] In its early years, the Commission acted primarily in an advisory capacity to Congress and the President. In 1919, the Commission published a report on dumping—the sale of imported merchandise to the United States for less than its fair value—and recommended that Congress enact legislation to combat that practice. The Commission's report helped spur the Antidumping Act of 1921, which authorized the Secretary of the Treasury to determine whether dumping was taking place and whether it was likely to injure an industry in the United States. Antidumping Act of 1921, Pub. L. No. 67-10, § 201, 42 Stat. 9, 11. If the Secretary made such findings, the statute provided for the imposition of special duties on dumped merchandise. *Id.* § 202, 42 Stat. at 11–12. An appeal was available to the United States Court of Customs Appeals. *Id.* § 210, 42 Stat. at 15.

The Commission's involvement in such proceedings as an adjudicatory body began in 1954, when Congress amended the Antidumping Act and charged the Commission with making material injury determinations after a finding of dumping by the Secretary of the Treasury. Customs Simplification Act of 1954, Pub. L. No. 83-768, § 301, 68 Stat. 1136, 1138. In 1974, Congress required that Treasury also impose countervailing duties (the type

---

[1]    The history described here is supported by Will E. Leonard & F. David Foster, *The Substantive and Institutional Evolution of the U.S. Tariff Commission/U.S. International Trade Commission (1917–2016), in* A CENTENNIAL HISTORY OF THE UNITED STATES INTERNATIONAL TRADE COMMISSION 121, 122–41 (2017).

of duties involved here) on subsidized imports that could materially injure an industry in the United States. Trade Act of 1974, Pub. L. No. 93-618, § 331, 88 Stat. 1978, 2049–50. Congress again tasked the Commission with making the necessary injury determinations. *Id.* The Secretary of the Treasury's functions were transferred to the Secretary of Commerce in 1979. Reorganization Plan No. 3 of 1979, § 5(a), 93 Stat. 1381, 1383. Congress subsequently revised the antidumping and countervailing duty statutes and established the modern investigation structure. Trade Agreements Act of 1979, Pub. L. No. 96-39, § 106, 93 Stat. 144, 193.

Under current law, an antidumping or countervailing duty investigation is initiated when an interested party files a petition with the Secretary of Commerce and the Commission on behalf of an industry. 19 U.S.C. §§ 1671a(a), (b)(1)–(2), 1673a(a)(1), (b)(1)–(2); *see also* 19 U.S.C. § 1677(9). If Commerce determines an investigation is warranted, Commerce will initiate a full-fledged investigation. 19 U.S.C. §§ 1671a(c)(2), 1673a(c)(2). At the same time, the Commission investigates "whether there is a reasonable indication" that such practice will materially injure, or threaten to materially injure, an industry in the United States. 19 U.S.C. §§ 1671b(a)(1)(A), 1673b(a)(1)(A); *see also* 19 U.S.C. §§ 1677(1), 1677(7)(A). To make this determination, the Commission must consider "(I) the volume of imports of the subject merchandise, (II) the effect of imports of that merchandise on prices in the United States for domestic like products, and (III) the impact of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States". 19 U.S.C. § 1677(7)(B)(i). Then, the Secretary of Commerce makes a preliminary and final determination whether either impermissible subsidization or dumping is occurring. 19 U.S.C. §§ 1671b(b), 1671d(a)(1), 1673b(b), 1673d(a)(1). The

Commission makes a final material injury determination. 19 U.S.C. §§ 1671d(b)(1), 1673d(b)(1).  Both Commerce's and the Commission's final determinations are appealable to the CIT.  19 U.S.C. § 1516a(a)(2)(B)(i)–(ii).

## II

In determining whether there is material injury, the Commission need not rely solely on information submitted by parties but may itself collect relevant information from the parties to the investigation and from third parties. *See* 19 U.S.C. § 1333(a).  The Commission is authorized to request and copy "any document, paper, or record, pertinent to the subject matter under investigation, in the possession of any person, firm, copartnership, corporation, or association engaged in the production, importation, or distribution of any article under investigation." *Id.*  One way the Commission gathers information for antidumping and countervailing duty investigations is through questionnaires directed to domestic producers, importers, purchasers, and foreign producers of the covered product. U.S. Int'l Trade Comm'n, *Import Injury Questionnaires – Frequently Asked Questions* (2023), https://www.usitc. gov/documents/import_injury_faqs_2023.pdf.   The Commission is also permitted to issue and enforce subpoenas against any person, firm, copartnership, corporation, or association with relevant information.    19 U.S.C. § 1333(b).  Included in the information collected by the Commission is confidential business information.  *Frequently Asked Questions*, *supra*; *see also* S. Rep. 100-71, at 112 (1987).  The Commission's opinions rely on such information, as does the CIT and our court in reviewing the Commission's decisions.

Nothing in the early legislation provided for public disclosure of the information collected by the Commission. The centrality of business information to the investigative process, the need to protect confidential information, and the importance of public access to information relied on by

the Commission and the courts, led Congress to adopt an approach that balances the competing interests in confidentiality and public disclosure. S. Rep 100-71, at 111–14. As we describe in detail below, the statute requires submitters to specifically designate information sought to be protected as confidential. 19 U.S.C. § 1677f(b)(1)(A). The statute also specifies categories of information that are not entitled to protected status, requires the Commission to publicly release information not properly designated as confidential, bars the Commission from releasing information properly designated as confidential, and leaves to the courts the decision as to what information should be treated as confidential on appeal applying the common law right of access. *See* 19 U.S.C § 1677f. The statute also contemplates that if disclosure is ordered, the CIT must give the Commission and the parties the opportunity to object before the information is released. *Id*.

### III

This dispute arises from a countervailing duty investigation of phosphate fertilizers from Morocco and Russia. On June 26, 2020, the Mosaic Company ("Mosaic"), a domestic phosphate producer, filed a petition with Commerce and the ITC alleging that an industry in the United States was being materially injured by subsidized phosphate fertilizers imported from Morocco and Russia. The Commission issued questionnaires to third parties to collect relevant information for the investigation and, in accordance with past practice, determined that the responses to those questionnaires should be treated as confidential in their entirety, whether or not confidential status was requested by the submitter. On February 16, 2021, Commerce published its final determination that countervailable subsidies were being provided to foreign producers and exporters of phosphate fertilizers. On April 5, 2021, the Commission published its final injury determination and it found that an industry in the United States was being materially injured by these imports.

On June 4, 2021, OCP S.A. ("OCP"), a Moroccan phosphate producer and exporter, sought review of the Commission's final injury determination with the CIT. *See* 19 U.S.C. § 1516a. OCP argued that the Commission's volume, price, impact, and causation findings were not supported by substantial evidence. The CIT initially held that the Commission's injury determination was "grounded . . . on an unsupported assumption that fertilizer could be reshipped from one destination to another to meet existing demand" that affected its volume, price, and impact findings and remanded the case to the Commission for further proceedings. App'x 70.[2] The Commission conducted these proceedings and filed a final injury redetermination, again subject to review by the CIT.

The remand redetermination and administrative record contained "heavy redactions." App'x 5. On February 29, 2024, the CIT ordered a hearing "[t]o gain a better understanding of the justification for the redactions." App'x 71–72. Attached to that order were two tables listing information from the record that the CIT believed was improperly redacted. The CIT held the hearing on March 29, 2024. No party presented fact witnesses on the issue of confidentiality. The Commission explained that it automatically treats information submitted through a questionnaire as confidential, unless a commissioner requests that staff make a determination on whether information was properly designated.

After the hearing, the court ordered additional briefing on the alleged confidential information. The Commission and two private parties—Mosaic and The J.R. Simplot Company ("Simplot")—filed briefs. In its brief, the Commission reiterated its position that all information collected through questionnaires is confidential.

---

[2] Citations to the App'x refer to the Appendix submitted by the Commission with its petition.

The Commission and the parties also addressed the need for confidential treatment of items identified in the CIT's chart. The Commission argued that certain specific pieces of information listed in the chart should be treated as confidential. Mosaic objected to the disclosure of certain listed information regarding its production and distribution networks and its export markets but expressly stated that it did not claim confidential treatment for other items. Simplot argued that certain listed information regarding its warehouse locations, purchasing, and operational practices posed a competitive risk if disclosed.

On March 27, 2025, the CIT issued a thorough opinion and order (the "Confidentiality Opinion and Order") concluding that section 1516a of the statute does not abrogate the common law right of access and permits the CIT to release information that the CIT finds is not properly entitled to confidential treatment. The CIT determined that the Commission's practice of automatically treating questionnaire responses as confidential was not authorized by law, and concluded that the Commission improperly redacted the public record based on erroneous confidentiality designations that "meet[] neither the statutory nor regulatory standards," App'x 11, including by designating publicly available information, general characterizations not revealing the specific operations of any company, or stale information as confidential.

As for the specific information identified in the confidentiality hearing, the CIT concluded that only one piece of information was entitled to confidential treatment. The bulk of the information was not confidential because it was publicly available, generalized, or stale and outdated and thus unlikely to cause competitive harm. The CIT permitted information that identifies the number of Mosaic's customer-owned warehouses and other space arrangements to remain confidential because "Mosaic has guarded the types of space arrangements it has with its customers from public view and release of that infor-

mation would give Mosaic's competitors insight into its private contracts with customers." App'x 47.

The CIT also ordered the Commission "[i]n further proceedings in the underlying case" to:

1) Treat as public the information identified in Section IV of this opinion as not entitled to confidential treatment; and

2) Consistent with this opinion, abide by the statutes and regulations governing confidential treatment of information in filings of any kind with the Court.

*Id.* at 48.

We read this as ordering the Commission to eliminate improper confidential treatment in future filings with the CIT in this case and to require the Commission in future remand proceedings in this case to conform to the CIT's determination as to the confidential status of particular material. We do not read the order as directing the Commission to treat as public particular information in the record of the Commission's own proceedings other than the information specifically referenced in the Confidentiality Opinion and Order.

On April 7, 2025, the Commission filed a petition for a writ of mandamus with this court primarily requesting that we compel the CIT to retain the confidentiality of questionnaire responses and to permit the Commission to continue its practice of automatically designating questionnaire responses as confidential and treating material as confidential based on specific claims of confidentiality. It argued that sections 1516a and 1677f of the statute give the Commission broad authority to designate information as confidential and that the Commission's practice of automatically designating questionnaire responses as confidential is permitted by the statute.

On April 22, 2025, the CIT issued a second merits opinion and order under seal, finding that "the Commission's [merits] determination on reshipment remains unsupported by substantial evidence" and that "the Commission has not adequately supported certain findings regarding its volume and price effects analyses." Confidential Order at 17, *OCP S.A. v. United States*, No. 1:21-cv-219 (Ct. Int'l Trade Apr. 22, 2025), Dkt. No. 224 (sealed). The CIT reiterated in its Order that "[o]n remand, unless directed otherwise by the Federal Circuit, the Commission must (1) comply with [the Confidentiality Opinion and Order] when determining which information deserves confidential treatment and (2) correct the public version of the record to review the wrongfully redacted information." App'x 79.

The Commission did not file a new mandamus petition or appeal based on the confidentiality aspects of the April 22 merits opinion and order. Nor did any other party seek review of that opinion and order on those grounds. However, on April 29, 2025, in its reply brief in support of its petition for a writ of mandamus, the Commission asked this court to order the CIT to issue a public version of its second merits opinion with redactions of information believed by the Commission to be confidential. We denied the government's motion without prejudice to renew its request after first asking the CIT for relief. On June 20, 2025, the Commission filed an unopposed motion asking the CIT to publish its merits opinion with redactions. The Commission primarily supported its proposed redactions on the ground that the information originated in questionnaire responses. The CIT offered the parties an opportunity to submit responses to the Commission's motion, but no party responded in either support or opposition.

On July 3, 2025, the CIT denied the Commission's motion and rejected the requested redactions, concluding that the Commission "fail[ed] to allege any specific, con-

crete harm that would arise should the Court not make the requested redactions." Op. at 26, *OCP S.A.*, No. 21-cv-219 (Ct. Int'l Trade July 3, 2025), Dkt. No. 233. Nevertheless, the CIT agreed to "issue a public version of the *OCP Merits Decision* with the redactions temporarily included to respect the Federal Circuit's review of the Commission's mandamus petition." *Id.* Again, the Commission did not file a new petition or appeal challenging the CIT's decision rejecting its requested redactions. Nor did any other party. We now consider the government's petition for a writ of mandamus.[3]

## DISCUSSION

We first consider what issues are properly before us. The CIT issued three relevant opinions and orders in this case: the Confidentiality Opinion and Order, the second merits opinion, and the order rejecting the Commission's requested redactions in the public version of the second merits opinion. The Commission's petition for a writ of mandamus only addressed the Confidentiality Opinion

---

[3] This case was consolidated with an appeal of a CIT decision related to antidumping duty orders on mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam, as well as a countervailing duty order on mattresses from China, docketed as No. 2024-1566. We appointed two Amici to argue on behalf of the CIT in the two cases. Andrew J. Dhuey submitted a brief discussing the mattress case. Alexandra H. Moss submitted a brief discussing both cases. We thank Mr. Dhuey and Ms. Moss for their briefing and argument supporting the CIT's actions. The CIT also submitted a letter in response to the Commission's petition. The Customs and International Trade Bar Association and International Trade Commission Trial Lawyers Association submitted amicus briefs supporting in part the Commission's position.

and Order. The Commission did not file a new petition or appeal the CIT's subsequent opinions and orders even though a challenge to such opinions and orders is mentioned in the Commission's mandamus reply brief. As such, our review is limited to the Confidentiality Opinion and Order.

In considering the Confidentiality Opinion and Order, this case requires us to decide three principal issues: first, whether we have jurisdiction and whether the Commission has standing; second, whether the relevant statutes abrogate the common law right of access to judicial proceedings; and third, whether the CIT's order concerning future proceedings and confidentiality designations is consistent with the statute.

I

Pursuant to the All Writs Act, this court has the authority to issue a writ of mandamus as "necessary or appropriate in aid of" our jurisdiction. 28 U.S.C. § 1651(a). "A party seeking a writ bears the burden of proving 'that its right to issuance of the writ is clear and indisputable, . . . and that it lacks adequate alternative means to obtain the relief sought.'" *In re MSTG, Inc.*, 675 F.3d 1337, 1341 (Fed. Cir. 2012) (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000) (omission in original)).

There is no right to mandamus where there is an adequate remedy by appeal. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). This condition is "designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id.* at 380–81. The Commission has not shown that it lacked an adequate remedy on appeal with respect to the Confidentiality Opinion and Order because the Confidentiality Opinion and Order was appealable.

Here the Confidentiality Opinion and Order was interlocutory, which ordinarily would not be immediately appealable. However, the collateral order doctrine permits the appeal of "trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal," *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430–31 (1985), even though our jurisdictional statute provides for review of "final decision[s]," 28 U.S.C. § 1295(a)(5). "For the collateral order doctrine to apply, an order must meet three requirements; it must (1) 'conclusively determine the disputed question'; (2) 'resolve an important issue completely separate from the merits of the action'; and (3) 'be effectively unreviewable on appeal from a final judgment.'" *DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1368 (Fed. Cir. 2021) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013)).

The CIT's Confidentiality Opinion and Order satisfies all three conditions. First, the CIT conclusively interpreted the relevant statutes and regulations in its opinion and held that the Commission cannot automatically treat questionnaire responses as confidential. It also determined that, with limited exceptions, the redacted information did not meet the statutory or regulatory requirements for confidential treatment and should be filed publicly. This "conclusively determined" all disputed issues. *Id.*

Second, the confidentiality issue is separate from the merits of the countervailing duty investigation and "implicates the 'important balance between the public's interest in understanding judicial proceedings and the parties' right to access the courts without being unduly required to disclose confidential information.'" *Id.* (quoting *Apple*, 727 F.3d at 1220).

Third, the Confidentiality Opinion and Order could not be meaningfully reviewed after a final judgment because the information, "once disclosed to the public, could not be made confidential again." *Id.*; *see also Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1358 (Fed. Cir. 2020) ("[O]nce the parties' confidential information is made publicly available, it cannot be made secret again." (internal quotation marks and citation omitted)); *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again."). In *DePuy*, we similarly held that we possessed jurisdiction to review on appeal a district court order requiring that an amended complaint be filed on the public record under the collateral order doctrine. *DePuy*, 990 F.3d at 1368–69.

The CIT released its Confidentiality Opinion and Order in this case on March 27, 2025. An appeal to this court from the Confidentiality Opinion and Order was available and timely on April 4, 2025, the date the petition was filed. We have jurisdiction over appeals from final decisions of the CIT, including orders appealable under the collateral order doctrine. 28 U.S.C. § 1295(a)(5); *see IQE PLC v. Newport Fab, LLC*, 155 F.4th 1370, 1376 (Fed. Cir. 2025) ("Our appellate jurisdiction is typically limited to 'a final decision of a district court.' 28 U.S.C. § 1295(a) . . . . But '[t]he collateral order doctrine is a narrow exception to the usual rule of finality.'" (quoting *DePuy*, 990 F.3d at 1368) (alteration in original)); *see also Viraj Grp. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003) (analyzing the collateral order doctrine in the context of the CIT).

Under these circumstances, where a collateral order appeal is available, we conclude it is appropriate to treat petitioner's mandamus petition as a notice of appeal because petitioner filed its mandamus petition within the time limit for filing a notice of appeal, Fed. R. App. P. 4(a)(1)(B), and it contains all the information required

by Rule 3(c)(1). *See In re Bethesda Mem'l Hosp., Inc.*, 123 F.3d 1407, 1408–09 (11th Cir. 1997) (collecting cases and finding "precedent permits us to treat the petition for the writ of mandamus as a direct appeal"); *In re Urohealth Sys., Inc.*, 252 F.3d 504, 507 (1st Cir. 2001) (collecting cases and concluding it was appropriate to treat a mandamus petition as an appeal); *Madej v. Briley*, 371 F.3d 898, 899 (7th Cir. 2004) (treating a petition as a notice of appeal because the district court entered an appealable order and the petition contained the information required by Fed. R. App. P. 3); *see also United States v. Aldawsari*, 683 F.3d 660, 662 (5th Cir. 2012) (directing the district court to docket the petition as a notice of appeal because an interlocutory appeal was an available remedy).

The CIT, however, suggests that the Commission lacks standing to challenge the CIT's order with respect to confidentiality. We disagree. The Commission clearly has standing to challenge the order because disclosure of properly designated confidential business information could adversely affect the ability of the Commission to collect necessary information and to perform its statutory adjudicative functions. *See In re United States*, 669 F.3d 1333, 1336–37 (Fed. Cir. 2012) (concluding the government had standing to challenge decision on confidentiality of taxpayer information because the "tax system hinges on the willingness of taxpayers to provide such information").

## II

Turning to the merits, we first consider whether the statute abrogates the common law right of access.

The Supreme Court has recognized "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *accord DePuy*, 990 F.3d at 1369; *Uniloc*, 964 F.3d at 1358; *In re Violation*

*of Rule 28(D)*, 635 F.3d 1352, 1356 (Fed. Cir. 2011); *see also Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) ("Judicial records belong to the American people; they are public, not private, documents."). "The common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'" *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)). This right of access also "supports 'the citizen's desire to keep a watchful eye on the workings of public agencies.'" *Uniloc*, 964 F.3d at 1358 (quoting *Nixon*, 435 U.S. at 598). There is a strong presumption in favor of a common law right of access to documents filed in court proceedings. *See Nixon*, 435 U.S. at 597–99; *DePuy*, 990 F.3d at 1369; *In re Violation of Rule 28(D)*, 635 F.3d at 1356–57.

Despite the strong presumption in favor of access, this common law right is not absolute. *Nixon*, 435 U.S. at 598. In *Nixon*, the Supreme Court recognized that courts may deny access to business information where disclosure "might harm a litigant's competitive standing." *Id.* (citing *Schmedding v. May*, 85 Mich. 1, 5–6 (1891); *Flexmir, Inc. v. Herman*, 40 A.2d 799, 800 (N.J. Ch. 1945)). Similarly, we have stated that "a party's 'proprietary interest in information sometimes overcomes the interest of the public in accessing the information,'" when there is "some threatened harm to 'a litigant's competitive standing' to justify sealing business information contained in a judicial record." *DePuy*, 990 F.3d at 1370, 1372 (quoting *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007)).

The Commission argues that section 1516a(b)(2)(B) of the statute abrogates the common law right of access. We disagree. That section provides:

> The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, <u>and may disclose such material under such terms and conditions as it may order</u>.

19 U.S.C. § 1516a(b)(2)(B) (emphasis added).

"[W]hen a statute covers an issue previously governed by the common law [here the common law right of access], we must presume that Congress intended to retain the substance of the common law." *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 538 (2013) (internal quotation marks and citations omitted) (alteration in original). "In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534, (1993) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618 (1978)).

Here, the statutory text, which is the surest evidence of Congressional intent, does not provide the necessary clarity to abrogate the common law. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012). The Commission argues that this provision requires that the CIT maintain the confidential status the Commission affords to documents and bars disclosure except under a protective order. This is not an accurate description of the statute. Section 1516a(b)(2)(B) explicitly states that "[n]otwithstanding" the Commission's affording of confidential treatment, the CIT may disclose materials "under such terms and conditions as it may order." *Id.* Contrary to the Commission's argument, the statute provides that the CIT is not bound by the Commission's confidentiality designations.

The Commission contends that even if the statutory language is broad, the legislative history clarifies that

section 1516a(b)(2)(B) permits disclosure only under the terms of a protective order. The plain language of the statute cannot be contravened by the legislative history here. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42 (1989). And the legislative history in any event does not support the Commission's view. The Commission purports to find support in a sentence in the Senate report accompanying section 1516a, which states "[s]pecial provision would be made in subsection (b)(2)(B) for preserving the confidential or privileged status of any materials contained in this record, including, where the court determines it would be appropriate, the disclosure of the privileged or confidential materials only under the terms of a protective order." S. Rep. No. 96-249, at 248. This reliance is misplaced. The Senate report's "including" language simply emphasizes that disclosure under a protective order is one mechanism that the CIT may adopt to protect confidential information. It does not suggest the CIT is barred from requiring the public disclosure of information when the CIT determines it is appropriate.[4]

Failing to find support in the statutory language, the Commission argues that section 1516a is comparable to the Bankruptcy Code which has been held to override the common law right of access. Section 107 of the Bankruptcy Code provides that papers filed in the dockets of a bankruptcy court are "public records and open to examination," 11 U.S.C. § 107, but section 107(b) limits access

---

[4]  The CIT noted in its Confidentiality Opinion and Order that the Commission's practice also runs afoul of U.S. Ct. Int'l Trade R. 5(g), which requires parties submitting papers containing confidential information to identify that information by enclosing it in brackets. We need not determine the import of this rule in view of our interpretation of the statute.

to this information, stating: "On request of a party in interest, the bankruptcy court shall . . . (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."

The Third Circuit bankruptcy case on which the Commission relies itself makes clear that the language of the bankruptcy code is materially different from the language of section 1516a. In *In re ESML Holdings Inc*, 135 F.4th 80 (3d Cir. 2025), the Third Circuit concluded that section 107(b) displaces the common law. 135 F.4th at 96–97. Under Third Circuit precedent as to the common law right of access, a party would need to show "not only a protected category of information—which would include trade secrets or other confidential commercial information—but also that the disclosure of this information 'will work a clearly defined and serious injury to the party seeking closure.'" *Id.* at 96 (quoting *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019)). The common law doctrine "permits courts to exercise their discretion by weighing whether 'the [proponent's] interest in secrecy outweighs the presumption [of public access].'" *Id.* (alterations in original) (quoting *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986). But the Bankruptcy Code requires sealing any "trade secret or confidential research, development, or commercial information" upon the request of a party and uses the mandatory term "shall," "meaning the bankruptcy court lacks discretion to decline to protect covered information." *Id.* Because the bankruptcy code left no discretion to the court to disclose relevant information, the Third Circuit held that it abrogated the common law right of access.

Similarly, in *In re Orion Pictures Corp.*, 21 F.3d 24 (2d Cir. 1994), the Second Circuit concluded that section 107(b) abrogates the common law right of access because "if the information fits any of the specified categories, the court is required to protect a requesting interested party and has no discretion to deny the application." 21 F.3d at 27 (emphasis omitted). This is contrary to the Second Circuit's understanding of the common law where ordinarily "a judge must carefully and skeptically review sealing requests to [e]nsure that there really is an extraordinary circumstance or compelling need." *Id.*

Unlike section 107(b), section 1516a(b)(2)(B) does not specify any information that warrants blanket confidentiality protection and recognizes the CIT's authority to determine what information should be disclosed and the terms under which disclosure should occur. Instead of displacing the court's common-law discretion, section 1516a affirms that the court "may examine" and "may disclose" confidential material. 19 U.S.C. § 1516a(b)(2)(B). As such, we find no support for the Commission's argument based on the bankruptcy statute cases, and we conclude that section 1516a preserves the common law right of access.

## III

The Commission nonetheless argues that even if section 1516a itself does not restrict the court's ability to disclose information designated as confidential, section 1677f restricts the Commission and these same restrictions should apply to the CIT. But those statutory provisions are directed to the Commission, not the CIT, which is governed by a separate provision, section 1516a. In this respect, section 1677f is similar to the Dodd-Frank Act provision at issue in *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017). The statute in *MetLife* stated, "[t]he Council, the Office of Financial Research, and the other member agencies shall

maintain the confidentiality of any data, information, and reports submitted under this subchapter." *Metlife*, 865 F.3d at 669 (alteration in original) (quoting 12 U.S.C. § 5322(d)(5)(A)). Notably, that provision did not mention the courts. *Id.* The D.C. Circuit concluded that the statute did not abrogate the common law right of access because it was reasonable to assume "Congress would not have overturned the longstanding presumption favoring judicial transparency by a provision that mentions executive agencies but not the judiciary." *Id.* So too here, Congress did not displace the common law right of access applicable to the CIT in a statute that applies only to the Commission.

Not only does section 1677f not apply to the CIT, but the Commission is simply mistaken as to the scope of the statutory restrictions even as applied to the Commission itself.

First, the Commission's practice of automatically designating all questionnaire responses as confidential is not authorized by the statute. To the contrary, the statute requires the public disclosure of "any information submitted in connection with a proceeding which is not designated as proprietary by the person submitting it." 19 U.S.C. § 1677f(a)(4)(B). When the Commission treats the entirety of the questionnaire responses as confidential (without a request by the party submitting it), it does not fulfill its obligation to release non-confidential information. The Commission's practice of designating the responses to questionnaires as confidential, without regard to confidentiality markings, cannot override the applicable statute.

Despite the clarity of the statutory language, the Commission argues that its automatic confidentiality designations are supported by section 201.6(a)(1) of its regulations, which permits the nondisclosure of information which "is likely to . . . impair[] the Commission's

ability to obtain such information as is necessary to perform its statutory functions." 19 C.F.R. § 201.6(a)(1), (g). According to the Commission, disclosure of any part of questionnaire responses is likely to impair its ability to obtain information. This concern is not supported by any evidence.[5] The Commission has mechanisms to force parties to respond to its questionnaires. Section 1333(a) permits the Commission to issue and enforce subpoenas "[f]or the purposes of carrying out its functions and duties in connection with any investigation authorized by law." 19 U.S.C. § 1333(a). In fact, its questionnaires note on the first page: "This report is mandatory and failure to reply as directed can result in a subpoena or other order to compel." *See, e.g.*, U.S. Int'l Trade Comm'n, *U.S. Producers' Questionnaire* (2024), available at https://www.usitc.gov/documents/us_produce rs_questionnaire-original.pdf.

Second, the submitter's request that material be treated as confidential is not determinative. The statute prohibits the Commission from disclosing "information submitted to the administering authority or the Commission which is designated as proprietary by the person submitting the information . . . without the consent of the

---

[5] It is notable that the International Trade Court Trial Lawyers Association ("ITC TLA"), which submitted an amicus brief in support of the Commission, took "no position on whether the information at issue . . . was, in fact confidential." Brief for ITC TLA as Amicus Curiae Supporting the Commission at 5, *In Re United States*, No. 24-1566 (Fed. Cir. Oct. 9, 2025). It sought only to "make known its position that information designated as confidential by a producing party to any action before the ITC cannot later be made public *sua sponte* by an adjudicative officer without following the process to receive and consider input from the producing party." *Id.*

person submitting the information." 19 U.S.C. § 1677f(b)(1)(A). However, the structure of the statute, which provides that not all information designated as confidential is *properly* designated and the recognition of the importance of public access, makes clear that only information properly designated is entitled to confidential treatment. The legislative history of section 1677f of the statute confirms that only information "properly designated as confidential by the person submitting it shall not be disclosed." S. Rep. 96-249, at 99 (emphasis added).

Third, certain categories of information are not entitled to confidential treatment. Section 1677f only protects "proprietary" information, which is information in which the owner has a protectable interest. *See Proprietary*, BLACK'S LAW DICTIONARY (6th ed. 1990). Any designation of information "availabl[e] from public sources" as proprietary is improper. 19 U.S.C. § 1677f(b)(2).[6] The statute

---

[6] Significantly, each blank questionnaire includes a section called "Confidentiality," which reiterates the law:

> The commercial and financial data furnished in response to this questionnaire that reveal the individual operations of your firm will be treated as confidential by the Commission to the extent that such data are not otherwise available to the public and will not be disclosed except as may be required by law (see 19 U.S.C. § 1677f). Such confidential information will not be published in a manner that will reveal the individual operations of your firm; however, general characterizations of numerical business proprietary information (such as discussion of trends) will be treated as confidential business infor-

provides for the disclosure of "any proprietary information received in the course of a proceeding if it is disclosed in a form which cannot be associated with, or otherwise be used to identify, operations of a particular person." 19 U.S.C. § 1677f(a)(4)(a). The owner of stale information does not have a proprietary interest in it, and the Commission's own regulations (19 C.F.R. § 201.6(a)) define "[c]onfidential business information" as "information . . . causing substantial harm to the competitive position of the person, firm, partnership, corporation, or other organization from which the information was obtained."[7] In other words, outdated information is not entitled to confidential treatment unless disclosure of the information would cause substantial competitive harm. Stale information typically will not cause substantial competitive injury.

The Commission alternatively argues that the only remedy for improperly designated information is the return of such information at the time of submission.[8]

---

　　mation only at the request of the submitter for good cause shown.

See *U.S. Producers' Questionnaire*, *supra*.

[7]　Confidential information is also information "the disclosure of which is likely to . . . impair[] the Commission's ability to obtain such information as is necessary to perform its statutory functions" (a consideration not satisfied here). *See* 19 C.F.R. § 201.6(a).

[8]　Pursuant to 19 U.S.C. § 1335, which authorizes the Commission to "adopt such reasonable procedures and rules and regulations as it deems necessary to carry out its functions and duties," the Commission has promulgated regulations governing the collection and designation of confidential business information. Section 201.6(b) sets out the procedure for requesting confidential treatment

This is incorrect. The statute, which permits the return of improperly designated information, *see* 19 U.S.C. § 1677f(b)(2), does not provide that this is an exclusive remedy. Rather, it requires information not properly designated as confidential be published, *see* 19 U.S.C. § 1677f(a)(4)(B). Accordingly, the CIT correctly determined that the Commission's practice was inconsistent with the statute.

## IV

The Commission contends that the CIT's Confidentiality Opinion and Order requires that the Commission violate the law. The Confidentiality Opinion and Order states that the Commission shall, "[i]n further proceedings in the underlying case," "[t]reat as public the information identified in Section IV of [that] opinion as not entitled to confidential treatment" and "abide by the statutes and regulations governing confidential treatment of information in filings of any kind with the Court." App'x 48. We have already determined that it is the Commission's current practice that is contrary to the statute. This order merely recognizes the affirmative

for information from the Commission. 19 C.F.R. § 201.6(b). After receiving a request, the Commission's Secretary must approve or deny the request in writing. 19 C.F.R. § 201.6(d). To request proprietary designations, an interested party must submit to the Commission (1) a description of the information, (2) a justification for treating the information as confidential, (3) a certificate that the information is not publicly available, and (4) a copy of the document where the information is clearly marked with brackets. 19 C.F.R. § 201.6(b)(3). Consistent with section 1677f(b)(2)(B), if the Commission denies a request for confidential treatment, the submitter can withdraw the tender of information within five days. 19 C.F.R. § 201.6(g).

disclosure obligations that the statute places on the Commission and requires that the Commission comply with the statute in the remand proceedings and in any other CIT review proceedings in this case.

## V

The Commission additionally argues that if we reject the blanket confidentiality rule, the Commission and the parties should be given an opportunity to propose redactions and to appeal before the information is released. We agree that the Commission and the parties must have the opportunity to object to the release of confidential information before its disclosure. *See* 19 U.S.C. § 1677f(b)(2). However, the CIT provided the opportunity to object and present witnesses in this case in a confidentiality hearing. The Commission also filed a motion asking the CIT to redact certain information in the merits opinion. The CIT deferred disclosure pending our decision on appeal. While the CIT's order denying this motion is not before us, it is exemplary of the procedural approach that the CIT must follow.

## CONCLUSION

This case involves the reconciliation of two important objectives that are reflected in the statute and in the common law right of access: the need to make non-confidential information publicly available and the need to protect properly designated confidential information the disclosure of which could cause substantial competitive harm. The CIT struck the appropriate balance in requiring proper confidentiality designations, prohibiting publicly available information and generalized information from being designated confidential, and requiring a showing of competitive injury as to stale information. The CIT has exercised appropriate care to ensure public access to judicial proceedings and the protection of information that is entitled to confidential treatment. We see

no error in the CIT's actions.  Accordingly, we affirm the CIT's Confidentiality Opinion and Order.

**AFFIRMED**

Costs

No costs.